

Ben F. Pierce Gore (SBN 128515)
PRATT & ASSOCIATES
1871 The Alameda, Suite 425
San Jose, CA 95126
Telephone: (408) 429-6506
Fax: (408) 369-0752
pgore@prattattorneys.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

ROBIN REESE, individually and on behalf
of all others similarly situated,

Plaintiff,

v.

ODWALLA, INC. and THE COCA-COLA
COMPANY,

Defendants.

Case No. 13 0947

**CLASS ACTION AND REPRESENTATIVE ACTION**

**COMPLAINT FOR DAMAGES, EQUITABLE AND INJUNCTIVE RELIEF**

**JURY TRIAL DEMANDED**

Plaintiff, through the undersigned attorneys, brings this lawsuit against Defendants Odwalla, Inc. ("Odwalla"), and The Coca-Cola Company ("Coke") (collectively "Defendants") as to Plaintiff's own acts upon personal knowledge, and as to all other matters upon information and belief. In order to remedy the harm arising from Defendants' illegal conduct, which has resulted in unjust profits, Plaintiff brings this action on behalf of a nationwide class of consumers, and alternatively, a sub-class of California consumers who, within the last four years, purchased Defendants' products labeled with the ingredient "evaporated cane juice" or "organic evaporated cane juice." Defendants' products which list evaporated cane juice as an ingredient on their labels are referred to herein as "Misbranded Food Products."

-1-

## INTRODUCTION

1.    Defendant Odwalla is a leading consumer packaged food and beverage company that manufactures, markets, distributes, and sells branded beverages and food bars throughout the United States.

2.    Defendant Coke is the parent company of Odwalla.  It is a leading beverage company in the United States.  Coke distributes and sells a number of brands of beverages including the Fanta line of beverages. Coke also operates a number of websites where Odwalla products and their evaporated cane juice content are advertised. Coke also produces and advertises additional "evaporated cane juice products.

3.    Defendants know that many of their consumers wish to maintain a diet comprised of healthy foods that do not contain added sugar.  Defendants recognize that consumers are willing to pay a premium for such healthy foods, and Defendants actively promote the health benefits of their products.

4.    Defendants currently market many different flavors and varieties of energy bars and beverage products which list either "Evaporated Cane Juice" or "Organic Evaporated Cane Juice" as an ingredient. These products include: Odwalla White Chocolate Macadamia Chewy Nut Bar, Odwalla Chocolate Almond Coconut Chewy Nut Bar,  Odwalla Apple Toffee Pistachio Chewy Nut Bar, Odwalla Strawberry Pomegranate Superfood Bar, Odwalla Strawberry Protein Monster Protein Shake drink, Odwalla Quencher Pomegranate Limeade drink,  Odwalla Chocolate Protein Monster drink, Odwalla Vanilla Al'Mondo Super Protein drink, Odwalla Citrus C Monster drink, Odwalla Light Lemonade, Odwalla Light Limeade, and Fanta Zero Orange Soda. Each of these products has listed either "Evaporated Cane Juice" or "Organic Evaporated Cane Juice" on its label and each is listed on one or more of the Defendants' websites as containing "Evaporated Cane Juice" or Organic Evaporated Cane Juice."  All of these products are misbranded for the reasons stated herein.

5.    Defendants also indicate that sugar and evaporated cane juice are two distinct sweeteners although in fact they are both the same, namely sucrose.

6.    Although Defendants list "Evaporated Cane Juice" as an ingredient on the extensive

-2-

1    number of products indicated above, and on other products as well,  the Food and Drug

2    Administration ("FDA")  has specifically warned companies not to use this term because it is 1)

3    "false and misleading;" 2) in violation of a number of labeling regulations designed to ensure that

4    manufacturers label their products with the common and usual names of the ingredients they use

5    and accurately describe the ingredients they utilize; and 3) the ingredient in question is not a juice.

6    7.    The FDA has also sent out a number of warning letters indicating that evaporated

7    cane juice is a misleading term that misbrands a product.

8    8.    In discussing "Evaporated Cane Juice" in their marketing materials, Defendants do

9    not disclose the fact that "Evaporated Cane Juice" is, in its ordinary and commonly understood

10   terms known as, "sugar," and/or "dried cane syrup."

11   9.    If a manufacturer is going to make a claim on a food label, the label must meet

12   certain legal requirements that help consumers make informed choices and ensure that they are not

13   misled.

14   10.    As described more fully below, Defendants have made, and continue to make, false

15   and deceptive claims in violation of federal and California laws that govern the types of

16   representations that can be made on food labels.

17   11.    Identical federal and California laws regulate the content of labels on packaged food.

18   The requirements of the federal Food Drug & Cosmetic Act ("FDCA") were adopted by the

19   California legislature in the Sherman Food Drug & Cosmetic Law, California Health & Safety

20   Code § 109875, *et seq*. (the "Sherman Law").  Under FDCA section 403(a), food is "misbranded" if

21   "its labeling is false or misleading in any particular," or if it does not contain certain information on

22   its label or its labeling.  21 U.S.C. § 343(a).

23   12.    Under the FDCA, the term "false" has its usual meaning of "untruthful," while the

24   term "misleading" is a term of art.  Misbranding reaches not only false claims, but also those claims

25   that might be technically true, but still misleading.  If any representation in the labeling is

26   misleading, the entire food is misbranded, and no other statement in the labeling can cure a

27   misleading statement.  "Misleading" is judged in reference to "the ignorant, the unthinking and the

28   credulous who, when making a purchase, do not stop to analyze." *United States v. El-O-Pathic*

-3-

*Pharmacy*, 192 F.2d 62, 75 (9th Cir. 1951). Under the FDCA, it is not necessary to prove that anyone was actually misled.

13. Defendants claim to understand the importance of communicating responsibly about their products. Nevertheless, Defendants have made, and continue to make, false and deceptive claims on their Misbranded Food Products in violation of federal and California laws that govern the types of representations that can be made on food labels. In particular, in making unlawful "evaporated cane juice" claims on their Misbranded Food Products, Defendants have violated labeling regulations mandated by federal and California law by listing sugar and/or sugar cane syrups as "Evaporated Cane Juice."

14. According to the FDA, the term "evaporated cane juice" is not the common or usual name of any type of sweetener, including dried cane syrup. Because both sugar and cane syrup have a standard of identity defined by regulation. The FDA provides that "cane syrup has a standard of identity defined by regulation in 21 CFR 168.130, the common or usual name for the solid or dried form of cane syrup is 'dried cane syrup.'" Similarly, sugar or sucrose is defined by regulation in 21 C.F.R. §101.4(b)(20) and §184.1854, as the common or usual name for material obtained from the crystallization from sugar cane or sugar beet juice that has been extracted by pressing or diffusion, then clarified and evaporated. According to the FDA, sweeteners derived from sugar cane syrup should not be listed in the ingredient declaration by names which suggest that the ingredients are juice, such as "evaporated cane juice." The FDA considers such representations to be "false and misleading" under section 403(a)(1) of the FDCA (21 U.S.C. 343(a)(1)) because they fail to reveal the basic nature of the food and its characterizing properties (*i.e.,* that the ingredients are sugars or syrups) as required by 21 CFR § 102.5. Nevertheless, Defendants have made, and continue to make, false and deceptive claims on their Misbranded Food Products in violation of federal and California laws that govern the types of representations that can be made on food labels.

15. Defendants have made and continue to make unlawful nutrient content claims on food labels of their Misbranded Food Products that are prohibited by federal and California law and which render these products misbranded. Under federal and California law, Defendants'

-4-

*Class Action Complaint*

1  Misbranded Food Products cannot legally be manufactured, advertised, distributed, held or sold.

2  Defendants' false and misleading labeling practices stem from their global marketing strategy.

3  Thus, the violations and misrepresentations are similar across product labels and product lines.

4  16.     Defendants' violations of law include the illegal advertising, marketing, distribution,

5  delivery and sale of Defendants' Misbranded Food Products to consumers in California and

6  throughout the United States.

## PARTIES

8  17.     Plaintiff Robin Reese is a resident of Lafayette, California who purchased

9  Defendants' Misbranded Food Products during the four (4) years prior to the filing of this

10  Complaint (the "Class Period").

11  18.     Defendant Odwalla, Inc., is a California corporation, and does business throughout

12  California and the United States, with its principal place of business located in Half Moon Bay,

13  California.     Odwalla may be served with process of this Court by service on its California

14  registered agent for service of process, C T Corporation System located at 818 W. 7th Street

15  Los Angeles, CA 90017-3407.

16  19.     Defendant The Coca- Cola Company is a Delaware corporation, and does business

17  throughout California and the United States, with its principal place of business located in Atlanta,

18  Georgia.     Coke may be served with process of this Court by service on its California registered

19  agent for service of process, C T Corporation System located at 818 W. 7th Street

20  Los Angeles, CA 90017-3407.

21  20.     Defendants sell their Misbranded Food Products to consumers in grocery and other

22  retail stores throughout California and the United States.     Defendants have pursued a common

23  plan, design, and course of conduct, acted in concert with, aided and abetted, and otherwise

24  conspired with one another, in furtherance of their common design and scheme to unlawfully

25  advertise, market, distribute, deliver, and sell Defendants' Misbranded Food Products to consumers

26  in California and throughout the United States.

27  21.     At all times relevant to this lawsuit, there has been such a unity of interest among

28  Defendants that their separate identities exist to carry out the deceptive and unlawful scheme

-5-

*Class Action Complaint*

1  described herein.

2  22.  At all times relevant to this lawsuit, Defendants participated in the scheme described
3  herein in cooperation with and as agents and instrumentalities of each other for the purpose of
4  deceiving and harming Plaintiff and Class members.

5  23.  Defendants are juridically linked through contracts governing their management and
6  control, through which the scheme described herein has been implemented.

7  24.  Defendants, acting as juridically linked entities pursuant to agreements among
8  themselves, as each other's agents, as alter egos, and/or as co-conspirators, author the labels on, and
9  determine the formulation of Defendants' Misbranded Food Products.

10  25.  Plaintiff and Class members have been proximately harmed, and Defendants have
11  been unjustly enriched, by Defendants' deceptive and unlawful scheme.

12  **JURISDICTION AND VENUE**

13  26.  This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d)
14  because this is a class action in which:  (1) there are over 100 members in the proposed class;
15  (2) members of the proposed class have a different citizenship from Defendants; and (3) the claims
16  of the proposed class members exceed $5,000,000 in the aggregate.

17  27.  The Court has jurisdiction over the California claims alleged herein pursuant to 28
18  U.S.C. § 1367, because they form part of the same case or controversy under Article III of the
19  United States Constitution.

20  28.  The Court has personal jurisdiction over Defendants because a substantial portion of
21  the wrongdoing alleged in this Complaint occurred in California, Defendants are authorized to do
22  business in California, have sufficient minimum contacts with California, and otherwise
23  intentionally avail themselves of the markets in California through the promotion, marketing and
24  sale of merchandise, sufficient to render the exercise of jurisdiction by this Court permissible under
25  traditional notions of fair play and substantial justice.

26  29.  Because a substantial part of the events or omissions giving rise to these claims
27  occurred in this District and because the Court has personal jurisdiction over Defendants, venue is
28  proper in this Court pursuant to 28 U.S.C. § 1391(a) and (b).

-6-

## FACTUAL ALLEGATIONS

### A. Identical California And Federal Laws Regulate Food Labeling

30. Food manufacturers are required to comply with identical federal and state laws and regulations that govern the labeling of food products.

31. First and foremost among these is the FDCA and its labeling regulations, including those set forth in 21 C.F.R. § 101.

32. Pursuant to the Sherman Law, California has expressly adopted the federal labeling requirements as its own and indicated that "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food regulations of this state." California Health & Safety Code §110100.

33. In addition to its blanket adoption of federal labeling requirements, California has also enacted a number of laws and regulations that adopt and incorporate specific enumerated federal food laws and regulations.

34. For example, food products are misbranded under California Health & Safety Code § 110660 if their labeling is false and misleading in one or more particulars; are misbranded under California Health & Safety Code § 110665 if their labeling fails to conform to the requirements for nutrient labeling set forth in 21 U.S.C. § 343(q) and regulations adopted thereto; are misbranded under California Health & Safety Code § 110670 if their labeling fails to conform with the requirements for nutrient content and health claims set forth in 21 U.S.C. § 343(r) and regulations adopted thereto; are misbranded under California Health & Safety Code § 110705 if words, statements and other information required by the Sherman Law to appear on their labeling are either missing or not sufficiently conspicuous; are misbranded under California Health & Safety Code § 110735 if they are represented as having special dietary uses but fail to bear labeling that adequately informs consumers of their value for that use; and are misbranded under California Health & Safety Code § 110740 if they contain artificial flavoring, artificial coloring and chemical preservatives but fail to adequately disclose that fact on their labeling.

-7-

**B.    FDA Enforcement History**

35.    In recent years the FDA has become increasingly concerned that food manufacturers were disregarding food labeling regulations. To address this concern, the FDA elected to take steps to inform the food industry of its concerns and to place the industry on notice that food labeling compliance was an area of enforcement priority.

36.    In October 2009, the FDA issued a *Guidance For Industry: Letter regarding Point Of Purchase Food Labeling* to address its concerns about front of package labels ("2009 FOP Guidance"). The 2009 FOP Guidance advised the food industry:

> FDA's research has found that with FOP labeling, people are less likely to check the Nutrition Facts label on the information panel of foods (usually, the back or side of the package). It is thus essential that both the criteria and symbols used in front-of-package and shelf-labeling systems be nutritionally sound, well-designed to help consumers make informed and healthy food choices, and not be false or misleading. The agency is currently analyzing FOP labels that appear to be misleading. The agency is also looking for symbols that either expressly or by implication are nutrient content claims. We are assessing the criteria established by food manufacturers for such symbols and comparing them to our regulatory criteria.
>
> It is important to note that nutrition-related FOP and shelf labeling, while currently voluntary, is subject to the provisions of the Federal Food, Drug, and Cosmetic Act that prohibit false or misleading claims and restrict nutrient content claims to those defined in FDA regulations. Therefore, FOP and shelf labeling that is used in a manner that is false or misleading misbrands the products it accompanies. Similarly, a food that bears FOP or shelf labeling with a nutrient content claim that does not comply with the regulatory criteria for the claim as defined in Title 21 Code of Federal Regulations (CFR) 101.13 and Subpart D of Part 101 is misbranded. We will consider enforcement actions against clear violations of these established labeling requirements. . .
>
> … Accurate food labeling information can assist consumers in making healthy nutritional choices. FDA intends to monitor and evaluate the various FOP labeling systems and their effect on consumers' food choices and perceptions. FDA recommends that manufacturers and distributors of food products that include FOP labeling ensure that the label statements are consistent with FDA laws and regulations. FDA will proceed with enforcement action against products that bear FOP labeling that are explicit or implied nutrient content claims and that are not consistent with current nutrient content claim requirements. FDA will also proceed with enforcement action where such FOP labeling or labeling systems are used in a manner that is false or misleading.

http://www.fda.gov/Food/GuidanceComplianceRegulatoryInformation/GuidanceDocuments/FoodLabelingNutrition/ucm187208.htm

-8-

37.     The 2009 FOP Guidance recommended that "manufacturers and distributors of food products that include FOP labeling ensure that the label statements are consistent with FDA law and regulations" and specifically advised the food industry that it would "proceed with enforcement action where such FOP labeling or labeling systems are used in a manner that is false or misleading."

38.     Defendants knew or should have known of the 2009 FOP guidance.

39.     Despite the issuance of the 2009 FOP Guidance, Defendants did not remove the unlawful and misleading food labeling claims from their Misbranded Food Products.

40.     On March 3, 2010, the FDA issued an "Open Letter to Industry from [FDA Commissioner] Dr. Hamburg" (hereinafter, "Open Letter"). The Open Letter reiterated the FDA's concern regarding false and misleading labeling by food manufacturers. In pertinent part the letter stated:

> In the early 1990s, the Food and Drug Administration (FDA) and the food industry worked together to create a uniform national system of nutrition labeling, which includes the now-iconic Nutrition Facts panel on most food packages. Our citizens appreciate that effort, and many use this nutrition information to make food choices. Today, ready access to reliable information about the calorie and nutrient content of food is even more important, given the prevalence of obesity and diet-related diseases in the United States. This need is highlighted by the announcement recently by the First Lady of a coordinated national campaign to reduce the incidence of obesity among our citizens, particularly our children.
>
> With that in mind, I have made improving the scientific accuracy and usefulness of food labeling one of my priorities as Commissioner of Food and Drugs. The latest focus in this area, of course, is on information provided on the principal display panel of food packages and commonly referred to as "front-of-pack" labeling. The use of front-of-pack nutrition symbols and other claims has grown tremendously in recent years, and it is clear to me as a working mother that such information can be helpful to busy shoppers who are often pressed for time in making their food selections....
>
> As we move forward in those areas, I must note, however, that there is one area in which more progress is needed. As you will recall, we recently expressed concern, in a "Dear Industry" letter, about the number and variety of label claims that may not help consumers distinguish healthy food choices from less healthy ones and, indeed, may be false or misleading.
>
> At that time, we urged food manufacturers to examine their product labels in the context of the provisions of the Federal Food, Drug, and Cosmetic Act that prohibit false or misleading claims and restrict nutrient content claims to those defined in

-9-

FDA regulations. As a result, some manufacturers have revised their labels to bring them into line with the goals of the Nutrition Labeling and Education Act of 1990. Unfortunately, however, we continue to see products marketed with labeling that violates established labeling standards.

To address these concerns, FDA is notifying a number of manufacturers that their labels are in violation of the law and subject to legal proceedings to remove misbranded products from the marketplace. While the warning letters that convey our regulatory intentions do not attempt to cover all products with violative labels, they do cover a range of concerns about how false or misleading labels can undermine the intention of Congress to provide consumers with labeling information that enables consumers to make informed and healthy food choices.

. . . .

These examples and others that are cited in our warning letters are not indicative of the labeling practices of the food industry as a whole. In my conversations with industry leaders, I sense a strong desire within the industry for a level playing field and a commitment to producing safe, healthy products. That reinforces my belief that FDA should provide as clear and consistent guidance as possible about food labeling claims and nutrition information in general, and specifically about how the growing use of front-of-pack calorie and nutrient information can best help consumers construct healthy diets.

I will close with the hope that these warning letters will give food manufacturers further clarification about what is expected of them as they review their current labeling. I am confident that our past cooperative efforts on nutrition information and claims in food labeling will continue as we jointly develop a practical, science-based front-of-pack regime that we can all use to help consumers choose healthier foods and healthier diets.

http://www.fda.gov/Food/LabelingNutrition/ucm202733.htm?utm_campaign=Google2&utm_sourc e=fdaSearch&utm_medium=website&utm_term=Open Letter to Industry from Dr. Hamburg&utm_content=1

41.     Defendants continue to utilize unlawful food labeling claims despite the express guidance of the FDA in the Open Letter.

42.     At the same time that it issued its Open Letter, the FDA issued a number of warning letters to companies whose products were misbranded as a result of their unlawful labels.

43.     In its 2010 Open Letter to industry the FDA stated that the agency not only expected companies that received warning letters to correct their labeling practices but also anticipated that other companies would examine their food labels to ensure that they are in full compliance with food labeling requirements and make changes where necessary. Defendants did not change the

-10-

labels on their Misbranded Food Products in response to these warning letters.

44. In addition to its general guidance about unlawful labeling practices the FDA has issued specific guidance about the unlawful practices at issue here. In October of 2009, the FDA issued *Guidance for Industry: Ingredients Declared as Evaporated Cane Juice,* which advised the industry that the term "Evaporated Cane Juice" was unlawful.

http://www.fda.gov/Food/GuidanceComplianceRegulatoryInformation/GuidanceDocuments/FoodL abelingNutrition/ucm181491.htm

45. In addition to its guidance to industry in general, the FDA has repeatedly sent warning letters to specific companies regarding specific violations such as the ones at issue in this case.

46. In particular, the FDA has issued warning letters to at least five companies for utilizing the unlawful term "Evaporated Cane Juice." In these letters, the FDA indicated the proper way to ingredient at issue here could be found in its 2009 Guidance on Evaporated Cane Juice and the regulatory provisions it interpreted.

47. Defendants have continued to ignore the 2009 FOP Guidance which detailed the FDA's guidance on how to make food labeling claims as well as the 2009 Guidance on Evaporated Cane Juice and the FDA Warning letters on evaporated cane juice. As such, Defendants' Misbranded Food Products continue to run afoul of the 2009 FOP Guidance and the 2009 Guidance on Evaporated Cane Juice and the FDA Warning letters on evaporated cane juice as well as federal and California law.

48. Despite the numerous FDA warning letters and the 2009 Guidance on Evaporated Cane Juice and the FDA evaporated cane juice warning letters and the 2010 Open Letter, Defendants have not removed the unlawful and misleading food labeling ingredients from Defendants' Misbranded Food Products.

49. Despite the FDA's numerous warnings to industry, Defendants have continued to sell products bearing unlawful food labeling claims without meeting the requirements to make such claims.

50. In fact, the Grocery Manufacturers Association, of which Defendant Coke is a

-11-

1   member, sent a comment to the FDA on January 28, 2010, seeking to have the FDA's guidance for

2   industry on evaporated cane juice withdrawn and requesting that the FDA not take enforcement

3   action based on the guidance. The FDA rejected this request and has maintained the guidance and

4   taken enforcement action against companies that ignore the guidance and the underlying regulations

5   it interprets and use the unlawful term "evaporated cane juice."

6       51.    Even in the face of direct FDA regulation that "Evaporated Cane Juice" is a false

7   and misleading term, members of Defendants' trade association continue in their efforts to utilize

8   the term as a marketing tool, and Defendants continue to use the term at the present time.

9       **C.    Defendants' Unlawful and Misleading Evaporated Cane Juice Claims**

10      **1.    "Evaporated Cane Juice" Is An Unlawful Term Prohibited From Use On A
            Product Label Or In Its Ingredient List**

11

12      52.    21 C.F.R. §§ 101.3 and 102.5, which have been adopted by California, prohibit

13  manufacturers from referring to foods by anything other than their common and usual names. 21

14  C.F.R. § 101.4, which has been adopted by California, prohibits manufacturers from referring to

15  ingredients by anything other than their common and usual names. Defendants have violated these

16  provisions by failing to use the common or usual name for ingredients mandated by law. In

17  particular, Defendants have used and continue to use the term "Evaporated Cane Juice" on products

18  in violation of numerous labeling regulations designed to protect consumers from misleading

19  labeling practices. Defendants' practices also violate express FDA policies.

20      53.    For example, Defendants violated the FDA's express policy with respect to the

21  listing of certain ingredients such as sugar or dried cane syrup. As stated by the FDA, "FDA's

22  current policy is that sweeteners derived from sugar cane syrup should not be declared as

23  'evaporated cane juice' because that term falsely suggests that the sweeteners are juice."

24      54.    The FDA "considers such representations to be false and misleading under section

25  403(a)(1) of the Act (21 U.S.C. 343(a)(1) because they fail to reveal the basic nature of the food

26  and its characterizing properties (*i.e.*, that the ingredients are sugars or syrups) as required by 21

27  U.S.C. 102.5."

28

-12-

55.     In October of 2009, the FDA issued *Guidance for Industry: Ingredients Declared as Evaporated Cane Juice*, which advised industry and that:

"...the term "evaporated cane juice" has started to appear as an ingredient on food labels, most commonly to declare the presence of sweeteners derived from sugar cane syrup. However, FDA's current policy is that sweeteners derived from sugar cane syrup should not be declared as "evaporated cane juice" because that term falsely suggests that the sweeteners are juice...

"Juice" is defined by 21 CFR 120.1(a) as "the aqueous liquid expressed or extracted from one or more fruits or vegetables, purees of the edible portions of one or more fruits or vegetables, or any concentrates of such liquid or puree." ...

"As provided in 21 CFR 101.4(a)(1), "Ingredients required to be declared on the label or labeling of a food . . . shall be listed by common or usual name . . . ." The common or usual name for an ingredient is the name established by common usage or by regulation (21 CFR 102.5(d)). The common or usual name must accurately describe the basic nature of the food or its characterizing properties or ingredients, and may not be "confusingly similar to the name of any other food that is not reasonably encompassed within the same name" (21 CFR 102.5(a))...

"Sugar cane products with common or usual names defined by regulation are sugar (21 CFR 101.4(b)(20)) and cane sirup (alternatively spelled "syrup") (21 CFR 168.130). Other sugar cane products have common or usual names established by common usage (e.g., molasses, raw sugar, brown sugar, turbinado sugar, muscovado sugar, and demerara sugar)...

"The intent of this draft guidance is to advise the regulated industry of FDA's view that the term "evaporated cane juice" is not the common or usual name of any type of sweetener, including dried cane syrup. Because cane syrup has a standard of identity defined by regulation in 21 CFR 168.130, the common or usual name for the solid or dried form of cane syrup is "dried cane syrup."...

"Sweeteners derived from sugar cane syrup should not be listed in the ingredient declaration by names which suggest that the ingredients are juice, such as "evaporated cane juice." FDA considers such representations to be false and misleading under section 403(a)(1) of the Act (21 U.S.C. 343(a)(1)) because they fail to reveal the basic nature of the food and its characterizing properties (i.e., that the ingredients are sugars or syrups) as required by 21 CFR 102.5. Furthermore, sweeteners derived from sugar cane syrup are not juice and should not be included in the percentage juice declaration on the labels of beverages that are represented to contain fruit or vegetable juice (see 21 CFR 101.30).

56.     Despite the issuance of the 2009 FDA Guidance, Defendants have not removed the unlawful and misleading food labeling ingredients from their Misbranded Food Products.

-13-

57.     Defendants often list ingredients with unlawful and misleading names. The Nutrition Facts label of the Misbranded Food Products list "evaporated cane juice" as an ingredient. According to the FDA, "'evaporated cane juice' is not the common or usual name of any type of sweetener, including dried cane syrup." The FDA provides that "cane syrup has a standard of identity defined by regulation in 21 CFR 168.130, the common or usual name for the solid or dried form of cane syrup is 'dried cane syrup.'" Similarly, sugar or sucrose is defined by regulation in 21 C.F.R. §101.4(b)(20) and §184.1854, as the common or usual name for material obtained from the crystallization from sugar cane or sugar beet juice that has been extracted by pressing or diffusion, then clarified and evaporated.

58.     Various FDA warning letters have made it clear that the use of the term evaporated cane juice is unlawful because the term does not represent the common or usual name of a food or ingredient.

59.     These warning letters indicate that foods bearing labels which contain the term evaporated cane juice are misbranded.

60.     Such products mislead consumers into paying a premium price for inferior or undesirable ingredients or for products that contain ingredients not listed on the label.

61.     Defendants' false, unlawful and misleading ingredient listings render products misbranded under federal and California law.

62.     Misbranded products cannot be legally sold and have no economic value and are legally worthless. Plaintiff and the class paid a premium price for the Misbranded Food Products.

63.     Defendants have also made these illegal claims on their websites and in advertising in violation of federal and California law.

**D.     Defendants Have Violated California Law**

64.     Defendants have violated California Health & Safety Code § 110390, which makes it unlawful to disseminate false or misleading food advertisements that include statements on products and product packaging or labeling or any other medium used to directly or indirectly induce the purchase of a food product.

65.     Defendants have violated California Health & Safety Code § 110395, which makes

-14-

it unlawful to manufacture, sell, deliver, hold or offer to sell any falsely advertised food.

66. Defendants have violated California Health & Safety Code §§ 110398 and 110400, which make it unlawful to advertise misbranded food or to deliver or proffer for delivery any food that has been falsely advertised.

67. Defendants have violated California Health & Safety Code § 110660 because the subject product labeling is false and misleading in one or more ways. Defendants' Misbranded

68. Food Products are misbranded under California Health & Safety Code § 110670 because their labeling fails to conform with the requirements for nutrient content and health claims set forth in 21 U.S.C. § 343(r) and the regulations adopted thereto.

69. Defendants have violated California Health & Safety Code § 110760, which makes it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded.

70. Defendants' Misbranded Food Products are misbranded under California Health & Safety Code § 110755 because the products are purported to be or are represented for special dietary uses, and their labels fail to bear such information concerning their vitamin, mineral, and other dietary properties as the Secretary determines to be, and by regulations prescribes as, necessary in order fully to inform purchasers as to its value for such uses.

71. Defendants have violated California Health & Safety Code § 110765, which makes it unlawful for any person to misbrand any food.

72. Defendants have violated California Health & Safety Code § 110770, which makes it unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for delivery any such food.

73. Defendants have violated the standards set by 21 C.F.R. §§ 101.4 and 102.5 which has been incorporated by reference in the Sherman Law, by failing to include on its product labels the common and usual names of its food products.

E. **Plaintiff Purchased Defendants' Misbranded Food Products**

74. Plaintiff cares about the nutritional content of food and seeks to maintain a healthy diet.

-15-

75. During the Class Period, Plaintiff purchased Defendants' Misbranded Food Products including, but not limited to: Odwalla Strawberry Protein Monster Protein Shake and Quencher Pomegranate Limeade drinks, and Odwalla Chocolate Almond Coconut Chewy Nut and White Chocolate Macadamia bars.

76. Plaintiff would not have purchased Defendants' Misbranded Food Products had Plaintiff known that the Misbranded Food Products contained sugar masquerading as evaporated cane juice. Plaintiff read and reasonably relied on the labels on Defendants' Misbranded Food Products, including the ingredient "evaporated cane juice" on the back panels, before purchasing these products.

77. Plaintiff relied on Defendants' package labeling including the back panel ingredients list referencing "evaporated cane juice," and based and justified the decision to purchase Defendants' products in substantial part on Defendants' package labeling, including the labeling claiming that Defendants' product contained as an ingredient "evaporated cane juice."

78. At point of sale, Plaintiff did not know, and had no reason to know, that Defendants' products were misbranded as set forth herein, and would not have bought the products had Plaintiff known the truth about them.

79. At point of sale, Plaintiff did not know, and had no reason to know, that Defendants' "evaporated cane juice" ingredient name was unlawful and unauthorized as set forth herein. Had Plaintiff known this information, Plaintiff would not have bought the products.

80. In reliance on Defendants' "evaporated cane juice" ingredient name, Plaintiff and thousands of others in California and throughout the United States purchased the Misbranded Food Products at issue.

81. Defendants' labeling, advertising and marketing as alleged herein are false and misleading and were designed to increase sales of the products at issue. Defendants' misrepresentations are part of an extensive labeling, advertising and marketing campaign, and a reasonable person would attach importance to Defendants' misrepresentations in determining whether to purchase the products at issue.

82. A reasonable person would also attach importance to whether Defendants' products

-16-

1   were legally salable, and capable of legal possession, and to Defendants' representations about
2   these issues in determining whether to purchase the products at issue. Plaintiff would not have
3   purchased Defendants' Misbranded Food Products had Plaintiff known they were not capable of
4   being legally sold or held. As a result of Defendants' unlawful use of the term Evaporated Cane
5   Juice, Plaintiff and the Class members purchased the Misbranded Food Products at issue. Plaintiff
6   and the Class members have been proximately harmed, and Defendants have been unjustly
7   enriched, by Defendants' deceptive and unlawful scheme.

8                                   **CLASS ACTION ALLEGATIONS**

9       83.     Plaintiff brings this action as a class action pursuant to Federal Rule of Procedure
10  23(b)(2) and 23(b)(3) on behalf of the following class:

11
        All persons in the United States, and alternatively, a sub-class of all persons in
12      California who, within the last four years, purchased Defendants' products labeled
        with the ingredient "evaporated cane juice" or "organic evaporated cane juice" (the
13      "Class").

14      84.     The following persons are expressly excluded from the Class:
15  (1) Defendants and their subsidiaries and affiliates; (2) all persons who make a timely
16  election to be excluded from the proposed Class; (3) governmental entities; and (4) the
17  Court to which this case is assigned and its staff.

18      85.     This action can be maintained as a class action because there is a well-defined
19  community of interest in the litigation and the proposed Class is easily ascertainable.

20      86.     Numerosity:  Based upon Defendants' publicly available sales data with respect to
21  the misbranded products at issue, it is estimated that the Class numbers in the thousands, and that
22  joinder of all Class members is impracticable.

23      87.     Common Questions Predominate:  This action involves common questions of law
24  and fact applicable to each Class member that predominate over questions that affect only
25  individual Class members.  Thus, proof of a common set of facts will establish the right of each
26  Class member to recover.  Questions of law and fact common to each Class member include, just
27  for example:

28          a.      Whether Defendants engaged in unlawful, unfair or deceptive
                    business practices by failing to properly package and label its

                                            -17-

                                    *Class Action Complaint*

Misbranded Food Products sold to consumers;

b. Whether the food products at issue were misbranded as a matter of law;

c. Whether Defendants made unlawful and misleading "evaporated cane juice" claims with respect to food products sold to consumers;

d. Whether Defendants violated California Bus. & Prof. Code § 17200, *et seq.*, California Bus. & Prof. Code § 17500, *et seq.*, the Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq.*, California Civ. Code § 1790, *et seq.*, 15 U.S.C. § 2301, *et seq.*, and the Sherman Law;

e. Whether Plaintiff and the Class are entitled to equitable and/or injunctive relief;

f. Whether Defendants' unlawful, unfair and/or deceptive practices harmed Plaintiff and the Class; and

g. Whether Defendants were unjustly enriched by their deceptive practices.

88. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the Class because Plaintiff bought Defendants' Misbranded Food Products during the Class Period. Defendants' unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiff and the Class sustained similar injuries arising out of Defendants' conduct in violation of California law. The injuries of each member of the Class were caused directly by Defendants' wrongful conduct. In addition, the factual underpinning of Defendants' misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all members of the Class. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the Class members and are based on the same legal theories.

89. <u>Adequacy</u>: Plaintiff will fairly and adequately protect the interests of the Class. Neither Plaintiff nor Plaintiff's counsel have any interests that conflict with or are antagonistic to the interests of the Class members. Plaintiff has retained highly competent and experienced class action attorneys to represent her interests and those of the members of the Class. Plaintiff and Plaintiff's counsel have the necessary financial resources to adequately and vigorously litigate this

-18-

1   class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to the Class

2   members and will diligently discharge those duties by vigorously seeking the maximum possible

3   recovery for the Class.

4   90.   Superiority:   There is no plain, speedy or adequate remedy other than by

5   maintenance of this class action. The prosecution of individual remedies by members of the Class

6   will tend to establish inconsistent standards of conduct for Defendants and result in the impairment

7   of Class members' rights and the disposition of their interests through actions to which they were

8   not parties. Class action treatment will permit a large number of similarly situated persons to

9   prosecute their common claims in a single forum simultaneously, efficiently, and without the

10   unnecessary duplication of effort and expense that numerous individual actions would engender.

11   Further, as the damages suffered by individual members of the Class may be relatively small, the

12   expense and burden of individual litigation would make it difficult or impossible for individual

13   members of the Class to redress the wrongs done to them, while an important public interest will be

14   served by addressing the matter as a class action. Class treatment of common questions of law and

15   fact would also be superior to multiple individual actions or piecemeal litigation in that class

16   treatment will conserve the resources of the Court and the litigants, and will promote consistency

17   and efficiency of adjudication.

18   91.   The prerequisites to maintaining a class action for injunctive or equitable relief

19   pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendants have acted or refused to act on grounds

20   generally applicable to the Class, thereby making appropriate final injunctive or equitable relief

21   with respect to the Class as a whole.

22   92.   The prerequisites to maintaining a class action pursuant to Fed. R. Civ. P. 23(b)(3)

23   are met as questions of law or fact common to class members predominate over any questions

24   affecting only individual members, and a class action is superior to other available methods for

25   fairly and efficiently adjudicating the controversy.

26   93.   Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be

27   encountered in the management of this action that would preclude its maintenance as a class action.

28

-19-

*Class Action Complaint*

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Business and Professions Code § 17200, *et seq.***
**Unlawful Business Acts and Practices**

94. Plaintiff incorporates by reference each allegation set forth above.

95. Defendants' conduct constitutes unlawful business acts and practices.

96. Defendants sold Misbranded Food Products in California and throughout the United States during the Class Period.

97. Defendants are corporations and, therefore, "persons" within the meaning of the Sherman Law.

98. Defendants' business practices are unlawful under § 17200, *et seq.* by virtue of Defendants' violations of the advertising provisions of Article 3 of the Sherman Law and the misbranded food provisions of Article 6 of the Sherman Law.

99. Defendants' business practices are unlawful under § 17200, *et seq.* by virtue of Defendants' violations of § 17500, *et seq.*, which forbids untrue and misleading advertising.

100. Defendants' business practices are unlawful under § 17200, *et seq.* by virtue of Defendants' violations of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*

101. Defendants sold Plaintiff and the Class Misbranded Food Products that were not capable of being sold or held legally and which had no economic value and were legally worthless.

102. As a result of Defendants' illegal business practices, Plaintiff and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and to restore to any class member any money paid for the Misbranded Food Products.

103. Defendants' unlawful business acts present a threat and reasonable continued likelihood of injury to Plaintiff and the Class.

104. As a result of Defendants' conduct, Plaintiff and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendants, and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten

-20-

gains and restore any money paid for Defendants' Misbranded Food Products by Plaintiff and the Class.

## SECOND CAUSE OF ACTION
### Business and Professions Code § 17200, *et seq.*
### Unfair Business Acts and Practices

105.    Plaintiff incorporates by reference each allegation set forth above.

106.    Defendants' conduct as set forth herein constitutes unfair business acts and practices.

107.    Defendants sold Misbranded Food Products in California and throughout the United States during the Class Period.

108.    Plaintiff and members of the Class suffered a substantial injury by virtue of buying Defendants' Misbranded Food Products that they would not have purchased absent Defendants' illegal conduct.

109.    Defendants' deceptive marketing, advertising, packaging and labeling of Misbranded Food Products and sale of unsalable misbranded products that were illegal to possess was of no benefit to Plaintiff and members of the Class, and the harm to consumers is substantial.

110.    Defendants sold Plaintiff and the Class Misbranded Food Products that were not capable of being legally sold or held and that which had no economic value and were legally worthless.

111.    Plaintiff and the Class who purchased Defendants' Misbranded Food Products had no way of reasonably knowing that the products were misbranded and were not properly marketed, advertised, packaged and labeled, and thus could not have reasonably avoided the injury each of them suffered.

112.    The consequences of Defendants' conduct as set forth herein outweigh any justification, motive or reason therefor.   Defendants' conduct is and continues to be illegal, immoral, unethical, unscrupulous, contrary to public policy, and is substantially injurious to Plaintiff and the Class.

113.    Pursuant to Business and Professions Code § 17203, as a result of Defendants' conduct, Plaintiff and the Class, are entitled to an order enjoining such future conduct by Defendants, and such other orders and judgments which may be necessary to disgorge Defendants'

-21-

1  ill-gotten gains and restore any money paid for Defendants' Misbranded Food Products by Plaintiff
2  and the Class.

### THIRD CAUSE OF ACTION
### Business and Professions Code § 17200, *et seq.*
### Fraudulent Business Acts and Practices

114.   Plaintiff incorporates by reference each allegation set forth above.

115.   Defendants' conduct as set forth herein constitutes fraudulent business practices
under California Business and Professions Code sections § 17200, *et seq.*

116.   Defendants sold Misbranded Food Products in California and throughout the United
States during the Class Period.

117.   Defendants' misleading marketing, advertising, packaging and labeling of the
Misbranded Food Products and misrepresentations that the products were salable, capable of
possession and not misbranded were likely to deceive reasonable consumers, and in fact, Plaintiff
and members of the Class were deceived. Defendants have engaged in fraudulent business acts and
practices.

118.   Defendants' fraud and deception caused Plaintiff and the Class to purchase
Defendants' Misbranded Food Products that they would otherwise not have purchased had they
known the true nature of those products.

119.   Defendants sold Plaintiff and the Class Misbranded Food Products that were not
capable of being sold or held legally and that which had no economic value and were legally
worthless.

120.   As a result of Defendants' conduct as set forth herein, Plaintiff and the Class,
pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future
conduct by Defendants, and such other orders and judgments which may be necessary to disgorge
Defendants' ill-gotten gains and restore any money paid for Defendants' Misbranded Food
Products by Plaintiff and the Class.

-22-

**FOURTH CAUSE OF ACTION**
**Business and Professions Code § 17500, *et seq.***
**Misleading and Deceptive Advertising**

121.   Plaintiff incorporates by reference each allegation set forth above.

122.   Plaintiff asserts this cause of action for violations of California Business and Professions Code § 17500, *et seq.* for misleading and deceptive advertising against Defendants.

123.   Defendants sold Misbranded Food Products in California and throughout the United States during the Class Period.

124.   Defendants engaged in a scheme of offering Misbranded Food Products for sale to Plaintiff and members of the Class by way of, *inter alia*, product packaging and labeling, and other promotional materials. These materials misrepresented and/or omitted the true contents and nature of Defendants' Misbranded Food Products. Defendants' advertisements and inducements were made within California and throughout the United States and come within the definition of advertising as contained in Business and Professions Code §17500, *et seq.* in that such product packaging and labeling, and promotional materials were intended as inducements to purchase Defendants' Misbranded Food Products and are statements disseminated by Defendants to Plaintiff and the Class that were intended to reach members of the Class. Defendants knew, or in the exercise of reasonable care should have known, that these statements were misleading and deceptive as set forth herein.

125.   In furtherance of their plan and scheme, Defendants prepared and distributed within California and nationwide via product packaging and labeling, and other promotional materials, statements that misleadingly and deceptively represented the composition and the nature of Defendants' Misbranded Food Products. Plaintiff and the Class necessarily and reasonably relied on Defendants' materials, and were the intended targets of such representations.

126.   Defendants' conduct in disseminating misleading and deceptive statements in California and nationwide to Plaintiff and the Class was and is likely to deceive reasonable consumers by obfuscating the true composition and nature of Defendants' Misbranded Food Products in violation of the "misleading prong" of California Business and Professions Code § 17500, *et seq.*

-23-

127.    As a result of Defendants' violations of the "misleading prong" of California Business and Professions Code § 17500, *et seq.*, Defendants have been unjustly enriched at the expense of Plaintiff and the Class.  Misbranded products cannot be legally sold or held and which have no economic value and are legally worthless.

128.    Plaintiff and the Class, pursuant to Business and Professions Code § 17535, are entitled to an order enjoining such future conduct by Defendants, and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and restore any money paid for Defendants' Misbranded Food Products by Plaintiff and the Class.

## FIFTH CAUSE OF ACTION
### Business and Professions Code § 17500, *et seq.*
### Untrue Advertising

129.    Plaintiff incorporates by reference each allegation set forth above.

130.    Plaintiff asserts this cause of action against Defendants for violations of California Business and Professions Code § 17500, *et seq.*, regarding untrue advertising.

131.    Defendants sold Misbranded Food Products in California and throughout the United States during the Class Period.

132.    Defendants engaged in a scheme of offering Defendants' Misbranded Food Products for sale to Plaintiff and the Class by way of product packaging and labeling, and other promotional materials.    These materials misrepresented and/or omitted the true contents and nature of Defendants' Misbranded Food Products.  Defendants' advertisements and inducements were made in California and throughout the United States and come within the definition of advertising as contained in Business and Professions Code §17500, *et seq.* in that the product packaging and labeling, and promotional materials were intended as inducements to purchase Defendants' Misbranded Food Products, and are statements disseminated by Defendants to Plaintiff and the Class.  Defendants knew, or in the exercise of reasonable care should have known, that these statements were untrue.

133.    In furtherance of their plan and scheme, Defendants prepared and distributed in California and nationwide via product packaging and labeling, and other promotional materials,

-24-

1    statements that falsely advertise the composition of Defendants' Misbranded Food Products, and

2    falsely misrepresented the nature of those products. Plaintiff and the Class were the intended

3    targets of such representations and would reasonably be deceived by Defendants' materials.

4        134.    Defendants' conduct in disseminating untrue advertising throughout California

5    deceived Plaintiff and members of the Class by obfuscating the contents, nature and quality of

6    Defendants' Misbranded Food Products in violation of the "untrue prong" of California Business

7    and Professions Code § 17500.

8        135.    As a result of Defendants' violations of the "untrue prong" of California Business

9    and Professions Code § 17500, *et seq.*, Defendants have been unjustly enriched at the expense of

10   Plaintiff and the Class. Misbranded products cannot be legally sold or held and which have no

11   economic value and are legally worthless.

12       136.    Plaintiff and the Class, pursuant to Business and Professions Code § 17535, are

13   entitled to an order enjoining such future conduct by Defendants, and such other orders and

14   judgments which may be necessary to disgorge Defendants' ill-gotten gains and restore any money

15   paid for Defendants' Misbranded Food Products by Plaintiff and the Class.

16                            **SIXTH CAUSE OF ACTION**
                   **Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq.***

17

18       137.    Plaintiff incorporates by reference each allegation set forth above.

19       138.    This cause of action is brought pursuant to the CLRA. Plaintiff does not currently

20   seek monetary damages for this cause of action and this cause of action is limited solely to

21   injunctive relief. Plaintiff intends to amend this Complaint to seek damages in accordance with the

22   CLRA after providing Defendants with notice pursuant to Cal. Civ. Code § 1782.

23   143.    At the time of any amendment seeking damages under the CLRA, Plaintiff will demonstrate

24   that the violations of the CLRA by Defendants were willful, oppressive and fraudulent, thus

25   supporting an award of punitive damages.

26       139.    Consequently, Plaintiff and the Class will be entitled to actual and punitive damages

27   against Defendants for violations of the CLRA. In addition, pursuant to Cal. Civ. Code §

28   1782(a)(2), Plaintiff and the Class will be entitled to an order enjoining the above-described acts

-25-

1  and practices, providing restitution to Plaintiff and the Class, ordering payment of costs and

2  attorneys' fees, and any other relief deemed appropriate and proper by the Court pursuant to Cal.

3  Civ. Code § 1780.

4  140.  Defendants' actions, representations and conduct have violated, and continue to

5  violate the CLRA, because they extend to transactions that are intended to result, or which have

6  resulted, in the sale of goods to consumers.

7  141.  Defendants sold Misbranded Food Products in California and throughout the United

8  States during the Class Period.

9  142.  Plaintiff and members of the Class are "consumers" as that term is defined by the

10  CLRA in Cal. Civ. Code §1761(d).

11  143.  Defendants' Misbranded Food Products were and are "goods" within the meaning of

12  Cal. Civ. Code §1761(a).

13  144.  By engaging in the conduct set forth herein, Defendants violated and continue to

14  violate Sections 1770(a)(5) of the CLRA, because Defendants' conduct constitutes unfair methods

15  of competition and unfair or fraudulent acts or practices in that they misrepresent the particular

16  ingredients, characteristics, uses, benefits and quantities of the goods.

17  145.  By engaging in the conduct set forth herein, Defendants violated and continue to

18  violate Section 1770(a)(7) of the CLRA, because Defendants' conduct constitutes unfair methods of

19  competition and unfair or fraudulent acts or practices in that they misrepresent the particular

20  standard, quality or grade of the goods.

21  146.  By engaging in the conduct set forth herein, Defendants violated and continue to

22  violate Section 1770(a)(9) of the CLRA, because Defendants' conduct constitutes unfair methods of

23  competition and unfair or fraudulent acts or practices in that they advertise goods with the intent not

24  to sell the goods as advertised.

25  147.  By engaging in the conduct set forth herein, Defendants have violated and continue

26  to violate Section 1770(a)(16) of the CLRA, because Defendants' conduct constitutes unfair

27  methods of competition and unfair or fraudulent acts or practices in that they represent that a

28  subject of a transaction has been supplied in accordance with a previous representation when it has

-26-

1      not.

2      148.    Plaintiff requests that the Court enjoin Defendants from continuing to employ the

3 unlawful methods, acts and practices alleged herein pursuant to Cal. Civ. Code § 1780(a)(2). If

4 Defendants are not restrained from engaging in these practices in the future, Plaintiff and the Class

5 will continue to suffer harm.

## SEVENTH CAUSE OF ACTION
### Restitution Based on Unjust Enrichment/Quasi-Contract

8      149.    Plaintiff incorporates by reference each allegation set forth above.

9      150.    As a result of Defendants' fraudulent and misleading labeling, advertising,

10 marketing and sales of Defendants' Misbranded Food Products, Defendants were enriched at the

11 expense of Plaintiff and the Class.

12      151.    Defendants sold Misbranded Food Products to Plaintiff and the Class that were not

13 capable of being sold or held legally and which had no economic value and were legally worthless.

14 It would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits

15 it received from Plaintiff and the Class, in light of the fact that the products were not what

16 Defendants purported them to be. Thus, it would be unjust and inequitable for Defendants to retain

17 the benefit without restitution to Plaintiff and the Class of all monies paid to Defendants for the

18 products at issue.

19      152.    As a direct and proximate result of Defendants' actions, Plaintiff and the Class have

20 suffered damages in an amount to be proven at trial.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all claims.

## PRAYER FOR RELIEF

25      WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, and on

26 behalf of the general public, prays for judgment against Defendants as follows:

27      A.      For an order certifying this case as a class action and appointing Plaintiff and

28 Plaintiff's counsel to represent the Class;

-27-

B.     For an order awarding, as appropriate, damages, restitution or disgorgement to Plaintiff and the Class for all causes of action other than the CLRA, as Plaintiff does not seek monetary relief under the CLRA, but intends to amend this Complaint to seek such relief;

C.     For an order requiring Defendants to immediately cease and desist from selling Misbranded Food Products in violation of law; enjoining Defendants from continuing to market, advertise, distribute, and sell these products in the unlawful manner described herein; and ordering Defendants to engage in corrective action;

D.     For all equitable remedies available pursuant to Cal. Civ. Code § 1780;

E.     For an order awarding attorneys' fees and costs;

F.     For an order awarding punitive damages;

G.     For an order awarding pre-and post-judgment interest; and

H.     For an order providing such further relief as this Court deems proper.

Dated: February 28, 2013

Respectfully submitted,

Pierce Gore

Ben F. Pierce Gore (SBN 128515)
PRATT & ASSOCIATES
1871 The Alameda, Suite 425
San Jose, CA 95126
Telephone: (408) 429-6506
Fax: (408) 369-0752
pgore@prattattorneys.com

*Attorneys for Plaintiff*

-28-

*Class Action Complaint*