Ben F. Pierce Gore (SBN 128515)
PRATT & ASSOCIATES
1871 The Alameda, Suite 425
San Jose, CA  95126
Telephone:  (408) 429-6506
Fax:  (408) 369-0752
pgore@prattattorneys.com

Keith M. Fleischman (admitted *pro hac vice*)
Bradley F. Silverman (admitted *pro hac vice*)
THE FLEISCHMAN LAW FIRM, PLLC
565 Fifth Avenue, Seventh Floor
New York, New York 10017
Telephone: (212) 880-9571
Fax:  (917) 591-5245
keith@fleischmanlawfirm.com
bsilverman@fleischmanlawfirm.com

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBIN REESE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ODWALLA, INC. and THE COCA-COLA COMPANY,<br><br>Defendants. | Case No. 13 Civ. 00947 (YGR)<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Judge:    Hon. Yvonne Gonzalez Rogers<br>Hearing:  To Be Determined |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES…………………………………………………………..…..ii

STATEMENT OF ISSUES…………………………………………………………... vii

PRELIMINARY STATEMENT……………………………………………………… 1

FACTS……………………………………………………………………………... .. 5

ARGUMENT………………………………………………………………………....... 7

I.      PLAINTIFF'S CLAIMS ARE BASED ON SPECIFIC PROVISIONS
        OF THE FDCA AND FDA REGULATIONS, AS INCORPORATED
        INTO THE SHERMAN LAW……………………………………………….... 7

        A.      Defendants Have Violated Specific Provisions of State and
                Federal Law……………………………………………………….... 8

        B.      The FDA Has Consistently and Conclusively Determined
                That Use of the Term "Evaporated Cane Juice" Is Unlawful…………... 11

        C.      The 2009 Draft Guidance Does Not State or Imply That the FDA
                May Ever Permit the Use of the Term "Evaporated Cane Juice"……….. 13

II.     PLAINTIFF'S CLAIMS ARE NOT SUBJECT TO THE PRIMARY
        JURISDICTION DOCTRINE……………………………………………..…. 14

III.    PLAINTIFF'S CLAIMS ARE NOT PREEMPTED……………………..…... 17

        A.      There Is No Express Preemption of Plaintiff's Claims..............................17

        B.      There Is No Implied Preemption of Plaintiff's Claims……………………19

IV.     PLAINTIFF HAS ADEQUATELY ALLEGED CLAIMS UNDER
        THE UCL, FAL, AND CLRA……………………………………………....... 21

V.      PLAINTIFF CAN ASSERT CLAIMS ON BEHALF OF A
        NATIONWIDE CLASS………………………………………………..……. 22

VI.     QUESTIONS OF FACT EXIST REGARDING THE CONTENTS
        OF FANTA ZERO ORANGE SODA THAT PRECLUDE THE
        STRIKING OF ANY ALLEGATIONS……………………………………… 25

CONCLUSION………………………………………………………………………… 25

# TABLE OF AUTHORITIES

## Cases

Astiana v. Dreyer's Grand Ice Cream, Inc.,
2012 WL 2990766 (N.D. Cal. 2012) ................................................................. 22

*Astiana v. Hain Celestial Grp.,*
905 F. Supp. 2d 1013 (N.D.Cal.2012) .............................................................. 19

*Auer v. Robbins,*
519 U.S. 452 (1997) ........................................................................................... 13

*Bassiri v. Xerox Corp.,*
463 F.3d 927 (9th Cir. 2006) ........................................................................ 12, 13

*Batwin v. Occam Networks, Inc.,*
2008 WL 2676364 (C.D. Cal. 2008) ................................................................. 14

Bell Atlantic Corp. v. Twombly,
550 U.S. 544 (2007) ............................................................................................. 7

*Bias v. Wells Fargo & Co.,*
2013 WL 1787158 (N.D. Cal. 2013) ................................................................. 25

*Brazil v. Dole Food Co., Inc.,*
2013 WL 1209955 (N.D. Cal. 2013) ................................................................. 19

*Bruno v. Eckhart Corp.,*
280 F.R.D. 540 (C.D. Cal. 2012) ...................................................................... 24

*Chae v. SLM Corp.,*
593 F.3d 936 (9th Cir. 2010) ............................................................................. 17

Chavez v. Blue Sky Natural Beverage Co.,
268 F.R.D. 365 (N.D. Cal. 2010) ...................................................................... 23

*Chavez v. Nestle USA, Inc.,*
511 Fed. Appx. 606 (9th Cir. 2013) .................................................................. 15

Churchill Vill., L.L.C. v. Gen. Elec. Co.,
169 F. Supp. 2d 1119 (N.D. Cal. 2000) ............................................................ 24

*Clark v. Time Warner Cable,*
523 F.3d 1110 (9th Cir. 2008) ........................................................................... 15

Coalition for Clean Air v. VWR Intern., LLC,
2013 WL 486287 n.1 (E.D. Cal. 2013) ............................................................. 13

County of Santa Clara v. Astra USA, Inc.,
588 F.3d 1237 (9th Cir. 2009), ......................................................................... 15

De Buono v. NYSA-ILA Med. & Clinical Servs. Fund,
520 U.S. 806 (1997) ........................................................................................... 17

*Donohue v. Apple, Inc.,*
871 F. Supp. 2d 913 (N.D. Cal. 2012) ........................................................................................... 25

Florida Lime & Avocado Growers v. Paul,
373 U.S. 132 (1963)................................................................................................................... 18, 20

*Forcellati v. Hyland's, Inc.,*
876 F. Supp. 2d 1155 (C.D. Cal. 2012) ........................................................................................ 25

*Gordon v. Church & Dwight Co.,*
2010 WL 1341184 (N.D. Cal. 2010)............................................................................................. 16

Hood v. Wholesoy & Co, Modesto Wholesoy Company LLC,
2013 WL 3553979 (N.D. Cal. 2013)................................................................................. 1, 10, 14

*In re Abbott Laboratories Norvir Anti-Trust,*
Litigat., 2007 WL 1689899 (N.D. Cal. 2007)................................................................................ 24

*In re Clorox Consumer Litigation,*
894 F. Supp. 2d 1224 (N.D. Cal. 2012) ......................................................................................... 23

*In re Farm Raised Salmon Cases,*
42 Cal.4th 1077 (2008) ......................................................................................................... 18, 19, 20

*In re Ferrero Litig.,*
794 F. Supp. 2d 1107 (S.D. Cal. 2011)............................................................................... 7, 14, 21

In re POM Wonderful LLC Marketing and Sales Pratices Litigation,
2012 WL 4490860 (C.D. Cal. 2012).............................................................................................. 23

*In re Toyota Motor Corp.,*
785 F. Supp. 2d 883 (C.D. Cal. 2011) ........................................................................................... 23

*Ivie v. Kraft Foods Global, Inc.,*
2013 WL 3296616 (N.D. Cal. 2013)............................................................................... 4, 15, 19, 20

Ivie v. Kraft Foods Global, Inc.,
2013 WL 685372 (N.D. Cal. 2013)......................................................................................... passim

*Jones v. ConAgra Foods, Inc.,*
912 F. Supp. 2d 889 (N.D. Cal. 2012) ..................................................................................... 17, 18

*Kane v. Chobani, Inc.,*
2013 WL 3703981 (N.D. Cal. 2013)................................................................................................ 4

*Kasky v. Nike, Inc.,*
27 Cal.4th 939 (2002) ..................................................................................................................... 21

*Khasin v. Hershey Co.,*
2012 WL 5471153 (N.D. Cal. 2012)........................................................................................ 17, 18

*Koehler v. Litehouse, Inc.,*
2012 WL 6217635 (N.D. Cal. 2012).............................................................................................. 24

*Kosta v. Del Monte Corp.*,
2013 WL 2147413 (N.D. Cal. 2013)............................................................................................ *passim*

Lanovaz v. Twinings North America, Inc.,
2013 WL 2285221 (N.D. Cal. 2013)............................................................................................ 22

Lanovaz v. Twinings North America, Inc.,
2013 WL 675929 (N.D. Cal. 2013).............................................................................................. 19

*Larsen v. Trader Joe's Co.*,
2013 WL 132442 (N.D. Cal. 2013).......................................................................................... 17, 18

*Lockwood v. Conagra Foods, Inc.*,
597 F. Supp. 2d 1028 (N.D. Cal. 2009) ..................................................................................... 7, 16

Mazza v. American Honda Motor Co., Inc.,
666 F.3d 581 (9th Cir. 2012)...................................................................................................... 23

*Miller v. Ghirardelli Chocolate Co.*,
2012 WL 6096593 (N.D. Cal. 2012)............................................................................................ 22

*Norwest Mortgage, Inc. v. Super. Ct.,*,
72 Cal.App.4th 214 (Cal.Ct.App.1999) ...................................................................................... 23

*Parkinson v. Hyundai Motor Am.*,
258 F.R.D. 580 (C.D. Cal. 2008) ............................................................................................... 23

*Perez v. Nidek Co., Ltd.*,
711 F.3d 1109 (9th Cir. 2013)..................................................................................................... 20

*PhotoMedex, Inc. v. Irwin*,
601 F.3d 919 (9th Cir. 2010)....................................................................................................... 21

Pom Wonderful LLC v. Coca-Cola Co.,
679 F.3d 1170 (9th Cir. 2012)..................................................................................................... 16

Riegel v. Medtronic, Inc.,
552 U.S. 312 (2008).................................................................................................................... 18

Robertson v. Methow Valley Citizens Council,
490 U.S. 332 (1989).................................................................................................................... 13

Samet v. Procter & Gamble Co.,
2013 WL 3124647 (N.D. Cal. 2013)...................................................................................... *passim*

Sateriale v. R.J. Reynolds Tobacco Co.,
697 F.3d 777 (9th Cir. 2012)......................................................................................................... 7

Schering-Plough Healthcare Products, Inc. v. Schwarz Pharma, Inc.,
586 F.3d 500 (7th Cir. 2009)....................................................................................................... 16

*Stengel v. Medtronic*,
704 F.3d 1224 (9th Cir. 2013)..................................................................................................... 17

*Sullivan v. Oracle Corp.,*
51 Cal.4th 1191 (2011) ........................................................................................ 24

Syntek Semiconductor Co. v. Microchip Tech., Inc.,
307 F.3d 775 (9th Cir. 2002).............................................................................. 15

*Taradejna v. General Mills, Inc.,*
909 F. Supp. 2d 1128 (D. Minn. 2012) ............................................................. 16

*Williams v. Gerber Products Co.,*
552 F.3d 934 (9th Cir. 2008).......................................................................... 21, 22

Wilson v. Frito-Lay North America, Inc.,
2013 WL 1320468 .............................................................................................. 13

*Won Kyung Hwang v. Ohso Clean, Inc.,*
2013 WL 1632697 (N.D. Cal. 2013)................................................................ 23, 25

*Wyeth v. Levine,*
555 U.S. 555 (2009) ........................................................................................... 18

## **Statutes**

21 U.S.C. § 301 ..................................................................................................... 7

21 U.S.C. § 331 .................................................................................................. 7, 8

21 U.S.C. § 333 ..................................................................................................... 8

21 U.S.C. § 337 ............................................................................................... 19, 20

21 U.S.C. § 343 ............................................................................................ *passim*

21 U.S.C. § 343-1(a) ....................................................................................... 17, 20

Cal. Bus. & Prof. Code § 17200 ...................................................................... 6, 21

Cal. Bus. & Prof. Code § 17500 ...................................................................... 6, 21

Cal. Civ. Code § 1750......................................................................................... 7

Cal. Civ. Code § 1770......................................................................................... 21

Cal. Health & Safety Code § 110100 .................................................................. 7

Cal. Health & Safety Code § 110660................................................................ 7, 16

Cal. Health & Safety Code § 110710................................................................ 7, 16

Cal. Health & Safety Code § 110720................................................................ 7, 16

Cal. Health & Safety Code § 110725................................................................ 7, 16

Cal. Health & Safety Code § 110760................................................................ 7, 16

Cal. Health & Safety Code § 111825 ................................................................................. 8

**Rules**

Fed. R. Civ. P. 8 ............................................................................................................... 22

Fed. R. Civ. P. 9 ............................................................................................................... 22

Fed. R. Evid. 201 .............................................................................................. 6, 13, 14

Fed. R. Evid. 901 .................................................................................................... 6, 14

Northern District of California Local Rule 7-2 ......................................................... 6, 14

Northern District of California Local Rule 7-5 ......................................................... 6, 14

**Regulations**

21 C.F.R. § 101.4 ......................................................................................................... *passim*

21 C.F.R. §101.30 ............................................................................................................. 11

21 C.F.R. § 102.5 ................................................................................................. 8, 9, 13

21 C.F.R. § 168.130 ............................................................................................ 2, 9, 15

21 C.F.R. § 184.1854 .............................................................................................. 2, 9

**Other Authorities**

FDA *Guidance for Industry - Ingredients Declared as Evaporated Cane Juice* (Oct. 2009),
    available at 2009 WL 3288507 ........................................................................... *passim*

FDA Warning Letter to Upscale Foods (Nov. 15, 2004) ........................................ 3, 12

FDA Warning Letter to Hato Potrero Farm, Inc. (Apr. 3, 2008) ................................. 12

FDA Warning Letter to Bob's Red Mill Natural Foods, Inc. (July 31, 2012) .............. 12

FDA Warning Letter to Hail Merry, LLC. (Oct. 23, 2012) ......................................... 12

FDA policy letter to Dr. Eric Wilhemsen (May 8, 2000) ............................... 2, 10, 11

FDA policy letter to Martin J. Hahn (Mar. 9, 2001) ......................................... 10, 11

**STATEMENT OF ISSUES**

1.      Where provisions of the Food, Drug and Cosmetic Act ("FDCA"), FDA regulations, and the Sherman Law require that food ingredients that fall within the defined standards of identity for sucrose or cane sirup be referred to as either "sugar," "cane sirup," or "sugar cane sirup," must ingredients used by Defendants that fall within these defined standards of identity be referred to by one of these denominations?

2.      Where there are no FDA regulations or provisions of the FDCA or the Sherman Law that permit such ingredients to be referred to as "evaporated cane juice," may Defendants, nevertheless, refer to such ingredients as "evaporated cane juice?"

3.      Where: (a) the position of the FDA has always been, and continues to be, that the use of the term "evaporated cane juice" is unlawful; and (b) specific draft guidance issued by the FDA does not propose, suggest, or imply that the use of the term "evaporated cane juice" will ever be permitted under any circumstances, can such draft guidance be a basis on which the Court may dismiss claims relating to Defendants' use of the term "evaporated cane juice" under the primary jurisdiction doctrine?

4.      Where Plaintiff's claims are premised on violations of provisions of the Sherman Law that are identical to provisions of the FDCA or FDA regulations, may such claims be dismissed on preemption grounds?

5.      Under California law, may allegations of a nationwide class be stricken at the pleadings stage where: (a) a California defendant is alleged to have engaged in misconduct in California that caused harm to out-of-state consumers; (b) Defendants have not satisfied their burden to show that non-California law should be applied to redress injuries of such out-of-state consumers; and (c) no choice of law analysis has been conducted that shows that the laws of other states are materially different as they relate to consumers' rights to seek redress for injuries resulting from the sale of illegal and misbranded food products?

# **PRELIMINARY STATEMENT**

Plaintiff Robin Reese ("Plaintiff") respectfully submits this memorandum of law in opposition to the motion of defendants Odwalla, Inc. and The Coca-Cola Company (collectively, "Defendants") to dismiss Plaintiff's complaint ("Complaint") or, alternatively, to strike portions of the Complaint.  For the reasons set forth herein, Plaintiff respectfully requests that the Court deny this motion in its entirety.

Defendants engaged in a scheme to deceive and defraud consumers by placing misleading and deceptive labels on food products.  Specifically, Defendants added sugar to their products.  Instead of listing sugar as an ingredient on labels, however, Defendants attempted to deceive consumers by referring to this sugar as "evaporated cane juice."  Both California's Sherman Law and regulations issued by the Food and Drug Administration ("FDA") bar the use of the term "evaporated cane juice" to identify a food ingredient.

On July 12, 2013, this Court issued a decision dismissing similar evaporated cane juice claims under the primary jurisdiction doctrine.  *See Hood v. Wholesoy & Co, Modesto Wholesoy Company LLC*, 2013 WL 3553979, at *6 (N.D. Cal. 2013).  Respectfully, Plaintiff believes that, in *Hood*, the Court did not have the opportunity to consider certain key points.  Respectfully, these points demonstrate that Plaintiff may assert claims premised on the use of the term "evaporated cane juice," and that the primary jurisdiction doctrine should not be applied.

In *Hood*, the Court found that the plaintiff "offer[ed] no authority to support the contention that use of that term ['evaporated cane juice'] is unlawful, whether under enforceable FDA/Sherman Law standards or any others." *Id* at *5.  The *Hood* decision focused on draft guidance issued by the FDA in 2009 regarding what term should be used by food manufactures to identify the ingredients they had denominated as "evaporated cane juice."  Nothing in this draft guidance suggested or implied that use of the term "evaporated cane juice" had ever been, or would ever be, permitted under any circumstances.  It stated the exact opposite position.  The Court found this draft guidance to be unenforceable and an insufficient basis on which to find that the products at issue in *Hood* were actually illegal and misbranded.  *Id.*

In the present case, unlike in *Hood*, Plaintiff alleges that Defendants' use of the term

"evaporated cane juice" is illegal under specific provisions of both the FDCA and Sherman Law. The basis of Plaintiff's allegation does not fall squarely on the 2009 draft guidance. Here, Plaintiff can identify specific FDA regulations that have been violated. To begin, 21 C.F.R. § 101.4(a)(1) states that "[i]ngredients required to be declared on the label or labeling of a food, including foods that comply with standards of identity, except those ingredients exempted by § 101.100, shall be listed by common or usual name . . . ." This regulation is designed to prevent food manufactures from deceiving consumers by referring to undesirable ingredients (such as sugar) by different names that are misleading (such as "evaporated cane juice").

The ingredients referred to as "evaporated cane juice" are, in actuality, what is commonly known as "sugar" or "cane sirup." In 21 C.F.R. § 168.130, the FDA sets the standard of identity for cane sirup. Ingredients that fall within this defined standard of identity must be referred to as "cane sirup" or "sugar cane sirup." *See* 21 C.F.R. § 168.130(c) and (d); 21 C.F.R. § 101.4(a)(1). In 21 C.F.R. § 184.1854, the FDA sets the standard of identity for sucrose. Under 21 C.F.R. § 101.4(b)(20), anything that falls within the broadly defined standard of identity for sucrose must be referred to as "sugar."

The ingredients referred to by Defendants as "evaporated cane juice" fall within the standards of identity for either sucrose or cane sirup. Therefore, under existing FDA regulations, these ingredients must be referred to as either "sugar," "cane sirup," or "sugar cane sirup." Under no circumstances can they be referred to as "evaporated cane juice." Indeed, FDA records show that the FDA has specifically considered the term "evaporated cane juice" to be unlawful since at least 2000. *See*, *e.g.*, May 8, 2000 FDA Policy Letter (attached as Silverman Decl. Ex. 6)[1] (stating that ingredients that fall within the aforementioned standards of identity "should not be declared in the ingredient declaration by names which suggest that the ingredients are juice, e.g 'evaporated ___ juice' or '___ nectar', or in such a way as to suggest that the ingredients contain no sugar, e.g. 'natural extract of ___'. Such representations are false and misleading and fail to

---

[1]     References to exhibits annexed to the accompanying Request for Judicial Notice and Declaration of Bradley F. Silverman in Support Thereof dated August 2, 2013 are denominated as "Silverman Decl. Ex. __." Plaintiff respectfully requests that the Court take judicial notice of the exhibits annexed to this declaration.

1  reveal the basic nature of the food and its characterizing properties, i.e. the ingredients are sugar

2  or syrups."); November 15, 2004 FDA Warning Letter to Upscale Foods, Inc. (attached as

3  Silverman Decl. Ex. 2) ("Your product label declares 'organic evaporated cane juice' in the

4  ingredient list; however, the common or usual name for this ingredient is sugar.").  In addition,

5  the FDA has issued at least one other policy letter and sent at least three other warning letters

6  relating to the use of the term "evaporated cane juice."  *See* Silverman Decl. Exs. 3-5, 7; RJN[2]

7  Exs. J-K; section I.B, *infra*.

8       Since at least 2000, the FDA has consistently considered use of the term "evaporated cane

9  juice" to be unlawful.  This has not changed.  Nor has the FDA ever indicated that it is

10 considering a potential change of position on this point.  In 2009, the FDA issued the draft

11 guidance referenced in *Hood*.[3]  Nothing in that draft guidance proposed permitting the use of the

12 term "evaporated cane juice," and nothing in that draft guidance suggested or implied that the

13 FDA would ever permit use of the term of "evaporated cane juice" under any circumstances.

14 Rather, that draft guidance only raised the issue of whether the FDA should require the use of the

15 specific non-misleading term "dried cane syrup" to identify the ingredients that have been

16 referred to as "evaporated cane juice."  Even if there is an ongoing debate as to whether these

17 ingredients should be referred to as "sugar," "cane sirup," "dried cane syrup," or any number of

18 these terms, ***there is no debate within the FDA as to whether these ingredients may be referred***

19 ***to as "evaporated cane juice."***   The FDA has conclusively determined that this term is unlawful

20 and nothing in the draft guidance indicates any potential change in this position in the future.

21 Plaintiff's claims are premised on Defendants' use of this unlawful term which, at all relevant

22 times, has been, and will continue to be, unlawful.  For these reasons, the primary jurisdiction

23 doctrine is inapplicable to Plaintiff's claims.

24      In other cases within the Northern District of California, claims premised on the use of the

25 term "evaporated cane juice" have been found to be not preempted and not subject to the primary

---

26  [2]      References to Defendants' Request for Judicial Notice are denominated herein as "RJN."
27 For the reasons set forth below, Plaintiff respectfully requests that the Court deny Defendants'
request to take judicial notice of exhibits B through I and L through T.  *See* notes 5, 13, 14, *infra*.

28  [3]      This draft guidance is attached as RJN Ex. A (also available at 2009 WL 3288507).

1   jurisdiction doctrine.  In *Ivie v. Kraft Foods Global, Inc.*, 2013 WL 685372, at *6-7, 12 (N.D. Cal.

2   2013) and *Ivie v. Kraft Foods Global, Inc.*, 2013 WL 3296616, at *7-8 (N.D. Cal. 2013), Judge

3   Whyte, *inter alia*, refused to dismiss evaporated cane juice claims on preemption or primary

4   jurisdiction grounds.  In *Samet v. Procter & Gamble Co.*, 2013 WL 3124647, at *8 (N.D. Cal.

5   2013), Magistrate Judge Grewal similarly found that evaporated cane juice claims cannot be

6   dismissed on either preemption or primary jurisdiction grounds.[4]  In these cases, the courts

7   specifically considered the 2009 draft guidance, but did not find it to be a basis for dismissal.  *See*

8   *Ivie*, 2013 WL 685372, at *12; *Samet*, 2013 WL 3124647, at *8.  Just as the claims in those cases,

9   Plaintiff's claims should not be dismissed under the primary jurisdiction doctrine.

10          In addition to satisfying this threshold issue, Plaintiff's claims are meritorious and should

11   not be dismissed on the pleadings on other grounds.  Here, Defendants intended to deceive

12   consumers to increase sales and profits.  As the dangers of sugary drinks (including obesity and

13   diabetes) have become clear, consumers are seeking healthier products that do not include sugar.

14   Recognizing this trend, Defendants and other food manufactures have hidden the existence of

15   sugar in their products.  On ingredient lists on product labels, they refer to sugar as "evaporated

16   cane juice."  This is a term that is unfamiliar and misleading to consumers.  It is specifically used

17   to hide the fact that these products contain sugar.

18          This practice is not only harmful to the health and well-being of consumers, it is illegal.

19   Any product that lists evaporated cane juice as an ingredient may not be lawfully sold or

20   manufactured.  These acts on the part of Defendants violate the Sherman Law, which, *inter alia*,

21   sets requirements for the labeling of food products.  These violations of the Sherman Law

22   constitute the predicate acts on which Plaintiff's statutory and common law claims are based.

23          Significantly, the Sherman Law adopts and incorporates the provisions of the Food, Drug,

24   and Cosmetic Act ("FDCA") and FDA regulations.  Therefore, any violation of the FDCA or

25   FDA regulations is automatically a violation of the Sherman Law.  To that end, the specific

26

---

27   [4]      Additionally, in *Kane v. Chobani, Inc.*, 2013 WL 3703981 (N.D. Cal. 2013), Judge Koh,
     *inter alia*, refused to dismiss evaporated cane juice claims on either preemption or primary

28   jurisdiction grounds.  That decision included a detailed analysis of the 2009 draft guidance.  The
     *Kane* decision, however, although instructive, has been vacated.

1  provisions of the FDCA and FDA regulations relating to required ingredient names are

2  incorporated into the Sherman Law.  As a result, these relevant provisions of the Sherman Law

3  are necessarily identical to those of the FDCA.  For that reason, Plaintiff's claims premised on

4  violations of the Sherman Law are not preempted.  For that same reason, the products at issue

5  violate both the Sherman Law and FDCA, and are therefore deemed illegal and misbranded.

6  Because these products are illegal, they are actually worth zero and may not be lawfully resold by

7  consumers.  Plaintiff and other consumers were injured when they paid money for these worthless

8  products that they believed to be legal and in compliance with state and federal law.

9         Additionally, violations of both the Sherman Law and FDCA are strict liability crimes that

10  do not require a showing of fraudulent intent.  For this reason, the manufacture and sale of the

11  misbranded products at issue are illegal, regardless of whether Defendants intended to deceive or

12  defraud (although, Defendants did act with such intent).  Defendants' violations of the Sherman

13  Law also constitute predicate acts under the Unfair Competition Law, False Advertising Law, and

14  California Legal Remedies Act.  Plaintiff now brings claims under these statutes on behalf of

15  herself and a class of consumers who purchased Defendants' illegal and misbranded products.

16                                    **FACTS**

17         Defendants and other food manufactures use the term "evaporated cane juice" on products

18  to hide the fact that these products contain sugar.  Complaint at ¶¶ 8, 22, 24, 25, 51, 81.  While

19  food manufactures engaging in this unlawful practice suggest that evaporated cane juice is a

20  unique substance, it is not.  *Id* at ¶¶ 5, 14, 57.   In actuality, this ingredient falls within the defined

21  standard of identify that the FDA has set for either sucrose (which must be referred to as "sugar")

22  or cane sirup (which must be referred to as either "cane sirup" or "sugar cane sirup").  *Id*.

23         Plaintiff purchased products manufactured, distributed, or sold by Defendants that list

24  evaporated cane juice as an ingredient.  *Id* at ¶ 75.   The ingredient identified as "evaporated cane

25  juice," however, is what the FDA defines as sugar or cane sirup.  *Id* at ¶¶ 5, 14, 57.   Specifically,

26  Plaintiff purchased Odwalla Quencher Pomegranate Limeade; Odwalla Protein Strawberry

27  Protein Monster; Odwalla Chewy Nut Bar Chocolate Almond Coconut; and Odwalla Chewy Nut

28

1   Bar White Chocolate Macadamia.[5]  *Id* at ¶ 75.  Plaintiff did not know what evaporated cane juice

2   really was.  *Id* at ¶¶ 76, 78.   Most consumers do not know what evaporated cane juice is and

3   would be misled by this ingredient identification.  *Id* at ¶¶ 80, 82.

4          Plaintiff also believed these products to be legal.  *Id* at ¶ 82.  Had Plaintiff been aware that

5   these products were illegal, misbranded, or in violation of federal or state law, she would not have

6   purchased them.  *Id*.  Further, Plaintiff relied to her detriment on false and misleading labels on

7   these products and believed these products to be healthier than they were.  *Id* at ¶¶ 76-80.  Had

8   Plaintiff known what evaporated cane juice really was, she would not have purchased these

9   products.  *Id*.  Moreover, these products were illegal, worthless, and could not be lawfully resold.

10  *Id* at ¶ 82.  Thus, Plaintiff paid money for products that were worth zero.  *Id* at ¶¶ 61-62, 82.

11         Defendants also sell a number of other products that list evaporated cane juice as an

12  ingredient.  *Id* at ¶ 4.  They include Odwalla Apple Toffee Pistachio Chewy Nut Bar, Odwalla

13  Strawberry Pomegranate Superfood Bar, Odwalla Chocolate Protein Monster drink, Odwalla

14  Vanilla Al'Mondo Super Protein drink, Odwalla Citrus C Monster drink, Odwalla Light

15  Lemonade, and Odwalla Light Limeade.  *Id*.  Collectively, these other products are referred

16  herein as the "Substantially Similar ECJ Products."  Additionally, the Coca-Cola Company's

17  website previously stated that Fanta Zero Orange soda contains evaporated cane juice.  *Id*;

18  Silverman Decl. at ¶ 11, Ex. 9.  Defendants apparently now take the position that either the

19  website was inaccurate, or that Fanta Zero Orange no longer contains evaporated cane juice.

20         On March 1, 2013, Plaintiff initiated this action, alleging claims on behalf of herself and

21  a class of similarly situated persons who purchased Defendants' products.  Therein, Plaintiff

22  specifically alleges separate causes of action against Defendants under the "fraudulent,"

23  "unlawful," and "unfair" prongs of the Unfair Competition Law, Cal. Bus. & Prof. Code §

24  17200, *et seq*. ("UCL"); separate causes of action under the "misleading" and "untrue" prongs of

25  the False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq*. ("FAL"); a cause of action

26

27  [5]       Defendants ask that the Court take judicial notice of documents purporting to be labels of
    the products at issue (RJN Exs. P-T).  The Court should deny that request.  It is entirely unclear if
28  these exhibits accurately reflect the illegal and misbranded labels at issue.  These exhibits have
    not been authenticated in anyway.  *See* Fed. R. Evid. 201(c), 901(a); Local Rules 7-2(d), 7-5.

under the California Legal Remedies Act, Cal. Civ. Code § 1750, *et seq* ("CLRA"); and a common law cause of action for unjust enrichment.  On June 3, 2013, Defendants filed a motion to dismiss the Complaint.  Plaintiff now opposes that motion.

## ARGUMENT

In considering a motion to dismiss, all allegations in the complaint must be taken as true and construed in the light most favorable to plaintiff.  *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 783 (9th Cir. 2012).  A complaint need only allege sufficient facts to show "a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Assessing plausibility, however, does not involve analysis of the merits.  *Id* at 556-57.  "[I]t is a 'rare situation' where granting a motion to dismiss claims under the UCL is appropriate."  *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1115 (S.D. Cal. 2011).

## I.   PLAINTIFF'S CLAIMS ARE BASED ON SPECIFIC PROVISIONS OF THE FDCA AND FDA REGULATIONS, AS INCORPORATED INTO THE SHERMAN LAW

The FDCA, 21 U.S.C. §§ 301 *et. seq.*, "gives the FDA the responsibility to protect the public health by ensuring that foods are safe, wholesome, sanitary, and properly labeled." *Lockwood v. Conagra Foods, Inc.*, 597 F. Supp. 2d 1028, 1030 (N.D. Cal. 2009).  21 U.S.C. § 331 prohibits the misbranding of food in interstate commerce, and 21 U.S.C. § 343 sets forth conditions under which food is considered "misbranded." In general, food is "misbranded" if its labeling is "false or misleading in any particular." 21 U.S.C. § 343(a)(1).  Through the Sherman Law, Cal. Health & Safety Code § 110660, *et seq.*, California has expressly adopted the FDCA labeling requirements as its own.  Cal. Health & Safety Code § 110100  ("All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act . . . shall be the food regulations of this state."). Therefore, any violation of the FDCA or FDA regulations is also a violation of the Sherman Law.[6]  Moreover, any violation of either the FDCA or

---

[6]    Within the Sherman Law, California has also enacted a number of statutes (which have also been violated by Defendant) that do not expressly adopt federal requirements, but set state requirements that are consistent with federal requirements.  *See, e.g.*, Cal. Health & Safety Code § 110660 (prohibiting labels that are false or misleading); § 110710 (requiring identification of ingredients in conformity with established standards of identity); § 110720 (requiring that ingredients be identified by their common or usual names); § 110725(a) (same); § 110760 (unlawful to "manufacture, sell, deliver, hold, or offer for sale any food that is misbranded").

Sherman Law is a strict liability crime.  Therefore, Defendants' acts constitute violations of the FDCA and Sherman Law, regardless of Defendants' intent.[7]

**A.**     **Defendants Have Violated Specific Provisions of State and Federal Law**

Under both the FDCA and Sherman Law, it is illegal to denominate an ingredient in a food product as "evaporated cane juice."  Defendants mistakenly assert that the sole basis for this statement is the 2009 draft guidance.  In fact, use of the term of "evaporated cane juice" violates several specific FDA regulations.  21 U.S.C. § 343(a)(1) provides that: "A food shall be deemed to be misbranded . . . [if] its labeling is false or misleading in any particular."  Pursuant to its authority to promulgate regulations relating to such provisions of the FDCA, the FDA issued 21 C.F.R. § 101.4(a)(1), which provides that "[i]ngredients required to be declared on the label or labeling of a food, including foods that comply with standards of identity, except those ingredients exempted by § 101.100, shall be listed by common or usual name in descending order of predominance by weight on either the principal display panel or the information panel . . . . ."  Additionally, 21 C.F.R. § 102.5(a) provides that:

> The common or usual name of a food, which may be a coined term, shall accurately identify or describe, in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients. The name shall be uniform among all identical or similar products and may not be confusingly similar to the name of any other food that is not reasonably encompassed within the same name. Each class or subclass of food shall be given its own common or usual name that states, in clear terms, what it is in a way that distinguishes it from different foods.

21 C.F.R. § 102.5(d) further states that "[a] common or usual name of a food may be established by common usage or by establishment of a regulation in subpart B of this part, in part 104 of this chapter, *in a standard of identity, or in other regulations in this chapter*" (emphasis added).  The Complaint specifically alleges that "evaporated cane juice" is not the common or usual name of the ingredients at issue.  Complaint at ¶¶ 14, 52.  Even if FDA regulations did not set a standard

---

[7]     Under 21 U.S.C. § 333(a)(1), a person who violates 21 U.S.C. § 331, *regardless of intent*, "shall be imprisoned for not more than one year or fined not more than $1,000, or both."  In contrast, 21 U.S.C. § 333(a)(2) provides that, if any person, "commits such a violation *with the intent to defraud or mislead*, such person shall be imprisoned for not more than three years or fined not more than $10,000, or both" (emphasis added).  The Sherman Law similarly sets penalties for violations both with and without "intent to defraud or mislead."  *See* Cal. Health & Safety Code §§ 111825(a) & (c).

of identity for these ingredients, as alleged in the Complaint, use of the term would still violate 21 U.S.C. § 343(a)(1), 21 C.F.R. § 101.4(a)(1), and 21 C.F.R. § 102.5.  *Id.*

Nevertheless, 21 C.F.R. § 168.130 sets the standard of identity for cane sirup:

Cane sirup is the liquid food derived by concentration and heat treatment of the juice of sugarcane (Saccharum officinarum L.) or by solution in water of sugarcane concrete made from such juice. It contains not less than 74 percent by weight of soluble solids derived solely from such juice. The concentration may be adjusted with or without added water. It may contain one or more of the optional ingredients provided for in paragraph (b) of this section. All ingredients from which the food is fabricated shall be safe and suitable.

*See* 21 C.F.R. § 168.130(a).  All ingredients that fall within this standard of identity must be identified as "cane sirup" or "sugar cane sirup."[8]  *See* 21 C.F.R. § 168.130(c) and (d); 21 C.F.R. § 101.4(a)(1).   21 C.F.R. § 184.1854 sets the standard of identity for sucrose.  It states that:

Sucrose ($C_{12}H_{22}O_{11}$, CAS Reg. No. 57–50–11–1) sugar, cane sugar, or beet sugar is the chemical beta-D-fructofuranosyl-alpha-D-glucopyranoside. Sucrose is obtained by crystallization from sugar cane or sugar beet juice that has been extracted by pressing or diffusion, then clarified and evaporated

*See* 21 C.F.R. § 184.1854(a).  Any ingredient that falls within this broadly defined standard of identify must be referred to as "sugar."  *See* 21 C.F.R. § 101.4(b)(20) ("For purposes of ingredient labeling, the term sugar shall refer to sucrose, which is obtained from sugar cane or sugar beets in accordance with the provisions of § 184.1854 of this chapter.").  The ingredients that Defendants denominate as "evaporated cane juice" fall within the standards of identity of either cane sirup or sucrose.  Complaint at ¶¶ 5, 14, 57.  Therefore, these ingredients must be referred to as either "sugar," "cane sirup," or "sugar cane sirup."[9]  As held in *Samet*:

While it may be true that the FDA is developing a specific regulation on this issue, there is already an FDA regulation governing the use of evaporated cane juice as an ingredient. 21 C.F.R. 168.130 requires that "[t]he common or usual name of a food" shall be used to "identify or describe, in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients." As alleged, Defendants' products contain "sugar," which should be

---

[8]     Sirup may alternatively be spelled as "syrup."  *See* 21 C.F.R. § 168.130(c).

[9]     To the extent Defendants suggest that evaporated cane juice is something other than sugar or cane sirup, at best, that is a question of fact that cannot be determined on a motion to dismiss. Defendants, however, do not cite any authority for such a proposition.

cited by its "common or usual name" under the FDA regulations. This is sufficient to proceed no matter what final guidance may be issued by the agency. *See Samet*, 2013 WL 3124647, at *8

In *Hood*, the Court found that the plaintiff "offer[ed] no authority to support the contention that use of that term [evaporated cane juice] is unlawful, whether under enforceable FDA/Sherman Law standards or any others."  *Hood*, 2013 WL 3553979, at *5.  Here, however, Plaintiff identifies the aforementioned specific statutes and regulations that render use of the term "evaporated cane juice" unlawful.  For all these reasons, independent of the 2009 draft guidance,[10] the use of term "evaporated cane juice" is illegal.

Of course, Defendants would prefer not to use terms such as "sugar," "cane sirup," or "sugar cane sirup" because they are undesirable to health-conscious consumers who try to avoid sugared products for themselves and their families. Complaint at ¶¶ 3, 8, 51.  In consumers' minds, the term "sirup" is also undesirable because it connotes an unhealthy, thick, sugary substance.  To that end, Defendants would prefer to use the term "evaporated cane juice" because consumers are unfamiliar with it and it does not contain words like "sugar" and "syrup," which would immediately cause concern in the minds of consumers.  *Id* at ¶¶ 8, 51.  At the same time, the word "juice" suggests that this inherently unhealthy substance is not so unhealthy.  *Id* at ¶ 53.  Indeed, in *Ivie*, the court found that a reasonable consumer could be misled by such use of the word "juice." *Ivie*, 2013 WL 685372, at *12.[11]

_____

[10]    While Defendants argue that the 2009 draft guidance is not binding (a point with which Plaintiff disagrees (*see* section I.B, *supra*)), it is certainly relevant to Plaintiff's claims that a reasonable consumer would be misled by the term "evaporated cane juice."  *See Ivie*, 2013 WL 685372, at *12 ("The FDA's 2009 industry guidance statement is relevant to the issue of whether these labels could be deceptive or misleading to a reasonable consumer, and there is no risk of undermining the FDA's rulemaking expertise in allowing a fact finder to make this determination.").

[11]    The FDA shares the view that these ingredients cannot be called "juice."  *See* May 8, 2000 FDA Policy Letter (Silverman Decl. Ex. 6) at 2 ("[These ingredients] are not juice . . . . As you know, many of FDA's criminal prosecutions of manufacturers and seizures of fruit juices for economic adulteration have involved precisely these sweeteners being misrepresented in such a way as to mislead consumers."); March 9, 2001 FDA Policy Letter (Silverman Decl. Ex. 7) ("[W]e have not and do not consider the liquid extracted from sugar cane or sugar beets to be a 'vegetable juice' for purposes of identity or juice percentage declaration.").

**B.      The FDA Has Consistently and Conclusively Determined
that Use of the Term "Evaporated Cane Juice" Is Unlawful**

The position of the FDA is, and has always been, that use of the term "evaporated cane

juice" is unlawful.  Since at least 2000 (about when food manufactures began regularly using the

term (*see* RJN Ex. A at 4)), through the present, and into the future, the FDA has considered,

continues to consider, and will continue to consider the term "evaporated cane juice" to be

illegal.  The FDA has never indicated that it may change this position in the future.

On May 8, 2000, the FDA issued a policy letter discussing use of ingredients that fall

within the standards of identity for sucrose, cane sirup, corn syrup, and high fructose corn syrup.

*See* Silverman Decl. Ex. 6.  The letter made clear that:

> These sweeteners should not be declared in the ingredient declaration by names
> which suggest that the ingredients are juice, e.g "evaporated ___  juice" or "___
> nectar", or in such a way as to suggest that the ingredients contain no sugar, e.g.
> "natural extract of ___".  *Such representations are false and misleading and fail to
> reveal the basic nature of the food and its characterizing properties, i.e. the
> ingredients are sugar or syrups.* They are not juice and we should also point out
> that it is false and misleading to include any of these sweeteners in the fruit juice
> percentage declaration on the label. As you know, many of FDA's criminal
> prosecutions of manufacturers and seizures of fruit juices for economic adulteration
> have involved precisely these sweeteners being misrepresented in such a way as to
> mislead consumers.

*Id* at 2 (emphasis added).  On March 9, 2001, the FDA issued another policy letter stating that

such ingredients cannot be identified as "juice":

> [W]e have not and do not consider the liquid extracted from sugar cane or sugar
> beets to be a "vegetable juice" for purposes of identity or juice percentage
> declaration. Our conclusion is based on several considerations. First, we consider
> the term "vegetable juice" to refer to the juices from common vegetables which
> consumers are accustomed to eating as "vegetables" in their diet. Sugar cane is not
> such a vegetable. While consumers can buy pieces of sugar cane, they do not eat it
> as a vegetable but use it as a source of sugar by chewing on the cane or its fibers or
> placing the cane in a beverage to sweeten it. We are not suggesting that sugar cane
> is not vegetable in the broadest sense of classifying an object as an "animal",
> "vegetable" or "mineral". However, many similar plant juices or extracts which
> might be consumed are similarly not "vegetable juice", e.g. maple sap, sorghum
> syrup, sugar beet syrup, floral nectars, etc. These products are edible juices or
> extracts of plants but they are not the juice of common vegetables and are not,
> therefore, "vegetable juice" for purposes of 21 USC 343(i)(2) and 21 CFR §101.30.

*See* Silverman Decl. Ex. 7.

On November 15, 2004, the FDA issued a warning letter to Upscale Foods, Inc., stating that it was in violation of FDA regulations because its "product label declares 'organic evaporated cane juice' in the ingredient list; however, the common or usual name for this ingredient is sugar." *See* Silverman Decl. Ex. 2 at 1.  Defendants argue - - without authority - - that FDA warning letters are often "factually inaccurate or legally suspect" and are designed to force recipients to "implement the changes FDA requests to avoid a public dispute with the Agency." Def. Mem. at 10.  The FDA is not some schoolyard bully and, in fact, will only issue warning letters "[w]hen FDA finds that a manufacturer has significantly violated FDA regulations." *See* Silverman Decl. Ex. 8.

Since 2000, the FDA has also issued other warning letters.  On April 3, 2008, the FDA sent such a warning letter to Hato Potrero Farm, Inc. stating that: "'evaporated sugar cane juice' is not a common or usual name. It is your responsibility to determine what this ingredient is (i.e., whether it is sucrose or another sweetener) and declare its common or usual name (see 21 CFR 101.4(b)(20))." *See* Silverman Decl. Ex. 3 at 3.

On July 31, 2012, the FDA issued a warning letter to Bob's Red Mill Natural Foods, Inc. regarding its unlawful use of the term "evaporated cane juice":

> Your Whole Grain Low-Carb Bread Mix is misbranded within the meaning of Section 403(i)(2) of the Act [21 U.S.C. § 343(i)(2)], because it is fabricated from two or more ingredients, but the label fails to declare the common or usual name of each ingredient in the product in accordance with 21 CFR 101.4. Specifically, your product lists, "Evaporated Cane Juice" in the ingredient statement; however, evaporated cane juice is not the common or usual name of any type of sweetener.

*See* Silverman Decl. Ex. 4 at 1.  On October 23, 2012, the FDA issued a warning letter with very similar language to Hail Merry, LLC after that company used the term "evaporated cane juice" on its product labels.  *See* Silverman Decl. Ex. 5 at 3.[12]

Further, the FDA's interpretations of its own regulations in such policy and warning letters are entitled to deference by the courts.  *See Bassiri v. Xerox Corp.*, 463 F.3d 927, 930 (9th Cir. 2006).  As evidenced by these letters, since at least 2000, the FDA's position on use of the

---

[12]     Unlike certain documents of which Defendants ask the Court to take judicial notice, the warning letters are referenced in the complaint (Complaint at ¶¶ 9, 45-49, 58-59), as is the draft guidance which explicitly cites to the two policy letters (*Id* at ¶¶ 44, 46-48; RJN Ex. A at 7).

term "evaporated cane juice" has been consistent and unwavering, and it has never indicated that it may permit the use of this term in the future.

## C.   The 2009 Draft Guidance Does Not State or Imply That the FDA May Ever Permit the Use of the Term "Evaporated Cane Juice"

In October 2009, the FDA issued a draft of *Guidance for Industry - Ingredients Declared as Evaporated Cane Juice*.  *See* RJN Ex. A.  While only draft guidance, it makes clear that food manufactures can use an alternative approach only, "if the approach *satisfies the requirements of the applicable statutes and regulations*."  *Id* at 3 (emphasis added).  Here, the use of the term "evaporated cane juice" does not otherwise "satisf[y] the requirements of the applicable statutes and regulations."

Further, as Defendants note, this document states that "This draft guidance, when finalized, *will represent* the Food and Drug Administration's (FDA's) current thinking on this topic." *Id* (emphasis added).  In the "Background" section, however, this draft guidance discusses the *current* regulatory scheme.  It states that the FDA's "*current policy*" is that use of the term "evaporated cane juice" is unlawful and runs afoul of 21 U.S.C. § 343(a)(1), 21 C.F.R. § 101.4(a)(1), and 21 C.F.R. § 102.5.  *Id* at 4-6.  This interpretation is entirely consistent with the relevant FDA regulations.  Moreover, this interpretation by the FDA of its own regulations (just as the policy and warning letters) is entitled to deference because an agency's interpretation of its own regulations is "under our jurisprudence, controlling unless 'plainly erroneous or inconsistent with the regulation.'" *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (quoting *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332 (1989)).  This jurisprudence also applies to informal interpretations such as this.[13]  *See Bassiri*, 463 F.3d at 930; *Wilson v. Frito-Lay North America, Inc.*, 2013 WL 1320468, at *10 (informal statement on FDA website given deference).

Critically, the only change to existing FDA policy that the draft guidance proposes is that

_____

[13]      In an effort to blunt the effect of the draft guidance, Defendants ask the Court to take judicial notice of certain FDA documents relating to good guidance practices (RJN Exs. L-O).  The Court should deny this request.  These documents are not relevant, not referenced in the Complaint and, even if the Court were to take judicial notice of the existence of these documents, the Court cannot take judicial notice of the truth of their contents.  *See Coalition for Clean Air v. VWR Intern., LLC,* 2013 WL 486287, at *22 n.1 (E.D. Cal. 2013); Fed. R. Evid. 201.

1    ingredients that have been referred to as "evaporated cane juice" be specifically referred to as

2    "dried cane syrup."  RJN Ex. A at 6-7.  ***Nothing in this draft guidance proposes or suggests that***

3    ***the term "evaporated cane juice" should ever be permitted under any circumstances.***  Under

4    FDA regulations and the FDA's interpretation of those regulations, that practice has been, and

5    continues to be, illegal.  *See Ivie*, 2013 WL 685372, at *12 ("FDA's position is thus clear that it

6    considers "evaporated cane juice" labels to be "false and misleading" under 21 U.S.C.

7    343(a)(1)").  The FDA has never indicated that this may change.[14]  Further, this document is

8    only draft guidance interpreting existing regulations.  It is not a proposed rule that would alter

9    existing regulations.  The FDA has continually and definitively found that the acts of Defendants

10   that form the basis for Plaintiff's claims - - use of the term "evaporated cane juice" - - is illegal.[15]

11       For all these reasons, Defendants' acts violate the FDCA and the Sherman Law. These

12   violations of the Sherman Law are also sufficient to constitute predicate acts on which UCL,

13   FAL, and CLRA claims may be based.  *In re Ferrero Litigation*, 794 F. Supp. 2d at 1116.

14   **II.    PLAINTIFF'S CLAIMS ARE NOT SUBJECT TO THE PRIMARY JURISDICTION DOCTRINE**

15        "The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a

16   complaint without prejudice pending the resolution of an issue within the special competence of

17   an administrative agency. . . and is to be used only if a claim involves an issue of first impression

18   ───────────────────

19   [14]     Defendants citation to a handful of cherry-picked letters (out of dozens sent to the FDA)
     requesting that the FDA permit the use of the term "evaporated cane juice" is unavailing and does
20   not suggest any potential change in FDA policy.  Rather, they are nothing more than ignored
     requests from food manufacturers who want to be able to use the misleading term to increase
21   sales.  If anything, they are only further evidence of these food manufacturers' deceitful intent.
     Regardless, the Court should deny Defendants' request to take judicial notice of these letters
22   (RJN Exs. B-I).  While the truth of contents of letters from the FDA are judicially noticeable, the
     same is not so for letters to the FDA.  *See Batwin v. Occam Networks, Inc.*, 2008 WL 2676364, at
23   *2 n.3 (C.D. Cal. 2008).  The Court should not even take judicial notice of the existence of these
     letters because they have not been authenticated, are not referenced in the Complaint, and, even if
24   the Court could take judicial notice of their existence, the Court cannot take judicial notice of the
     truth of their contents.  *See* Fed. R. Evid. 201, 901; Local Rules 7-2(d), 7-5.
25

26   [15]     For these reasons, respectfully, Plaintiff believes that the Court's determination in *Hood*
     that the FDA's position on the term evaporated cane juice is "unsettled" is inaccurate.  *See Hood*,
27   2013 WL 3553979, at *5.  While there may be some question as to whether this substance is
     properly denominated as "sugar," "cane sirup," or "dried cane sirup," there is no question that this
28   substance cannot be called "evaporated cane juice."  The FDA has never suggested otherwise.

1   or a particularly complicated issue Congress has committed to a regulatory agency." *Clark v.*

2   *Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). A court traditionally weighs four

3   factors in deciding whether to apply the primary jurisdiction doctrine: "(1) the need to resolve an

4   issue that (2) has been placed by Congress within the jurisdiction of an administrative body

5   having regulatory authority (3) pursuant to a statute that subjects an industry or activity that (4)

6   requires expertise or uniformity in administration." *Syntek Semiconductor Co. v. Microchip*

7   *Tech., Inc.*, 307 F.3d 775, 781 (9th Cir. 2002). "Where, as here, the doctrine is invoked at the

8   motion to dismiss stage, the question is "'whether the complaint plausibly asserts a claim that

9   would not implicate the doctrine.'" *Chavez v. Nestle USA, Inc.*, 511 Fed. Appx. 606, 607 (9th

10  Cir. 2013) (quoting *County of Santa Clara v. Astra USA, Inc.*, 588 F.3d 1237, 1252 (9th Cir.

11  2009), *rev'd on other grounds*, 131 S. Ct. 1342, 179 L. Ed.2d 457 (2011)).

12          As discussed above, the provisions of the implicated FDA regulations are clear.  The

13  FDA's interpretation of these regulations, as they affect use of the term "evaporated cane juice,"

14  is also clear.  That interpretation has been consistent and there is no indication of a potential

15  change.  For these reasons, the Court would not be intruding upon the FDA's authority to

16  regulate such unlawful practices and the primary jurisdiction doctrine should not be applied.  *See*

17  *Ivie*, 2013 WL 3296616, at *8 ("plaintiff's case does not require this court to determine difficult

18  issues of first impression better left to the FDA's expertise, but instead only requires the

19  application of well-understood FDA regulations directly on point"); *Samet*, 2013 WL 3124647,

20  at *7 ("Allegations of deceptive labeling do not require consultation of the expertise of the FDA

21  as 'every day courts decide whether conduct is misleading.'") (citation omitted).  Specifically

22  with respect to evaporated cane juice claims, the *Samet* decision further noted:

23              While it may be true that the FDA is developing a specific regulation on this
                issue, there is already an FDA regulation governing the use of evaporated cane
24              juice as an ingredient. 21 C.F.R. 168.130 requires that "[t]he common or usual
                name of a food" shall be used to "identify or describe, in as simple and direct
25              terms as possible, the basic nature of the food or its characterizing properties or
                ingredients." As alleged, Defendants' products contain "sugar," which should be
26              cited by its "common or usual name" under the FDA regulations. This is
                sufficient to proceed no matter what final guidance may be issued by the agency.
27

28  *Samet*, 2013 WL 3124647, at *8.

1    Further, Plaintiff's claims are based on violations of the Sherman Law.  As the Court

2    found in *Kosta v. Del Monte Corp.*, 2013 WL 2147413, at *9 (N.D. Cal. 2013) (Rogers, J.), these

3    violations "piggyback" violations of FDA regulations and, therefore, do not create new food

4    label requirements not already in the FDCA and FDA regulations. Accordingly, as in *Kosta*,

5    "[a]djudication of the claims here requires only that the Court determine whether [Defendants']

6    labels actually complied therewith, a determination that would not 'risk undercutting the FDA's

7    expert judgments and authority.' As in many other food labeling cases filed in this district, here

8    '[t]he FDA's expertise ... is not necessary to determine whether the labels are misleading [and

9    t]he reasonable-consumer determination and other issues involved in Plaintiff's lawsuit are

10   within the expertise of the courts to resolve.'" *Id* at *10 (citations omitted).[16]   For all these

11   reasons, the primary jurisdiction doctrine should not apply to Plaintiff's claims.[17]

12

13   _____

14   [16]    Defendants argue that the primary jurisdiction doctrine should apply in section III.C of their memorandum of law. (Def. Mem. at 21-22).  The cases cited therein are inapposite.  In

15   *Schering-Plough Healthcare Products, Inc. v. Schwarz Pharma, Inc.*, 586 F.3d 500, 510 (7th Cir. 2009), plaintiff sought chances to drug labels classified as "major changes" that necessarily

16   required the FDA's pre-approval.  In *Gordon v. Church & Dwight Co.*, 2010 WL 1341184, at *1-2 (N.D. Cal. 2010), plaintiff claimed that FDA approved condom labels were misleading.

17   *Taradejna v. General Mills, Inc.*, 909 F. Supp. 2d 1128 (D. Minn. 2012), unlike the present case, involved a proposed regulation that would directly address the issue raised in the litigation.  In

18   *Pom Wonderful LLC v. Coca-Cola Co.*, 679 F.3d 1170, 1178 (9th Cir. 2012) the Court only addressed claims under the Lanham Act, and not state law claims.

19

20   [17]    Additionally, Defendants are alleged to have violated several Sherman Law provisions that do not expressly adopt federal requirements, but set state requirements that are consistent

21   with federal requirements. *See, e.g.*, Complaint at ¶¶ 64-73; Cal. Health & Safety Code § 110660 (prohibiting labels that are false or misleading); § 110710 (requiring identification of ingredients

22   in conformity with established standards of identity); § 110720 (requiring that ingredients be identified by their common or usual names); § 110725(a) (same); § 110760 (unlawful to

23   "manufacture, sell, deliver, hold, or offer for sale any food that is misbranded").  These are California state laws for which California courts and agencies are ultimately responsible to

24   interpret and enforce.  These laws are consistent with the language of the federal regulations discussed above, as well as the FDA's current interpretation of those regulations.  To the extent

25   the FDA might alter that interpretation in the future, neither it, nor federal courts, can preclude California from enforcing its own laws as they are currently worded and interpreted.  By the same

26   token, private parties cannot be precluded from seeking redress for violations of such state laws, to the extent otherwise permitted under state law. *See Lockwood v. Conagra Foods, Inc.*, 597 F.

27   Supp. 2d 1028, 1035 (N.D. Cal. 2009) ("even if the FDA were to formally define 'natural,' federal law would not dispose of plaintiffs' state law [UCL] claims").

28

1    **III.    PLAINTIFF'S CLAIMS ARE NOT PREEMPTED**

2          "Federal preemption occurs when: (1) Congress enacts a statute that explicitly pre-empts

3    state law; (2) state law actually conflicts with federal law; or (3) federal law occupies a

4    legislative field to such an extent that it is reasonable to conclude that Congress left no room for

5    state regulation in that field." *Chae v. SLM Corp.*, 593 F.3d 936, 941 (9th Cir. 2010).  "In

6    analyzing the issue, a court must begin with the presumption that unless a 'clear and manifest

7    purpose of Congress' exists, federal acts should not supersede the historic police powers of the

8    States."  *Kosta*, 2013 WL 2147413, at *5.  "Parties seeking to invalidate a state law based on

9    preemption 'bear the considerable burden of overcoming the starting presumption that Congress

10   does not intend to supplant state law.'"  *Stengel v. Medtronic*, 704 F.3d 1224, 1227-28 (9th Cir.

11   2013) (en banc) (quoting *De Buono v. NYSA–ILA Med. & Clinical Servs. Fund*, 520 U.S. 806,

12   814, 117 (1997)).  "[I]n areas of traditional state regulation, the court assumes that a federal law

13   does not supplant state law unless Congress has made such an intention clear and manifest."

14   *Khasin v. Hershey Co.*, 2012 WL 5471153, at *5 (N.D. Cal. 2012).

15         The courts within the Ninth Circuit have repeatedly made clear that, where requirements

16   of the Sherman Law are identical to those of the FDCA, claims relating to violations of such

17   Sherman Law requirements are not preempted.  *See, e.g., Kosta*, 2013 WL 2147413, at *7-8

18   (listing decisions rejecting preemption arguments in food misbranding cases); *Larsen v. Trader*

19   *Joe's Co.*, 2013 WL 132442, at *3 (N.D. Cal. 2013) ("the FDCA and California law contain

20   identical prohibitions on false or misleading labeling"); *Jones v. ConAgra Foods, Inc.*, 912 F.

21   Supp. 2d 889, 897-98 (N.D. Cal. 2012) (no preemption); *Hershey*, 2012 WL 5471153, at *5-6

22   (same).  Here, all claims are premised on acts that violate both the Sherman Law and the FDCA.

23   Therefore, none of Plaintiff's claims are preempted.

24         **A.      There Is No Express Preemption of Plaintiff's Claims**

25         In 1990, Congress passed the Nutritional Labeling and Education Act ("NLEA") as an

26   amendment to the FDCA.  Section 343–1(a) of the NLEA provides that no state may directly or

27   indirectly establish any requirement for the labeling of food that is not identical to the FDCA.

28   *See* 21 U.S.C. § 343–1(a).  "There is a strong presumption against federal preemption in the area

of proper marketing and regulation of food, a realm traditionally in the power of the States." *Kosta*, 2013 WL 2147413, at *6. *Accord, Florida Lime & Avocado Growers v. Paul*, 373 U.S. 132, 144 (1963) ("States have always possessed a legitimate interest in 'the protection of (their) people against fraud and deception in the sale of food products' at retail markets within their borders"). The NLEA does not preempt state laws on the same subject. Rather, "it allowed States to adopt requirements identical to the federal standards, which could then be enforced under state law." *Kosta*, 2013 WL 2147413, at *6. "While Congress clearly stated its intent to allow states to establish their own identical laws, it said absolutely nothing about proscribing the range of available remedies states might choose to provide for the violation of those laws, such as private actions." *In re Farm Raised Salmon Cases*, 42 Cal.4th 1077, 1090 (2008).

Examining similar provisions of the FDCA, the United States Supreme Court has held that such federal requirements "[do] not prevent a State from providing a damages remedy for claims premised on a violation of FDA regulations [where] the state duties in such a case 'parallel,' rather than add to, federal requirements." *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 330 (2008). *Accord, Wyeth v. Levine*, 555 U.S. 555, 574 (2009) (allowing state consumer product liability action to proceed despite FDCA's lack of a federal private right of action). "It is only when the requirements go beyond the FDA regulations that preemption comes into play." *Kosta*, 2013 WL 2147413, at *7.

Here, California's Sherman Law expressly adopts the labeling requirements of the FDCA and FDA regulations in their entirety. *See* Cal. Health & Safe.Code § 110100(a) ("[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food regulations of this state."). Plaintiff's claims are premised on violations of Sherman Law, as it incorporates the relevant federal statutes and regulations regarding the identification of ingredients on food labels. Under such circumstances, claims premised on violations of the Sherman Law are not preempted. *See Kosta*, 2013 WL 2147413, at *8; *Larsen*, 2013 WL 132442, at *3; *ConAgra*, 912 F. Supp. 2d at 897-98; *Hershey*, 2012 WL 5471153, at *5-6. For these same reasons, courts have found the specific Sherman Law claims at issue in this case not to be preempted. *See Ivie*, 2013

1   WL 685372, at *12; *Samet*, 2013 WL 3124647, at *6.

2      **B.**    **There Is No Implied Preemption of Plaintiff's Claims**

3      21 U.S.C. § 337(a) provides that only the United States may bring proceedings to enforce

4 the FDCA.  However, "there is no indication from the text of the NLEA or its legislative history

5 that Congress 'intended a sweeping preemption of private actions predicated on requirements

6 contained in state laws.'" *Brazil v. Dole Food Co., Inc.*, 2013 WL 1209955, at *7 (N.D. Cal.

7 2013) (quoting *In re Farm Raised Salmon Cases*, 42 Cal.4th at 1090).  Further, despite

8 Defendants arguments to the contrary, suits premised on violations of provisions of the Sherman

9 Law incorporated directly from the FDCA and FDA regulations do not "short-circuit FDA

10 procedures" or violate the prohibition against private causes of action under the FDCA.  *See*

11 *Lanovaz v. Twinings North America, Inc.*, 2013 WL 675929, at *3 (N.D. Cal. 2013)

12 (misbranding claims premised on violations of the Sherman Law are not an impermissible "end

13 run around the no private action rule").

14      Specifically, claims under the UCL, FAL, and CLRA relating to the use of the term

15 evaporated cane juice are not impliedly preempted. As the court held in *Ivie*:

16
17        [P]laintiff's claims rest entirely on violations of California's Sherman Law
       counterparts that *parallel* federal requirements, and which do not require this court
18        to create new requirements or interpret the scope of currently existing regulations.
       Here, the court need only determine whether defendants' labels actually comply
19        with existing and well-understood FDA regulations, "a determination that would
       not risk undercutting the FDA's expert judgments and authority." *Astiana v. Hain*
20        *Celestial Grp.*, 905 F.Supp.2d 1013, 1016–17 (N.D.Cal.2012) (internal citations
       omitted). The court must "start from a presumption against preemption." *Kosta*,
21        2013 WL 2147413, at *9. Where, as here, there is no conflict between state and
       federal law that might interfere with FDA regulatory authority, the court declines to
22        find that plaintiff's claims are impliedly preempted. The motion to dismiss on the
       basis of implied preemption is therefore denied.
23
24 *Ivie*, 2013 WL 3296616, at *7 (emphasis in the original).  *See also*, *Samet*, 2013 WL 3124647, at

25 *6-7 ("Plaintiffs' claims for damages arise from state-made common law duties that also happen

26 to coincide with the federal statutory scheme, which ensures that these claims will not conflict

27 with or impair the FDA's regulatory power. As a result, Plaintiffs' claims fit through the 'narrow

28 gap' contemplated by the Ninth Circuit.").

1    Cases on which Defendants rely are readily distinguishable.  In *Perez v. Nidek Co., Ltd.,*

2    711 F.3d 1109 (9th Cir. 2013), plaintiff brought state-law claims against a group of physicians

3    for failing to disclose that a laser medical device used on plaintiff had not received FDA pre-

4    approval, despite the fact that the FDA did not require such disclosure.  711 F.3d at 1112.  Under

5    those circumstances, the Ninth Circuit held that plaintiff's state-law claims were expressly

6    preempted because they depended on a state law requirement "in addition to those federal

7    requirements . . . that physicians and medical device companies must affirmatively tell patients

8    when medical devices have not been approved for a certain use."  *Id*. at 1118–19.  In *Perez*,

9    plaintiff's allegation that defendants failed to disclose the lack of FDA approval "exist[ed] solely

10   by virtue of the FDCA disclosure requirements." *Id* at 1119.   In the present case, however, while

11   the Sherman Law draws its standards from federal labeling requirements, claims based on

12   violations of the Sherman Law are rooted in and exist by virtue of California law.  *See Ivie*, 2013

13   WL 3296616, at *7; *Samet*, 2013 WL 3124647, at *7.

14       Defendants' reliance on *Pom Wonderful* is also misplaced.  As this court held in *Kosta*:

15       [Defendant] urges the Court to extend the Ninth Circuit's holding in *Pom Wonderful*
16       beyond the federal Lanham Act, to find that the FDCA preempts claims under state
         laws as well. The reasoning of *Pom Wonderful* does not support such an extension.
17       As previously noted, the Ninth Circuit limited its decision to the Lanham Act and
         expressly declined to address whether *Pom Wonderful*'s state law claims would be
18       preempted by the FDCA. Id. at 1178. Accordingly, the Ninth Circuit's analysis
         considered only the interplay between the two federal statutes, not any conflict
19       between the respective roles of the FDCA and the states' historic role in policing
20       fraud and deception in the sale of food products. *See Florida Lime & Avocado
         Growers*, 373 U.S. at 132; *In re Farm Raised Salmon Cases*, 42 Cal.4th at 1090, 72
21       Cal.Rptr.3d 112, 175 P.3d 1170. More specifically, *Pom Wonderful* limited its
         discussion to whether the FDCA preempted Lanham Act claims that required the
22       court to interpret FDA regulations; it did not analyze claims brought under a state
         law that mirrors the FDCA. Finally, as discussed above, the NLEA explicitly
23       provides that states may pass and enforce their own labeling laws, so long as the
24       state's requirements are identical to those of the FDCA. See 21 U.S.C. 343–1(a).
         The broad view of *Pom Wonderful* urged by [Defendant] essentially would render
25       section 343–1(a) meaningless and permit section 337(a) to bar any private litigant
         from bringing actions predicated on a violation of analogous state labeling laws.
26

*Kosta*, 2013 WL 2147413, at *8

27

28       Defendants also can find no comfort in *PhotoMedex, Inc. v. Irwin*, 601 F.3d 919, 922 (9th

1   Cir. 2010).  There, defendant represented that its medical laser device was covered under the

2   FDA approval given to a somewhat different medical laser device sold by plaintiff, who brought

3   a false advertising claim under the Lanham Act, asserting that defendant's laser should not fall

4   within the scope of the FDA approval of plaintiff's laser.  Similar to *Pom Wonderful*, the limited

5   issue before the Ninth Circuit in *PhotoMedex* was whether plaintiff may "maintain a suit under

6   the Lanham Act based on a claim that a competitor violated the FDCA by misrepresenting that

7   its product had received FDA clearance, when the FDA declined to make a finding that there was

8   no valid clearance or to bring an enforcement action itself."  *Id* at 922.  The Ninth Circuit

9   concluded that, unlike the present case, "[b]ecause the FDCA forbids private rights of action

10  under that statute, a private action brought under the Lanham Act may not be pursued when, as

11  here, the claim would require litigation of the alleged underlying FDCA violation in a

12  circumstance where the FDA has not itself concluded that there was such a violation."  *Id* at 924.

13  Here, unlike in *PhotoMedex*, Defendants conduct clearly violates established FDA regulations.

14          For all these reasons, Plaintiff's claims are neither expressly nor impliedly preempted.

15  **IV.    PLAINTIFF HAS ADEQUATELY ALLEGED CLAIMS UNDER THE UCL, FAL, AND CLRA**

16          The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal.

17  Bus. and Prof. Code § 17200.  The FAL prohibits any "unfair, deceptive, untrue, or misleading

18  advertising." Cal. Bus. and Prof. Code § 17500.  "'[A]ny violation of the false advertising law. . .

19  necessarily violates'" the UCL. *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir.

20  2008) (quoting *Kasky v. Nike, Inc*. 27 Cal.4th 939, 950 (2002)). The CLRA prohibits "unfair

21  methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770.  "The

22  California Supreme Court has recognized that these laws prohibit 'not only advertising which is

23  false, but also advertising which[,] although true, is either actually misleading or which has a

24  capacity, likelihood or tendency to deceive or confuse the public.'" *Williams*, 552 F.3d at 938

25  (quoting *Kasky*, 27 Cal.4th at 951).  Any violation of the Sherman Law would be a sufficient

26  predicate act on which to base UCL, FAL, or CLRA claims.  *In re Ferrero Litig.*, 794 F. Supp.

27  2d at 1116.  As set forth above, Plaintiff has clearly alleged violations of the Sherman Law.

28          These three statutes are governed by the "reasonable consumer" standard.  *Williams*, 552

1    F.3d at 938.  Under the reasonable consumer standard, Plaintiff must "show that members of the

2    public are likely to be deceived." *Id*.  "[W]hether a business practice is deceptive will usually be

3    a question of fact not appropriate for decision on demurrer."  *Id*.  Therefore, it is only on "rare"

4    occasions that such a determination can be made at the pleadings stage.  *Id*.  Plaintiff has

5    satisfied its pleading requirements.  *See Ivie*, *e.g.*, 2013 WL 685372, at *12 (evaporated cane

6    juice claims adequately pled).

7          Significantly, Defendants only argue that Plaintiff's claims must be dismissed on

8    preemption and primary jurisdiction grounds.  Defendants do not otherwise assert that Plaintiff

9    has not adequately alleged all elements of their causes of action.  Defendants do not argue that

10   Plaintiff does not have standing under Article III, the UCL, FAL, or CLRA.  Defendants do not

11   argue that Plaintiff has not met the pleading requirements of either Rule 8 or Rule 9(b).

12         Defendants also do not argue that Plaintiff may not assert claims on behalf of class

13   members who purchased the Substantially Similar ECJ Products, despite the fact that Plaintiff

14   did not purchase any of those products.[18]  Indeed, Defendants specifically argue that claims

15   relating to another non-purchased product, Fanta Zero Orange soda, should be dismissed (*see*

16   section VI, *infra*), but do not take issue with any of the other Substantially Similar ECJ Products.

17   **V.    PLAINTIFF CAN ASSERT CLAIMS ON BEHALF OF A NATIONWIDE CLASS**

18         "Motions to strike are generally disfavored and are not granted unless it is clear that the

19   matter sought to be stricken could have no possible bearing on the subject matter of the

20   _____

21   [18]       The misbranding of the Substantially Similar ECJ Products was part of the same scheme
     to deceive consumers with misleading food labels.  Complaint at ¶¶ 4-6.  Purchasers of these
22   products have been injured in the exact same manner as purchasers of the products purchased by
     Plaintiffs.  *Id* at ¶¶ 80, 82.  For these reasons, purchasers of the Substantially Similar ECJ
23   Products should be permitted to join the class and seek redress for the same harm, caused by the
     same defendants, in the same manner, as part of the same scheme.  "'The majority of the courts
24   that have carefully analyzed the question hold that a plaintiff may have standing to assert claims
     for unnamed class members based on products he or she did not purchase so long as the products
25   and alleged misrepresentations are substantially similar.'" *Lanovaz v. Twinings North America,
     Inc.*, 2013 WL 2285221, at *1 (N.D. Cal. 2013) (quoting *Miller v. Ghirardelli Chocolate Co.*,
26   2012 WL 6096593, at *6–7 (N.D. Cal. 2012)).  To the extent there are questions as to whether
     any of the Substantially Similar ECJ Products are substantially similar to purchased products,
27   such questions of fact should not be determined on a motion to dismiss.  *See Astiana v. Dreyer's
     Grand Ice Cream, Inc.*, 2012 WL 2990766, at *13 (N.D. Cal. 2012).
28

1   litigation." *Kosta*, 2013 WL 2147413, at *4.  Defendants have not met this burden.  Here,

2   Plaintiff seeks to certify a class consisting of all consumers nationwide who purchased the

3   products at issue within the defined class period.  Defendants cite *Mazza v. American Honda*

4   *Motor Co., Inc.*, 666 F.3d 581 (9th Cir. 2012) for the proposition that such nationwide class

5   actions are inherently improper.  Nothing in *Mazza*, however, supports such a broad prohibition

6   against nationwide class actions.  *See, e.g., Won Kyung Hwang v. Ohso Clean, Inc.*, 2013 WL

7   1632697, at *21 (N.D. Cal. 2013) (*Mazza* "did not establish such a bright-line rule" against

8   nationwide classes).  Indeed, courts regularly apply California consumer protection statutes to

9   claims of out-of-state class members.  *See, e.g., Chavez v. Blue Sky Natural Beverage Co.*, 268

10  F.R.D. 365, 375-80 (N.D. Cal. 2010) (CLRA and UCL claims asserted on behalf of a nationwide

11  class); *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 589 (C.D. Cal. 2008) (same).

12          Nationwide class actions are particularly appropriate where, as here, a defendant resides

13  in California.  Complaint at ¶ 18.  "[California] statutory remedies may be invoked by out-of-

14  state parties when they are harmed by wrongful conduct occurring in California." *In re Clorox*

15  *Consumer Litigation*, 894 F. Supp. 2d 1224, 1237 (N.D. Cal. 2012) (quoting *Norwest Mortgage,*

16  *Inc. v. Super. Ct.*, 72 Cal.App.4th 214, 224–25 (Cal.Ct.App.1999)).  "In determining whether

17  California's consumer protection statutes apply to non-California residents, courts consider

18  "where the defendant does business, whether the defendant's principal offices are located in

19  California, where class members are located, and the location from which advertising and other

20  promotional literature decisions were made." *Id* at 1237-38 (quoting *In re Toyota Motor Corp.*,

21  785 F. Supp. 2d 883, 917 (C.D. Cal. 2011)).

22          As in *Clorox*, nationwide class claims should not be dismissed where Odwalla "conducts

23  substantial business in California and has its principal place of business and corporate

24  headquarters in the state, decisions regarding the challenged representations were made in

25  California, [Odwalla's] marketing activities were coordinated at its California headquarters, and

26  a significant number of class members reside in California." *Id* at 1238; Complaint at ¶¶ 18-20.

27  Based upon similar factual finding in *In re POM Wonderful LLC Marketing and Sales Pratices*

28  *Litigation*, 2012 WL 4490860, at *3 (C.D. Cal. 2012), the court found that plaintiffs had "met

1  their burden to show that California has sufficient contacts to the claims at issue to ensure that

2  application of California law is constitutional."[19]  For these same reasons, Plaintiff may seek to

3  certify a nationwide class.

4           Moreover, because this Court sits in diversity jurisdiction, the substantive law of

5  California is applied.  *Bruno v. Eckhart Corp.*, 280 F.R.D. 540, 545 (C.D. Cal. 2012).  *Mazza* did

6  not change California state law.  Under California law, "the burden [is] on the defendant to show

7  that another state's law, rather than California law, should apply to class claims."  *Id*.  The

8  "California Supreme Court has expressly held that California's choice-of-law analysis must be

9  conducted on a case-by-case basis because it requires analyzing various states' laws 'under the

10  circumstances of the particular case' and given 'the particular [legal] issue in question.'"  *Id*

11  (citations omitted).  Dismissal of nationwide class claims may only be done after a detailed

12  choice of law analysis comparing laws of other states aimed at protecting consumers from

13  violations of food manufacturers' obligations under the FDCA and other food labeling laws.[20]

14  

---

15  [19]      *Sullivan v. Oracle Corp.*, 51 Cal.4th 1191, 1208 (2011) is readily distinguishable.  There,
   the court simply held that the UCL "does not apply to overtime work performed outside
16  California for a California-based employer by out-of-state plaintiffs in the circumstances of this
   case based solely on the employer's failure to comply with the overtime provisions of the FLSA,"
17  which the court found not to be an unlawful act under the UCL.  51 Cal.4th at 1208-09.  The court,
   however, specifically noted that "[c]ertainly the UCL reaches any unlawful business act or
18  practice committed in California."  *Id* at 1208.  The court also explicitly distinguished the facts of
   that case from a case, like the present one, involving fraudulent misrepresentations made to
19  induce out-of-state consumer transactions. *Id* at 1208 n.10.  Defendants' citation to *Koehler v.*
   *Litehouse, Inc.*, 2012 WL 6217635 (N.D. Cal. 2012) is also unavailing.  There, unlike the present
20  case, the court held that California consumer protection statutes may not be applied
   extraterritorially only "where none of the alleged misconduct or injuries occurred in California."
21  2012 WL 6217635, at *7 (citing *Churchill Vill., L.L.C. v. Gen. Elec. Co.*, 169 F. Supp. 2d 1119,
   1126 (N.D. Cal. 2000)).  Here, both misconduct and injuries occurred in California.
22  

23  [20]      Defendants have not conducted any type of nationwide choice of law analysis.  At most,
24  they note that there is no private right of action under state statutes incorporating the FDCA in
   Kentucky and Tennessee.  This is of no moment.  There is no private right of action under the
25  Sherman Law either, however, that does preclude the use of consumer protection laws and other
   common law causes of actions to redress injuries resulting from violations of such "little FDCA"
26  statutes.  Moreover, this choice of law analysis is not an all-or-nothing proposition.  If the law in
   two states is found to be materially different from California law, such a finding does not
27  preclude a class consisting of consumers from the remaining 48 states.  *See In re Abbott*
   *Laboratories Norvir Anti-Trust Litigat.*, 2007 WL 1689899, at *10 (N.D. Cal. 2007) (where law
28  of two states materially different, class certified consisting of members from remaining states).

1   *See Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 923 (N.D. Cal. 2012); *Forcellati v. Hyland's,*

2   *Inc.*, 876 F. Supp. 2d 1155, 1159 (C.D. Cal. 2012).  Generally, this can only be done at the class

3   certification stage, after the completion of relevant discovery.  *See Ohso Clean*, 2013 WL

4   1632697, at *21; *Bias v. Wells Fargo & Co.*, 2013 WL 1787158, at *21 (N.D. Cal. 2013).

5          For all these reasons, the Court should not preclude a nationwide class of consumers who

6   have all been injured by a California defendant in the exact same way, namely through the sale

7   of illegal and deceptive products that all bear the term "evaporated cane juice."

8   **VI.   QUESTIONS OF FACT EXIST REGARDING THE CONTENTS OF FANTA ZERO**

9   **ORANGE SODA THAT PRECLUDE THE STRIKING OF ANY ALLEGATIONS**

10         Defendants ask that the Court strike allegations in the Complaint relating to Fanta Zero

11  Orange.  Defendants assert that this product does not list evaporated cane juice as an ingredient.

12  However, Defendants' website previously stated that this product did contain evaporated cane

13  juice.  *See* Silverman Decl. at ¶ 11, Ex. 9.  Apparently, Defendants take the position that the

14  website was either incorrect or that Fanta Zero Orange no longer contains evaporated cane juice.

15  For these reasons, questions of fact exist as to whether this product ever contained evaporated

16  cane juice.  Should discovery confirm that this product, in fact, never contained evaporated cane

17  juice, Plaintiff will cease to prosecute claims to the extent they relate to this product.

18                                  **CONCLUSION**

19         For all the aforementioned reasons, Plaintiffs respectfully request that the Court: (1) deny

20  Defendant's motion in its entirety; (2) deny Defendant's request for judicial notice of Exhibits B

21  through I and L through T, as set forth herein (*see* notes 5, 13, 14, *supra*); and (3) grant such

22  other and further relief as the Court deems just and proper.

23  Dated: August 2, 2013                              Respectfully submitted,

24

25                                              ___/s/ Ben F. Pierce Gore___
                                                Ben F. Pierce Gore (SBN 128515)
26                                              PRATT & ASSOCIATES
                                                1871 The Alameda, Suite 425
27                                              San Jose, CA  95126
                                                Telephone:  (408) 429-6506
28                                              Fax:  (408) 369-0752

1

pgore@prattattorneys.com

2

Keith M. Fleischman

3

Bradley F. Silverman
THE FLEISCHMAN LAW FIRM, PLLC

4

565 Fifth Avenue, Seventh Floor
New York, New York 10017

5

Telephone: (212) 880-9571
Fax:  (917) 591-5245

6

keith@fleischmanlawfirm.com

7

bsilverman@fleischmanlawfirm.com

8

*Attorneys for Plaintiffs*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28