1
2
3
4

LAFAYETTE & KUMAGAI LLP
GARY T. LAFAYETTE (SBN 088666)
Email:  glafayette@lkclaw.com
100 Spear Street, Suite 600
San Francisco, California 94105
Telephone:      (415) 357-4600
Facsimile:      (415) 357-4605]

5
6
7
8
9

PATTERSON BELKNAP WEBB & TYLER LLP
STEVEN A. ZALESIN (admitted *pro hac vice*)
Email:  sazalesin@pbwt.com
TRAVIS J. TU (admitted *pro hac vice*)
Email:  tjtu@pbwt.com
1133 Avenue of the Americas
New York, New York 10036-6710
Telephone:      (212) 336-2000
Facsimile:      (212) 336-2222

10

Attorneys for Defendants
ODWALLA, INC. and THE COCA-COLA COMPANY

11

12

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

13

14
15
16
17
18
19
20
21

| | |
|---|---|
| ROBIN REESE, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>    vs.<br><br>ODWALLA, INC. and THE COCA-COLA COMPANY,<br><br>               Defendants. | Case No. 13 Civ. 00947 (YGR)<br><br>**REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STRIKE PORTIONS OF PLAINTIFF'S COMPLAINT**<br><br>Judge:  Hon. Yvonne Gonzalez Rogers<br><br>Complaint Filed:  March 1, 2013<br>Hearing Date:  Sept. 24, 2013<br>Hearing Time:  2 P.M.<br>Courtroom:  5 |

22

23

      Defendants Odwalla, Inc. and the Coca-Cola Company (collectively, "Odwalla")

24

respectfully submit this reply memorandum in further support of Odwalla's motion to dismiss or,

25

in the alternative, to strike portions of Plaintiff's Complaint.

26

27

28

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

ARGUMENT .....................................................................................................................2

I.    REESE'S CLAIMS ARE NOT DIFFERENT FROM THOSE DISMISSED
IN *HOOD* ..............................................................................................................2

II.   REESE MISCHARACTERIZES THE REGULATORY STATUS OF ECJ....................3

     A.    FDA Has Made No Final Determination ................................................3

     B.    The Court Can Take Judicial Notice of ECJ's Regulatory Status ............5

III.  REESE'S CLAIMS ARE PREEMPTED ........................................................6

IV.  REESE'S CLAIMS FAIL AS A MATTER OF CALIFORNIA LAW ............................10

V.   REESE'S CLAIMS SHOULD BE DISMISSED ON PRIMARY
JURISDICTION GROUNDS ....................................................................................11

VI.  REESE'S NATIONWIDE CLASS ALLEGATIONS SHOULD
BE STRICKEN .....................................................................................................12

VII.  FANTA ZERO ORANGE SODA HAS NEVER CONTAINED ECJ ............................13

CONCLUSION .................................................................................................................14

REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE,
TO STRIKE PORTIONS OF PLAINTIFF'S COMPLAINT
(Case No. 3:13-cv-00947-YGR)

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Astiana v. Kashi Co.*,
2013 U.S. Dist. LEXIS 108455 (S.D. Cal. July 30, 2013) .................................................12

*Austero v. Aurora Loan Servs., Inc.*,
2011 U.S. Dist. LEXIS 85356 (N.D. Cal. Aug. 3, 2011)..........................................................6

*Banks v. Nissan N. Am., Inc.*,
2012 U.S. Dist. LEXIS 37754 (N.D. Cal. Mar. 20, 2012).....................................................13

*Buckman Co. v. Plaintiffs' Legal Comm.*,
531 U.S. 341 (2001)..............................................................................................................8

*Chavez v. Blue Sky Natural Beverage Co.*,
268 F.R.D. 365 (N.D. Cal. 2010).........................................................................................13

*Christopher v. SmithKline Beecham Corp.*,
132 S. Ct. 2156 (2012).........................................................................................................10

*Circle Click Media LLC v. Regus Mgmt. Group LLC*,
12-0400, 2013 U.S. Dist. LEXIS 114463 (N.D. Cal. 2013) ...................................................5

*Gorenstein v. Ocean Spray Cranberries, Inc.*,
2010 U.S. Dist. LEXIS 143801 (C.D. Cal. Jan. 29, 2010) ....................................................8

*Gross v. Symantec Corp.*,
2012 U.S. Dist. LEXIS 107356 (N.D. Cal. July 31, 2012)....................................................13

*Gustafson v. BAC Home Loans Servicing, LP*,
2012 U.S. Dist. LEXIS 117493 (C.D. Cal. Apr. 12, 2012) ..................................................13

*Hansen Bev. Co. v. Innovation Ventures, LLC*,
2009 U.S. Dist. LEXIS 127605 (S.D. Cal. Dec. 22, 2009)....................................................6

*Holistic Candlers & Consumers Ass'n v. FDA*,
664 F.3d 940 (D.C. Cir. 2012) ..............................................................................................4

*Hood v. Wholesoy*,
2013 U.S. Dist. LEXIS 97836 (N.D. Cal. July 12, 2013)...............................................passim

*In re Am. Apparel, Inc. S'holder Litig.*,
855 F. Supp. 2d 1043 (N.D. Cal. 2012) ................................................................................5

*In re Rothery*,
143 F.3d 546 (9th Cir. 1998) ...............................................................................................14

*Ivie v. Kraft Foods Global, Inc.*,
2013 U.S. Dist. LEXIS 25615 (N.D. Cal. Feb. 25, 2013) .....................................................8

*Kane v. Chobani, Inc.*,
2013 U.S. Dist. LEXIS 98752 (N.D. Cal. 2013) ...................................................................8

REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE,
TO STRIKE PORTIONS OF PLAINTIFF'S COMPLAINT
(Case No. 3:13-cv-00947-YGR)

ii

*Mazza v. Amer. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) ...................................................................12

*McKinniss v. Sunny Delight Beverages Co.*,
    2007 U.S. Dist. LEXIS 96108 (C.D. Cal. Sept. 4, 2007)........................6

*Parkinson v. Hyundai Motor Am.*,
    258 F.R.D. 580 (C.D. Cal. 2008) ............................................................13

*Perez v. Nidek Co.*,
    711 F.3d 1109 (9th Cir. 2013) ..................................................................9

*Peviani v. Hostess Brands, Inc.*,
    750 F. Supp. 2d 1111 (C.D. Cal. 2010) ...................................................7

*PhotoMedex, Inc. v. Irwin*,
    601 F.3d 919 (9th Cir. 2010) ....................................................................9

*Pom Wonderful LLC v. Coca Cola Co.*,
    2013 U.S. Dist. LEXIS 33501 (C.D. Cal. Feb. 13, 2013) .......................9

*Red v. Kroger Co.*,
    2010 U.S. Dist. LEXIS 115238 (N.D. Cal. Sept. 2, 2010) ......................8

*Samet v. Procter & Gamble Co.*,
    2013 U.S. Dist. LEXIS 86432 (N.D. Cal. 2013) .....................................8

*Stallcop v. Kaiser Found Hosp.*,
    820 F.2d 1044 (9th Cir. 1987) ..................................................................5

*Sullivan v. Oracle Corp.*,
    254 P.3d 237 (Cal. 2011) ...................................................................12, 13

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) ....................................................................5

*Thurston v. Bear Naked, Inc.*,
    slip op., No. 3:11-CV-02890, Dkt. No. 110 (S.D. Cal. July 30, 2013)....................12

*Trazo v. Nestle USA Inc.*,
    2013 U.S. Dist. LEXIS 113534 (N.D. Cal. Aug. 9, 2013) .................7, 13

*Turek v. Gen. Mills, Inc.*,
    662 F.3d 423 (7th Cir. 2011) ....................................................................7

**STATUTES**

FDCA ........................................................................................... passim

California Sherman Law ............................................................... passim

REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE,
TO STRIKE PORTIONS OF PLAINTIFF'S COMPLAINT
(Case No. 3:13-cv-947-YGR)

iii

**OTHER AUTHORITIES**

FDA Final Rule:  Food Labeling; Gluten Free Labeling of Foods, 78 Fed. Reg. 47154
    (Aug. 5, 2013) (to be codified at 21 C.F.R. 101) .......................................................................5

21 C.F.R. § 10.115 .........................................................................................................................6

21 C.F.R. § 100.1(c)(4) ..................................................................................................................7

REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE,
TO STRIKE PORTIONS OF PLAINTIFF'S COMPLAINT
(Case No. 3:13-cv-00947-YGR)

iv

# INTRODUCTION

Odwalla filed its motion to dismiss on June 3, 2013.  The following month, on July 12, 2013, this Court ***granted*** a motion to dismiss an earlier-filed case in which the plaintiff asserted identical California state-law claims against The Wholesoy Company over the labeling of evaporated cane juice ("ECJ").  *See Hood v. Wholesoy*, 2013 U.S. Dist. LEXIS 97836 (N.D. Cal. July 12, 2013) (hereinafter "*Hood*").  Reese's claims against Odwalla's ECJ labeling are indistinguishable from those in *Hood*, and should be dismissed for the same reasons.

As the Court recognized in *Hood*, the question of whether ECJ is an appropriate common and usual name under the FDCA (and, by extension, California law) is one that Congress has entrusted to the U.S. Food and Drug Administration ("FDA").  FDA has initiated an administrative process to address this very issue, and that process is still ongoing.  *Id*. at *17-18. While FDA has expressed a preliminary view in warning letters and a non-binding 2009 Draft Guidance to industry, it has publicly stated that this position is tentative and not "legally enforceable."  *Id*. at *7.  Permitting a private plaintiff to contest ECJ labeling under California law would thus require the Court to "decide an issue committed to the FDA's expertise without a clear indication of how FDA would view the issue."  *Id.* at *17.

Everything the Court said in *Hood* applies here.  However, whereas the Court dismissed the *Hood* plaintiff's ECJ claims *without prejudice* on primary jurisdiction grounds, the Court's analysis actually leads to the conclusion that such claims are preempted and should be dismissed *with prejudice*.  Congress has expressly preempted states from imposing any requirements concerning the labeling of foods that differ from FDA's implementing regulations.  This means that private plaintiffs are barred from seeking to use state law to impose requirements that federal law does not.  This Court correctly determined in *Hood* that federal law *does not* currently impose a binding requirement that prohibits ECJ from being labeled by that name.  As such, Reese is expressly preempted from seeking to use California law to impose such a requirement.

REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STRIKE PORTIONS OF PLAINTIFF'S COMPLAINT
(Case No. 3:13-cv-00947-YGR)

1

Reese argues that her ECJ claims are "different" from those in *Hood*, and that the Court "did not have the opportunity to consider" certain arguments that Reese has asserted here. (Reese Br. at 1). In fact, Reese is represented by the same counsel as the plaintiff in *Hood*, and the ECJ allegations in the two complaints are carbon copies of one another. Moreover, Reese's arguments are no different than those considered and rejected in *Hood*. Accordingly, for the reasons cited by the Court in *Hood* and set forth below, Reese's claims must be dismissed.

## ARGUMENT

### I.  REESE'S CLAIMS ARE NOT DIFFERENT FROM THOSE DISMISSED IN *HOOD*

As a threshold matter, there is no merit to Reese's contention that her ECJ claims are "different" from those rejected in *Hood*. Reese insists that "[i]n the present case, unlike in *Hood*," she is not relying "squarely on the 2009 draft guidance" concerning ECJ, which the Court in *Hood* determined is non-binding and unenforceable. (Reese Br. at 1). But even a cursory review of Reese's complaint belies this assertion.

Like the plaintiff in *Hood*, Reese alleges that: (1) state and federal law purportedly "prohibit manufacturers from referring to foods by anything other than their common and usual names" (Reese Compl. ¶ 52); (2) "FDA has issued specific guidance about the unlawful practices at issue here" in a 2009 Draft Guidance to industry (*id.* at ¶ 44); (3) the 2009 Draft Guidance prescribes that "the term 'Evaporated Cane Juice' is not the common or usual name of any type of sweetener" (*id.* at ¶ 14); and (4) "[d]espite the issuance of the 2009 FDA Guidance," Odwalla has not "removed the unlawful" references to ECJ from its product labels (*id.* at ¶ 56). These allegations appeared almost verbatim in the *Hood* complaint. *Compare* Hood Compl., No. 4:12-cv-05550, Dkt. No. 1, at ¶¶ 15, 49, 62, and 64. They leave no doubt that FDA's 2009 Draft Guidance to industry is the lynchpin of Reese's case, just as it was in *Hood*.

Reese also contends that her claims rely on "specific provisions" of federal and state law that the *Hood* plaintiff failed to bring to the Court's attention. But all of the provisions of federal

REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STRIKE PORTIONS OF PLAINTIFF'S COMPLAINT
(Case No. 3:13-cv-00947-YGR)

2

and state law on which Reese relies—including the Sherman Law, the FDCA, the common and usual name requirement, and the standards of identity for sugar and dried cane syrup—were cited in the *Hood* plaintiff's complaint and opposition to Wholesoy's motion to dismiss.  *See* Hood Compl. at ¶ 13 (the Sherman Law); ¶ 15 (FDCA); ¶ 62 (common and usual name requirements); and ¶¶ 63-64 (standards of identity); Hood Opp'n to MTD, No. 4:12-cv-05550, Dkt. No. 17, at 10-11 ("Ingredients are required to be called by their common or usual name . . . [so] using ECJ on food labels violates existing regulations.").

In short, Reese has raised no "new" allegations or arguments that the Court somehow failed to consider in *Hood*.  Under the holding of that case, Reese's claims must be dismissed.

## II.   REESE MISCHARACTERIZES THE REGULATORY STATUS OF ECJ

Notwithstanding the Court's ruling in *Hood* and the tentative nature of the 2009 Draft Guidance, Reese argues that FDA has already "conclusively determined" that ECJ labeling is unlawful.  (Reese Br. at 3).  This is a blatant mischaracterization of the truth.

### A.   FDA Has Made No Final Determination

As discussed in our opening brief, a common and usual name for a food ingredient can be established in one of two ways: through promulgation of a binding rule or regulation, or through usage in the marketplace.  (Odwalla Br. at 7).  FDA has not issued any binding regulation.  But ECJ has been used for years to sweeten thousands of foods and beverages, and—like many sweeteners such as molasses, brown sugar and turbinado sugar for which no standard of identity exists—has attained its common and usual name through widespread use.  *Id.*

In 2009, FDA issued a draft Level 1 guidance document suggesting that ECJ should be labeled by some other name, and inviting public comment on the issue.  (Odwalla Br. at 8).  FDA has received numerous comments on its 2009 Draft Guidance from industry and other stakeholders, and virtually all of them have been critical of FDA's tentative position.  *Id.* at 10. The comments have explained that ECJ is, in fact, the sweetener's common and usual name, and that "sugar" or "dried cane syrup" would be *less* accurate given how ECJ is made.  *Id.* at 11.

REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STRIKE PORTIONS OF PLAINTIFF'S COMPLAINT
(Case No. 3:13-cv-00947-YGR)

3

FDA has yet to finalize the views expressed in the 2009 Draft Guidance, and "has not made a decision as to whether the proposal will be adopted in whole, in part or not at all." *Id.* at 9.  In other words, the question of whether ECJ is an appropriate common and usual name is still being debated, and is "not settled." *Hood*, 2013 U.S. Dist. LEXIS 97836, at *17.

Reese notes that the 2009 Draft Guidance uses mandatory language such as "should," and is consistent with the position FDA has expressed in a handful of warning letters and other correspondence sent to individual companies since 2000.  But *every* draft guidance document uses similar language.  That is why they are accompanied by prominent disclaimers that they do "not create or confer any rights," do not "operate to bind FDA or the public," contain only "nonbinding recommendations," and use the word "should" to mean only that "something is suggested or recommended, but not required."  (Odwalla RJN, Ex. A).

Moreover, as explained in our opening brief, the fact that FDA has addressed ECJ in warning letters and other informal correspondence does not indicate that its position on the issue is settled.  Warning letters are inherently non-final and non-binding.  They are not used to establish new broadly applicable labeling requirements, but to notify individual companies that the agency is considering whether to commence an enforcement action, and to try to obtain "voluntary" compliance with FDA's preliminary point of view.[1]  *See Holistic Candlers & Consumers Ass'n v. FDA*, 664 F.3d 940, 944 (D.C. Cir. 2012).

If Reese were correct that FDA has conclusively determined the appropriate common and usual name of ECJ, then FDA would have had no reason to publish the 2009 Draft Guidance.  FDA would instead have issued a binding final rule and specified a date by which products containing ECJ must be relabeled.  This is precisely the approach FDA recently took with respect to "gluten free" statements on food and beverage labels.  *See* FDA Final Rule:  Food Labeling;

---

[1] Reese notes that warning letters are supposed to be issued only for "serious" regulatory violations.  But this does not mean that FDA considers ECJ to be a serious violation of federal law.  In fact, in every warning letter that has discussed ECJ, FDA has cited the recipient for multiple, serious violations and mentioned ECJ only at the end of the letter, or in passing.

REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STRIKE PORTIONS OF PLAINTIFF'S COMPLAINT
(Case No. 3:13-cv-00947-YGR)

4

Gluten Free Labeling of Foods, 78 Fed. Reg. 47154 (Aug. 5, 2013) (to be codified at 21 C.F.R. 101) (defining "gluten free" and giving manufacturers until August 5, 2014 to bring their product labels into compliance).  With respect to ECJ, however, FDA deliberately chose to take a non-binding, wait-and-see approach.

### B.     The Court Can Take Judicial Notice of ECJ's Regulatory Status

Unable to rebut this showing, Reese asserts that the Court should refuse to take judicial notice of the true regulatory status of ECJ—and should ignore even FDA's own publications explaining the legal status of the 2009 Draft Guidance—because these items are outside the four corners of the complaint.  (Reese Br. at n.12, n.13, and n.14).  But a motion to dismiss does not require a court to turn a blind eye to reality.  *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (in addition to the plaintiff's factual allegations and items referenced in the complaint, courts may consider any "matters properly subject to judicial notice" on a motion to dismiss). This is especially true where, as here, the Court is deciding whether to dismiss on the basis of preemption, jurisdiction or abstention—grounds that, by definition, require consideration of factors not referenced in the complaint.  *See Stallcop v. Kaiser Found. Hosp.*, 820 F.2d 1044 (9th Cir. 1987) (courts can look beyond complaint in determining whether claims are preempted); *Circle Click Media LLC v. Regus Mgmt. Group LLC*, 2013 U.S. Dist. LEXIS 114463 (N.D. Cal. 2013) (same is true when a court is considering its own jurisdiction).

All of the materials cited in Odwalla's opening brief are appropriate items for judicial notice.  The 2009 Draft Guidance is cited in Reese's complaint.  (Reese Compl. at ¶¶ 44, 46, 47, 55, 56).  The public comments that FDA has received in response to the 2009 Draft Guidance are lodged on the FDA's official docket, so the court can reference their existence and contents.[2]  *See*

---

[2] Odwalla has not asked the Court to consider the comments FDA has received for the truth of their contents (*e.g.*, to show that ECJ is, in fact, manufactured differently from sugar and dried cane syrup). The comments are offered only to show that there is an ongoing debate and that the issue has not been conclusively determined.  *See In re Am. Apparel, Inc. S'holder Litig.*, 855 F. Supp. 2d 1043, 1062 (N.D. Cal. 2012) (even if a court cannot take judicial notice of "the truth of information contained in" government filings, the existence and contents of the filings can be judicially noticed).

REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STRIKE PORTIONS OF PLAINTIFF'S COMPLAINT
(Case No. 3:13-cv-00947-YGR)

5

*Austero v. Aurora Loan Servs., Inc.*, 2011 U.S. Dist. LEXIS 85356, at *17 (N.D. Cal. Aug. 3, 2011) (recognizing that courts can take judicial notice of documents docketed in court *or* administrative proceedings); (*see also* Odwalla RJN, Ex. B-I (listing docket identification numbers for ECJ comment letters).   Moreover, the legal status of draft Level 1 guidance documents is specified by regulation.  *See* 21 C.F.R. § 10.115 (draft Level 1 guidance documents, by law, represent FDA's "initial" perspective on "highly controversial" topics and "do not legally bind the public or FDA").  FDA publications that explain the purpose and effect of draft Level 1 guidance documents, therefore, are not reasonably subject to dispute.  *See Hansen Bev. Co. v. Innovation Ventures, LLC*, 2009 U.S. Dist. LEXIS 127605, at *6 (S.D. Cal. Dec. 22, 2009) (taking judicial notice of FDA documents posted to the agency's website).[3]

## III.   REESE'S CLAIMS ARE PREEMPTED

The fact that federal law imposes no binding requirement that prohibits ECJ from being labeled by that name means that Reese's claims are expressly preempted.  As noted above, this Court in *Hood* did not reach the defendant's preemption arguments and dismissed solely on primary jurisdiction grounds.  But Reese's claims are preempted, and Odwalla accordingly is entitled to a dismissal with prejudice.

As the Court observed in *Hood*, the FDCA "establishes a uniform federal scheme of food regulation to ensure that food is labeled in a manner that does not mislead consumers."  *Hood*, 2013 U.S. Dist. LEXIS 97836, at *16.  Congress amended the FDCA through the NLEA to "clarify and to strengthen" FDA's authority.  *Id.*  Among other things, the NLEA added an express preemption clause to the FDCA which declares that no state may "directly or indirectly

---

[3] Reese urges the Court to refuse to take judicial notice of the Odwalla product labels because they supposedly have not been authenticated.  (Reese Br. at 6 n.5).  Reese offers no reason to doubt the authenticity of Odwalla's labels, and the labels are expressly referenced in her complaint.  *See McKinnis v. Sunny Delight Beverages Co.*, 2007 U.S. Dist. LEXIS 96108, at *9-10 n.1 (C.D. Cal. Sept. 4, 2007) (recognizing that courts can take judicial notice of disputed labels).  In any event, though they may assist the Court in better understanding the issues in dispute, the labels themselves are not essential to Odwalla's legal arguments.

REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STRIKE PORTIONS OF PLAINTIFF'S COMPLAINT
(Case No. 3:13-cv-00947-YGR)

6

establish . . . any requirement for the labeling of food that is *not identical* to the [FDCA]." *Id.* at 17 (citing 21 U.S.C. § 343-1(a)) (emphasis in original).

Reese argues that her claims are not preempted because she is seeking to impose requirements concerning ECJ that are "identical" to federal law. But FDA has not promulgated a binding requirement concerning ECJ. By definition, a state-law requirement that does not presently exist under federal law is not "identical." *See* 21 C.F.R. § 100.1(c)(4); *see also Peviani v. Hostess Brands, Inc.*, 750 F. Supp. 2d 1111, 1118 (C.D. Cal. 2010) (explaining that express preemption bars not only differing state requirements, but requirements that "[a]re not imposed by or contained in the applicable [federal] provision or regulation"); *Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 427 (7th Cir. 2011) (stating that "consistency [with the FDCA] is not the test; identity is").

Judge Grewal recognized this principle most recently in another food misbranding case brought by Reese's counsel. *See Trazo v. Nestle USA Inc.*, 2013 U.S. Dist. LEXIS 113534, at *18-19 (N.D. Cal. Aug. 9, 2013). In that case, Judge Grewal held that the plaintiffs were expressly preempted from challenging the statement "natural source of antioxidants" on the defendant's dark chocolate products because federal law defines only the term "good source," not "natural source." *Id.* at *31. FDA has taken an informal position in warning letters that all "source" claims should be regulated in the same manner, but Judge Grewal recognized that private plaintiffs are expressly preempted from using state law to impose requirements that go "beyond the boundaries" of existing federal regulations. *Id.* at *19. The same is true here.

As we anticipated in our opening brief, Reese attempts to circumvent the FDCA's express preemption clause by arguing that even if FDA has adopted no specific requirement concerning ECJ, she can enforce state-law requirements that parallel the FDCA's general prohibition against false and misleading labels, the common and usual name requirement, or the standards of identity for sugar and dried cane syrup. (Reese Br. at 17-18). This argument has repeatedly been rejected by numerous courts. (Odwalla Br. at 16). When FDA has considered a

REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STRIKE PORTIONS OF PLAINTIFF'S COMPLAINT
(Case No. 3:13-cv-00947-YGR)

7

specific issue but declined to impose the requirement that the plaintiff is seeking, allowing general statutory provisions to trump FDA's specific approach would "eviscerate" the FDCA's "strict preemption requirements." *Gorenstein v. Ocean Spray Cranberries, Inc.*, 2010 U.S. Dist. LEXIS 143801, at *3 (C.D. Cal. Jan. 29, 2010); *see also Red v. Kroger Co.*, 2010 U.S. Dist. LEXIS 115238, at *7-16 (N.D. Cal. Sept. 2, 2010) (same).

Reese points out that in other cases involving ECJ, Judges Whyte, Grewal and Koh have ruled that the plaintiffs' claims were not preempted. *See Ivie v. Kraft Foods Global, Inc.*, 2013 U.S. Dist. LEXIS 25615, at *6-7 (N.D. Cal. Feb. 25, 2013); *Samet v. Procter & Gamble Co.*, 2013 U.S. Dist. LEXIS 86432, at *8 (N.D. Cal. 2013); *Kane v. Chobani, Inc.*, 2013 U.S. Dist. LEXIS 98752, at *1 (N.D. Cal. 2013). This Court, however, considered Judge Whyte's *Ivie* opinion in *Hood* and declined to follow it.[4] Judge Grewal's decision in *Samet* rested on his apparent assumption that the plaintiff could avoid preemption by relying on the FDCA's general common and usual name requirement, which is clearly incorrect for the reasons stated above. And Judge Koh *vacated* her preemption ruling after this Court issued its decision in *Hood*. None of these decisions should dissuade the Court from finding that Reese's claims are preempted.

Not only are Reese's claims expressly preempted, they are impliedly preempted as well. As explained in our opening brief, the U.S. Supreme Court and the Ninth Circuit have held that private plaintiffs are impliedly preempted from asking a court to circumvent, or pre-judge the outcome of, an ongoing FDA process. (Odwalla Br. at 18-20). Reese responds by citing cases in which courts have held that implied preemption does not prohibit all food misbranding claims. That may be true, but Reese's particular claims would short-circuit FDA's ongoing draft guidance process and give binding effect to a non-final FDA position. These claims would

---

[4] In addition to the reasons stated in *Hood*, as explained in our opening brief, Judge Whyte's ruling in *Ivie* was based on his apparent conclusion that the FDA's final position on ECJ is "clear," and that the FDCA's express preemption clause does not bar claims for deceptive labeling. Neither conclusion is correct. (Odwalla Br. at 14).

REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STRIKE PORTIONS OF PLAINTIFF'S COMPLAINT
(Case No. 3:13-cv-00947-YGR)

8

clearly "exert an extraneous pull on the [regulatory] scheme established by Congress" and are impliedly preempted. *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 353 (2001).

Reese's attempts to distinguish the Ninth Circuit cases that support Odwalla's implied preemption argument are unpersuasive. First, Reese argues that *Perez v. Nidek* is distinguishable because the plaintiffs in that case were purportedly seeking to enforce *FDCA* requirements, whereas her claims are "rooted in" California law. In fact, the *Perez* plaintiffs' claims arose solely under California law. *Perez v. Nidek Co.*, 711 F.3d 1109, 1111-12 (9th Cir. 2013). The Ninth Circuit nevertheless held that the plaintiffs' claims were preempted because adjudicating them would have required the court to determine whether FDA requirements were violated before FDA had "take[n] final action" on the issue. *Id.* at *28.

Second, Reese argues that *PhotoMedex v. Irwin* is distinguishable because the plaintiffs in that case asserted a federal Lanham Act claim, and the FDA's position on the issue at the heart of that case was purportedly unclear. The Ninth Circuit, however, noted in its decision that the plaintiff's state-law claims in *PhotoMedex* were defective for the same reason as its Lanham Act claim. *PhotoMedex, Inc. v. Irwin*, 601 F.3d 919, 930-31 & n.7 (9th Cir. 2010). Moreover, FDA had asserted a position on the lawfulness of the defendant's conduct in a series of warning letters. The Ninth Circuit nevertheless found that the plaintiff's claims were barred because FDA's administrative process was ongoing, and FDA had not "reached" a final "conclusion." *Id.* at 926.[5]

Reese's state-law claims pose an even greater threat to FDA's regulatory process than the claims in *Perez* and *PhotoMedex*. In fact, if Reese is allowed to turn a draft FDA guidance document into a binding state-law requirement, FDA's draft guidance process would be completely upended. Regulated parties would essentially be forced to change their labeling in

---

[5] Reese notes that the Ninth Circuit's decision in *Pom Wonderful* concerned the plaintiff's Lanham Act claim and did not reach the question of whether the plaintiff's state-law claims were preempted. On remand, however, the district court found that the plaintiff's state-law claims were preempted for all the reasons the Ninth Circuit cited when dismissing the plaintiff's Lanham Act claim. *Pom Wonderful LLC v. Coca Cola Co.*, 2013 U.S. Dist. LEXIS 33501, at *14 (C.D. Cal. Feb. 13, 2013).

REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STRIKE PORTIONS OF PLAINTIFF'S COMPLAINT
(Case No. 3:13-cv-00947-YGR)

9

response to any draft guidance document or else risk potential liability under state law. Moreover, they would no longer have any incentive to participate in the regulatory process and register disagreements with FDA.  In other words, the entire purpose of the draft guidance process would be thwarted.[6]

In sum, Reese is both expressly and impliedly preempted from using California law to convert a non-binding FDA draft guidance into a binding state-law requirement when FDA has not finalized its position.  Her claims must therefore be dismissed with prejudice.

## IV.  REESE'S CLAIMS FAIL AS A MATTER OF CALIFORNIA LAW

In our opening brief, we explained that California's Sherman Law incorporates only binding FDA regulations into California law, and that the statute would raise significant due process concerns if it made draft FDA guidance documents automatically actionable.  Indeed, the U.S. Supreme Court recently reaffirmed that it would violate the rights of "regulated parties" to allow an agency interpretation of law published without prior notice to "impose potentially massive liability for conduct that occurred well before that interpretation was announced." *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2167 (2012).  Reese is attempting to do just that.

The Sherman Law avoids this due process concern by making only *final* FDA regulations—typically enacted through formal notice-and-comment procedures—the law of the state.  (Odwalla Br. at 13).  The 2009 Draft Guidance is not a binding FDA regulation, and FDA's position on ECJ was announced without notice to industry or any other procedural safeguards.  Accordingly, Reese's claims based on the 2009 Draft Guidance are not viable as a matter of California law, and should be dismissed with prejudice for this reason as well.

---

[6] The potential for Reese's claims to distort the regulatory process is especially evident when Reese argues that the public comments concerning ECJ submitted by regulated companies and trade associations should be taken as "only further evidence of these food manufacturers' deceitful intent."  (Reese Br. at 14 n.14).  Obviously, if participating in the regulatory process can constitute evidence of deceitful intent under state law, regulated parties will be less inclined to do so.

REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STRIKE PORTIONS OF PLAINTIFF'S COMPLAINT
(Case No. 3:13-cv-00947-YGR)

10

## V.   REESE'S CLAIMS SHOULD BE DISMISSED ON PRIMARY JURISDICTION GROUNDS

At a minimum, the Court should apply the holding of *Hood* and dismiss Reese's claims on primary jurisdiction grounds.  This Court in *Hood* concluded that "where determination of a plaintiff's claim would require a court to decide an issue committed to the FDA's expertise without a clear indication of how FDA would view the issue, courts of this district have repeatedly found that dismissal or stay under the primary jurisdiction doctrine is appropriate." *Hood*, 2013 U.S. Dist. LEXIS 97836, at *14.  Reese acknowledges that this is the appropriate legal standard, but argues that her ECJ claims should survive dismissal because FDA has given a clear indication of its position on ECJ.  (Reese Br. at 13-14).

But FDA's position on ECJ is *not* clear.  Its comments have been limited to informal correspondence, warning letters, and a draft Level 1 guidance document—none of which are binding on the public or FDA.  Moreover, in light of the fact that FDA has taken no steps to finalize the 2009 Draft Guidance after receiving an avalanche of critical comments from various stakeholders, it cannot be assumed that FDA's preliminary position will be the final word.

Reese also argues that primary jurisdiction should not apply because ECJ does not implicate scientific or policy judgments that FDA is better suited to make.  This Court expressly rejected this argument in *Hood*.  *Hood*, 2013 U.S. Dist. LEXIS 97836, at *21.  As the Court recognized, FDA is best situated to determine whether ECJ's processing meaningfully distinguishes it from sugar or dried cane syrup, and whether widespread use of ECJ on product labels has established it as an appropriate common and usual name.  FDA should be permitted to make these determinations in the first instance.

Through multiple cases filed in this District, Plaintiff and her counsel are attempting to enforce against the food and beverage industry an FDA requirement that the agency itself has yet to finalize.  The primary jurisdiction doctrine exists precisely to prevent such preemptive litigation.  The Court should, at bare minimum, follow its own approach in *Hood* and dismiss the complaint without prejudice on the basis of primary jurisdiction.

REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STRIKE PORTIONS OF PLAINTIFF'S COMPLAINT
(Case No. 3:13-cv-00947-YGR)

11

## VI.   REESE'S NATIONWIDE CLASS ALLEGATIONS SHOULD BE STRICKEN

There is no clearer evidence that Reese is seeking to usurp the role of FDA to establish uniform requirements for food labeling than the fact that she seeks to represent a *nationwide* class of consumers, and to project the purported requirements of California law across the country.  Neither California law nor principles of comity allow Reese to do so.  As explained in our opening brief, the California Supreme Court has held that California's consumer protection regime does not extend to "occurrences outside the state," *Sullivan v. Oracle Corp.*, 254 P.3d 237, 248 (Cal. 2011), and the Ninth Circuit has held that it would raise significant due process and comity concerns for district courts to certify nationwide class actions under California law*, Mazza v. Amer. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012).

Reese argues that *Mazza* did not establish a bright-line rule against nationwide class actions.  That much is true.  But *Mazza* clearly recognizes that nationwide class actions are improper where, as here, the application of California law nationwide could frustrate the policy choices of other states.  Reese asserts that the Court must undertake a "complicated" choice-of-law analysis before concluding that states have made individual policy choices when it comes to food labeling.  (Reese Br. at 15).  California law, however, is unique insofar as it purports to authorize consumers to enforce FDCA requirements (which explains why Reese's counsel have filed all of their food misbranding cases here).  (Odwalla Br. at 22-23).  Moreover, other courts have already conducted the choice-of-law analysis that Reese maintains is required, and have recognized that the 50 states' laws concerning food labeling reflect a range of policy choices that make nationwide classes improper.  *See Astiana v. Kashi Co.*, 2013 U.S. Dist. LEXIS 108455 (S.D. Cal. July 30, 2013); *Thurston v. Bear Naked, Inc.*, slip op., No. 3:11-CV-02890, Dkt. No. 110 (S.D. Cal. July 30, 2013) (same).

Reese also contends that a nationwide class would be appropriate because Odwalla is a California company.  But the California Supreme Court in *Sullivan* held that California law does not apply extra-territorially, and courts following *Sullivan* have expressly rejected Reese's

REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STRIKE PORTIONS OF PLAINTIFF'S COMPLAINT
(Case No. 3:13-cv-00947-YGR)

12

argument. *See Gross v. Symantec Corp.*, 2012 U.S. Dist. LEXIS 107356, at *23 (N.D. Cal. July 31, 2012) ("location of the alleged conduct…controls application of the UCL, not the domicile of the plaintiff or defendant"); *Gustafson v. BAC Home Loans Servicing, LP*, 2012 U.S. Dist. LEXIS 117493, at *16-17 (C.D. Cal. Apr. 12, 2012) (UCL applies "only if the wrongful conduct…occurred inside California"). The decisions cited by Reese that pre-date *Sullivan*, or otherwise suggest that California law may govern transactions that took place in other states, are clearly inconsistent with its holding. *See, e.g.*, *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 375-80 (N.D. Cal. 2010); *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 589 (C.D. Cal. 2008).

        In the end, Reese is left to argue that the Court should postpone the inevitable and deal with her nationwide class allegations at the class certification stage. But courts have recognized that as a matter of fairness and efficiency, striking facially defective nationwide class allegations at the motion to dismiss stage is entirely appropriate. *See, e.g., Banks v. Nissan N. Am., Inc.*, 2012 U.S. Dist. LEXIS 37754 (N.D. Cal. Mar. 20, 2012) (striking nationwide allegations from the pleadings). In fact, in a parallel food misbranding case brought by Reese's counsel, Judge Grewal recently granted a motion to strike *all* of the plaintiffs' class allegations. *See Trazo v. Nestle USA Inc.,* 2013 U.S. Dist. LEXIS 113534. Reese's nationwide class allegations similarly should be stricken.

## VII.    FANTA ZERO ORANGE SODA HAS NEVER CONTAINED ECJ

        Our opening brief showed that Reese's claims regarding Fanta Zero Orange soda should be stricken because the product does not actually contain ECJ. Reese concedes that if Fanta Zero Orange soda has never contained ECJ she must "cease to prosecute [her] claims," but argues that whether Fanta Zero Orange soda contains ECJ is a disputed issue of fact. (Reese Br. at 25). It is not. As the accompanying declaration from a responsible Coca-Cola official confirms, Fanta Zero Orange soda sold in the U.S. has never contained ECJ. *See* 8/23/13 Declaration of Lucy Reid. Thus, if Reese is not prepared to voluntarily withdraw her Fanta Zero Orange soda claims,

REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STRIKE PORTIONS OF PLAINTIFF'S COMPLAINT
(Case No. 3:13-cv-00947-YGR)

13

the Court should proceed to enter summary judgment on them.  *See In re Rothery*, 143 F.3d 546, 549 (9th Cir. 1998) (recognizing a court may convert a motion to dismiss to a motion for summary judgment and rule on the basis of undisputed evidence). [7]

### CONCLUSION

For the reasons stated above, Reese's claims are preempted and should be dismissed with prejudice.  At minimum, as this Court held in *Hood*, Reese's claims must be dismissed without prejudice so that FDA retains primary jurisdiction to determine whether ECJ is an appropriate common and usual name.


DATE:  August 23, 2013                    Respectfully submitted,

                                          PATTERSON BELKNAP WEBB & TYLER LLP
                                          _____/s/ Steven A. Zalesin_____
                                          Steven A. Zalesin (admitted *pro hac vice*)
                                          Travis J. Tu (admitted *pro hac vice*)
                                          1133 Avenue of the Americas
                                          New York, New York 10036
                                          Phone: (212) 336-2000
                                          Fax: (212) 336-2222

                                          Gary T. Lafayette
                                          LAFAYETTE & KUMAGAI LLP
                                          100 Spear Street, Ste. 600
                                          San Francisco, California 94105
                                          Phone: (415) 357-4600
                                          Fax: (415) 357-4605

                                          *Attorneys for Defendants*

---

[7] Notably, Reese does not (and cannot) allege that she has ever purchased Fanta Zero Orange soda containing ECJ.  Rather, the purportedly "disputed" fact issue arises because, according to a declaration filed by her counsel, an isolated page of Coca-Cola's website previously listed ECJ as an ingredient in the product.  The webpage to which Reese's counsel refers was clearly mistaken, and it was corrected some time ago.

REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STRIKE PORTIONS OF PLAINTIFF'S COMPLAINT
(Case No. 3:13-cv-00947-YGR)

14