**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ROBIN REESE**, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>**ODWALLA, INC. AND THE COCA-COLA CO.**,<br><br>    Defendants. | Case No.: 13-CV-947 YGR<br><br>**ORDER GRANTING MOTION TO DISMISS IN PART AND STAYING CASE** |

Plaintiff Robin Reese ("Plaintiff") brings this putative class action against Defendants Odwalla, Inc. and The Coca-Cola Company ("Defendants") alleging that certain of Defendants' products have labels that do not comply with the requirements of the federal Food, Drug, and Cosmetics Act ("FDCA"), as adopted by the California Sherman Law, Cal. Health & Safety Code section 109875, *et seq.* ("Sherman Law").  Plaintiff alleges seven claims under California law: (1) violation of the California Unfair Competition Law ("UCL"); (2) violation of Cal. Business and Professions Code section 17200, based on unfair, unlawful and fraudulent conduct; (3) violation of the California False Advertising Law ("FAL"); (4) violation of California Business and Professions Code section 17500, for misleading and untrue advertising; (5) violation of the California Consumer Legal Remedies Act, Cal. Civil Code section 1750, et seq.; (6) misrepresentation of goods to consumers; and (7) quasi-contract relief based upon an unjust enrichment theory.

Defendants have filed a Motion to Dismiss or, in the Alternative, to Strike Portions of Plaintiff's Complaint on the grounds that Plaintiff's complaint does not state a predicate claim for violation of the California Sherman Law; her claims are preempted by federal law; at a minimum, the Court should defer under the primary jurisdiction doctrine; and the claims for nationwide class relief and the claims against the Fanta Zero Orange product should be stricken.  (Dkt. No. 28.)

Having carefully considered the papers submitted and the pleadings in this action, and for the reasons set forth below, the Court hereby **GRANTS** the Motion to Dismiss **IN PART** and **STAYS** the instant action.[1]

## I. SUMMARY OF ALLEGATIONS

Plaintiff alleges that Defendants currently make and market a number of beverages and energy bars which list "Evaporated Cane Juice" or "Organic Evaporated Cane Juice" as an ingredient. Plaintiffs allege that all such products are misbranded because the use of the term "Evaporated Cane Juice" (hereinafter, sometimes, "ECJ") is a violation of federal and California law governing food labeling. Specifically, Plaintiff alleges that the FDA has stated:

- the term 'evaporated cane juice' is not the common or usual name of any type of sweetener, including dried cane syrup.
- ECJ is required to be identified either as "sugar" or "cane syrup," both of which have standards of identity set forth in federal regulations (21 C.F.R. § 168.130, 21 C.F.R. § 101.4(b)(20) and §184.1854) sweeteners derived from sugar cane syrup should not be listed in the ingredient declaration by names which suggest that the ingredients are juice, such as 'evaporated cane juice.'
- The term ECJ is "false and misleading" under section 403(a)(1) of the FDCA (21 U.S.C. § 343(a)(1)) because it fails reveal the basic nature of the food and its characterizing properties (*i.e.,* that the ingredients are sugars or syrups) as required by 21 C.F.R. §§ 101.3 and 102.5.

(Complaint ¶14.) Pursuant to the Sherman Law, California has adopted these federal labeling requirements as state law. California Health & Safety Code section 110100.

---

[1] The parties have each submitted numerous documents for judicial notice in connection with the motion and opposition. The Court rules as follows on those requests:
 Defendants' Request for Judicial Notice (Dkt. No. 29) is **GRANTED** as to Exh. A, J, K, L-O, and P-T, and **DENIED** as to Exh. B-I.
 Plaintiff's Request for Judicial Notice (Dkt. No. 36-1) is **GRANTED** as to Exh. 1-8, and **DENIED** as to Exhibit 9.
 The Court takes notice of the documents but not the truth of any matters asserted therein.

2

Plaintiff alleges that the term ECJ misleads consumers into paying a premium price for inferior or undesirable ingredients or for products that contain ingredients not listed on the label and that she would not have purchased these products had she known that they contained "sugar masquerading as evaporated cane juice." (*Id.* at ¶76.) Had Plaintiff known that the term ECJ was unlawful, and the products were misbranded, she would not have bought them. (*Id.* at ¶¶ 78, 79.)

In her UCL claims, Plaintiff alleges that: "Defendants sold Plaintiff and the Class Misbranded Food Products that were not capable of being sold or held legally and which had no economic value and were legally worthless." (Complaint ¶101.) Plaintiff alleges that she and others in the putative class "suffered a substantial injury by virtue of buying Defendants' Misbranded Food Products that they would not have purchased absent Defendants' illegal conduct." (*Id.* ¶ 108.) She further alleges that Defendants sold "unsalable misbranded products that were illegal to possess" (*id.* ¶109), and that "Defendants' fraud and deception caused Plaintiff and the Class to purchase Defendants' Misbranded Food Products that they would otherwise not have purchased had they known the true nature of those products" (*id.* ¶ 118). Her allegations in support of her FAL, CLRA, and unjust enrichment claims are much the same. (*See* Complaint ¶¶ 124, 125, 132, 141, 151.)

## II. DISCUSSION

The viability of Plaintiff's claims turns on the question of whether the FDA has determined, as Plaintiff alleges, that the use of the term ECJ is "unlawful," and that this ingredient must be named "sugar" or "cane syrup" on the label in order to comply with federal, and therefore state, law.

### A. THIS COURT'S PRIOR DECISION IN *HOOD V. WHOLESOY*

Examining the identical question in a prior decision, this Court previously found that the FDA's position on ECJ was "unsettled" and no uniform enforcement standard had yet been determined. *See Hood v. Wholesoy,* 12-cv-5550 YGR, July 12, 2013 Order Granting Motion to Dismiss, Dkt. No. 31. The Court so found in the context of Congress' grant of authority to the FDA to "establish a uniform federal scheme of food regulation to ensure that food is labeled in a manner that does not mislead consumers" *See* 21 U.S.C. § 341 *et seq.* The FDA had issued

guidance in October 2009 advising that the term ECJ was not a "common or usual name for any type of sweetener" and therefore should not be used. (Defendants' Request for Judicial Notice, Dkt. No. 29, Exh. A, *Guidance For Industry: Ingredients Declared as Evaporated Cane Juice* [2009 Draft Guidance"].) That same document stated that the FDA's Guidance "should only be viewed as recommendations," was non-binding, and not legally enforceable. The FDA solicited comments on the tentative view expressed therein. Consequently, in the *Hood* case, this Court found, under the circumstances and arguments raised there, it was appropriate to defer to the FDA to say what the proper rules should be with respect to ECJ, rather than render a decision that would "usurp the FDA's interpretive authority" to establish a rule in the first instance. *Hood, supra,* at 11, citing *Pom Wonderful, LLC v. Coca-Cola Co.,* 679 F.3d 1170, 1176 (9th Cir. 2012) *cert. granted*, 134 S.Ct. 895 (January 10, 2014), and *Clark v. Time Warner Cable*, 523 F. 3d 1110, 1114 (9th Cir. 2008). Thus, the Court dismissed the action in *Hood* without prejudice, consistent with the primary jurisdiction doctrine.

In opposition to the motion to dismiss here, Plaintiff attempts to distinguish the *Hood* decision, arguing that notwithstanding the tentative nature of the 2009 Draft Guidance, "the position of the FDA has always been, and continues to be, that the use of the term 'evaporated cane juice' is unlawful." (Oppo. at vii:10-11.) Plaintiff argues that specific FDA regulations have been violated, including the requirement that ingredients be listed by their common or usual name, including an established standard of identity.[2] Here, Plaintiff argues, the FDA has a standard of identity for "sugar" and for "cane sirup/syrup," and ECJ falls into these broadly defined standards,

---

[2] The FDA has established "standards of identity" for a limited number of foods and beverages. A standard of identity is a regulation setting forth the ingredients contained in a particular food or beverage, such that "thereafter a commodity cannot be introduced into interstate commerce which 'purports to be or is represented as' the food which has been thus defined unless it is composed of the required ingredients." *62 Cases, More or Less, Each Containing Six Jars of Jam v. United States*, 340 U.S. 593, 598 (1951). For the many products that do not have established formal standards of identity, the FDCA "declares a food misbranded '[u]nless its label bears (1) the common or usual name of the food, if any there be, and (2) in case it is fabricated from two or more ingredients, the common and usual name of each such ingredient[.]'" *Brod v. Sioux Honey Assoc.*, 895 F.Supp.2d 972, 980 (N.D. Cal. 2013) (no standard of identity for honey, so common and usual name must be used); *see also* 21 C.F.R. § 101.4(a)(1) (requiring ingredients to be "listed by [their] common or usual name").

4

so it must be identified by one of those names or else products bearing that ingredient name are misbranded.

### B. RECENT FDA ACTION

On March 5, 2014, the FDA published a Notice that reopened the comment period on its Draft Guidance of 2009, and specifically requested comments, data, and information on ECJ. The Notice stated, in part:

> We have not reached a final decision on the common or usual name for this ingredient and are reopening the comment period to request further comments, data, and information about the basic nature and characterizing properties of the ingredient sometimes declared as "evaporated cane juice," how this ingredient is produced, and how it compares with other sweeteners.

(Notice.) The Comment period ends May 5, 2014. Among the questions the FDA has posed in the Notice are: "How is 'evaporated cane juice' manufactured? Specifically, how is its method of manufacture different from that of other sweeteners made from sugar cane (such as cane sugar, cane syrup, etc.)?" and "Does the name 'evaporated cane juice' adequately convey the basic nature of the food and its characterizing properties or ingredients, consistent with the principles in § 102.5(a)?" (*Id.*) The Notice closes by indicating that "[a]fter reviewing the comments received, [the FDA] intends to revise the draft guidance, if appropriate, and issue it in final form, in accordance with FDA's good guidance practice regulations in 21 C.F.R. 10.115." (*Id.*)[3]

### C. PRIMARY JURISDICTION

"The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency… and is to be used only if a claim involves an issue of first impression or a particularly complicated issue Congress has committed to a regulatory agency." *Clark v. Time Warner Cable*, 523 F. 3d 1110, 1114 (9th Cir. 2008). The doctrine is to be employed when "protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme." *General Dynamics Corp.,* 828 F.2d 1356, 1362 (9th Cir.1987) (quoting *United States v. Philadelphia Nat'l Bank,* 374 U.S. 321, 353 (1963)); *accord Syntek*

---

[3] The Court directed the parties to file supplemental briefing on the effect of the Notice, which they did on March 14, 2014. (*See* Dkt. Nos. 57, 58, 59.) The Court has considered those supplemental briefs in reaching this decision.

*Semiconductor Co., Ltd. v. Microchip Tech. Inc.*, 307 F.3d 775, 781 (9th Cir. 2002). A court traditionally weighs four factors in deciding whether to apply the primary jurisdiction doctrine: "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Syntek,* 307 F.3d at 781. "[T]he doctrine is a 'prudential' one, under which a court determines that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch." *Clark,* 523 F.3d at 1114. "Normally, if the court concludes that the dispute which forms the basis of the action is within the agency's primary jurisdiction, the case should be dismissed without prejudice so that the parties may pursue their administrative remedies." *Syntek*, 307 F.3d at 782; *Astiana v. Hain Celestial Grp., Inc.*, 905 F. Supp. 2d 1013, 1015 (N.D. Cal. 2012) (if doctrine applies, court can either stay proceedings or dismiss the case without prejudice.)

### D. APPLICATION OF THE PRIMARY JURISDICTION DOCTRINE HERE

The Court finds that the *Syntek* factors are met here. In this case, the dispute to be resolved is whether ECJ is the "common and usual name" of any ingredient or if use of that ingredient name is misleading and prohibited under the FDCA.

The issue of proper declaration of ingredients on food labels is one as to which Congress vested the FDA with comprehensive regulatory authority. "Congress has regulated food and beverage labeling for more than 100 years." *Holk v. Snapple Beverage Corp.*, 575 F.3d 329, 331 (3d Cir. 2009). It did so first in the federal Food and Drugs Act of 1906, Ch. 3915, 34 Stat. 768, then in the federal Food, Drug, and Cosmetic Act (FDCA) of 1938, 21 U.S.C. § 301 *et seq.*. "Misbranding was one of the chief evils Congress sought to stop" through this legislation. *62 Cases, More or Less, Each Containing Six Jars of Jam*, 340 U.S. at 596. In 1990, Congress amended the FDCA to address nutrition labeling in the Nutrition Labeling and Education Act (NLEA), Pub. L. No. 101-535, 104 Stat. 2353. Through this legislation, Congress has vested the FDA with regulatory authority over food labeling, charging the agency with creating a uniform

6

national scheme of regulation to ensure that food is labeled in a manner that does not mislead consumers. *See* 21 U.S.C. § 341 *et seq.* Congress' 1990 amendments were intended to "clarify and to strengthen" the FDA's "legal authority to require nutrition labeling on foods, and to establish the circumstances under which claims may be made about nutrients in foods." H.R. Rep. No. 101-538, at 7, *reprinted in* 1990 U.S.C.C.A.N. 3336, 3337.

Plaintiff's claims here are state law claims based upon the Sherman Law's incorporation of the FDCA's labeling requirements related to standards of identity and use of an ingredient's common and usual name. *See* 21 U.S.C. § 341 (standard of identity), 343(g) [label must bear the name of the food covered by the standard of identity] and (i) [label must bear common and usual name of ingredient not covered by standard of identity]. Plaintiff seeks a determination from this Court as to whether there is a standard of identity promulgated by the FDA under the FDCA that regulates the ingredient at issue here, or whether ECJ is the "common and usual name" for this ingredient. This determination is a matter that is not only within the expertise and authority of the agency, it is before the agency at this moment.

Prior to the FDA's issuance of its Notice on March 5, 2014, other courts of this district have concluded that deferral under the primary jurisdiction doctrine was not required, including on the issue of ECJ. Compare *Hood*, *supra*, at 8 (citing several cases finding deferral under primary jurisdiction appropriate) with *Swearingen v. Yucatan Foods, L.P.*, C 13-3544 RS, 2014 WL 553537 (N.D. Cal. Feb. 7, 2014) (declining to defer under primary jurisdiction doctrine on ECJ issue) citing *Morgan v. Wallaby Yogurt Co., Inc.*, 13-CV-00296-WHO, 2013 WL 5514563 (N.D. Cal. Oct. 4, 2013) (same); *Samet v. Proctor & Gamble Co.,* 12–CV–01891 PSG, 2013 WL 3124647, *8 (June 18, 2013) (same, finding existing regulation requiring use of "[t]he common or usual name of a food" sufficient for court to decide ECJ issue). The Court finds that the claims here rely, as their predicate, on the applicable food labeling laws. The claims turn, first and foremost, on whether they are "misleading" in the sense that they are considered "misbranded" under the federal food labeling laws, not on whether the labels are misleading in a general legal sense. This is because the determination whether label is misleading is governed entirely by its compliance with the federal regulations in this area. Federal law completely displaces any non-

7

identical requirements in the areas covered by the federal requirements.  21 U.S.C. § 343-1(a)(1)-(5) (no state may establish any requirement that is not identical to a standard of identity established under 21 U.S.C. § 341 or 343(g) or any requirement for labeling of the type required in any of a number of enumerated sections of section 343 that is not identical to that requirement); 21 C.F.R.. § 100.1(c)(4) (state requirement is preempted if it is not identical to the federal provision, meaning that the state provision differs from the federal or that the state provision "imposes obligations *or contains provisions… that… are not imposed* by or contained in the applicable [federal statute or regulation]." [emphasis added]).

Leaving aside the question of whether the Court can properly determine, in the first instance, if ECJ is or is not the "common or usual name" of this ingredient, the FDA's action clearly indicates that the agency is exercising its authority in this area.  In light of the fact that FDA has revived its review of the ECJ issue, the Court finds that the FDA's position on the lawfulness of the use of that term is not only, as stated in *Hood*, "not settled," it is also under active consideration by the FDA.  Any final pronouncement by the FDA in connection with that process almost certainly would have an effect on the issues in litigation here.

### III.   CONCLUSION

Accordingly, the Motion to Dismiss is **GRANTED IN PART** on the grounds of primary jurisdiction.[4]  This action is **STAYED**.  The Court sets a compliance hearing for **Friday, August 1, 2014**, at 9:01 a.m.  The parties shall file a joint statement of no more than five pages updating the Court on the status of the FDA's action and the parties' positions as to whether further briefing concerning the effects of any action or inaction is necessary.  Should the parties file their joint statement timely, the Court may vacate the hearing without the necessity of an appearance.

This terminates Docket No. 28.

**IT IS SO ORDERED**.

Date:'Octej ''47.''4236

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

[4]  Because the Court finds that this action is properly stayed under the primary jurisdiction doctrine, it does not reach the preemption issues and the motion to strike certain allegations.