UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ROBIN REESE**,<br>          Plaintiff,<br>     v.<br>**ODWALLA, INC., ET AL.**,<br>          Defendants. | Case No.  13-cv-00947-YGR<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS**<br>Re: Dkt. No. 87 |

Plaintiff Robin Reese brings this putative class action against defendants Odwalla, Inc. and the Coca-Cola Company alleging that certain of defendants' products have labels that do not comply with the requirements of the federal Food, Drug, and Cosmetics Act ("FDCA"), as adopted by the California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code section 109875 *et seq.* ("Sherman Law").  (Dkt. No. 1, "Compl.")  Plaintiff alleges seven claims under California law:  three claims for violations of the California Unfair Competition Law, Cal. Business & Professions Code section 17200, based on (i) unlawful, (ii) unfair, or (iii) fraudulent conduct; two claims for violations of the California False Advertising Law, Cal. Business & Professions Code section 17500, based on (iv) misleading and deceptive advertising or (v) untrue advertising; (vi) violation of the California Consumer Legal Remedies Act, Cal. Civ. Code section 1750 *et seq.*; (vi) misrepresentation of goods to consumers; and (vii) quasi-contract relief based upon an unjust enrichment theory.

Previously, the Court stayed the instant action on primary jurisdiction grounds, pending the Food and Drug Administration's ("FDA") review of the propriety of manufacturers' use of the term "evaporated cane juice" ("ECJ"), but did not reach the issue of preemption. (Dkt. No. 60.) The Court dissolved the stay on July 27, 2016 after the FDA issued its guidance on the ECJ issue, and the Court directed defendants to file their motion to dismiss in light of the FDA's publication.

Now before the Court is defendants' renewed motion to dismiss plaintiff's complaint. (Dkt. No. 87.)[1] Plaintiff has responded and defendants have replied. The Court previously vacated the hearing on defendants' motion finding the same to be appropriate for decision without oral argument. (Dkt. No. 96.)

Having carefully considered the pleadings and the papers submitted on this motion, the Court **DENIES** defendants' motion to dismiss.[2]

## I.  LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief may be granted. Dismissal for failure to state a claim under Rule 12(b)(6) is proper if there is a "lack of a cognizable legal theory or the absence of

---

[1] The Court adopts its "Summary of Allegations" in its previous order staying the instant action (Dkt. No. 60), and discusses relevant additional facts below, as necessary.

[2] The parties have each submitted numerous documents for judicial notice in connection with the motion and opposition. Defendants' request for judicial notice (Dkt. No. 88) includes the following: (i) Ex. A, FDA's Draft "Guidance for Industry: Ingredients Declared as Evaporated Cane Juice" (2009) ("2009 Draft Guidance"); (ii) Ex. B, FDA's Final "Guidance for Industry: Ingredients Declared as Evaporated Cane Juice" (2016) ("2016 Final Guidance"); (iii) Ex. C, FDA Notice Reopening of Comment Period ("2014 Notice"); (iv–vii) Exs. D–G, copies of pre-2014 Odwalla food labels; (viii–xi) Exs. H–K, copies of current Odwalla labels; (xii) Ex. L, FDA Fact Sheet regarding FDA Good Guidance Practices; and (xiii) Ex. M, FDA publication entitled "Proposed Regulations and Draft Guidances."

Plaintiff's request for judicial notice (Dkt. No. 92-1) includes the following: (i) Ex. A, the operative complaint in this action; (ii) Ex. B, transcript of the hearing held in this action on September 24, 2013; (iii) Ex. C, 2009 Draft Guidance; (iv) Ex. D, 2014 Notice; (v) Ex. E, 2016 Final Guidance; (vi) Ex. F, November 2004 Warning Letter to Upscale Foods, Inc.; (vii) Ex. G, April 2008 Warning Letter to Hato Potrero Farm, Inc.; (viii) Ex. H, Policy Letter dated May 8, 2000; (ix) Ex. I, Policy Letter dated March 9, 2001; (x) Ex. J, July 2012 Warning Letter to Bob's Red Mill Natural Foods, Inc.; (xi) Ex. K, October 2012 Warning Letter to Hail Merry, LLC; (xii) Ex. L, Order, *Saeidian v. The Coca-Cola Company*, No. 09-CV-6309-SJO-JPR (C.D. Cal. July 6, 2015).

The Court **GRANTS** the parties' request for judicial notice, but does not accept the truth of any matters asserted in such documents. The Court gives such documents their proper evidentiary weight.

2

sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). The complaint must plead "enough facts to state a claim [for] relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the facts alleged do not support a reasonable inference of liability, stronger than a mere possibility, the claim must be dismissed. *Id.* at 678–79; *see also In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (stating that a court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences").

"Federal Rule of Civil Procedure 8(a)(2) requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 554–55 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration in original). Even under the liberal pleading standard of Rule 8(a)(2), "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (internal brackets and quotation marks omitted)). The Court will not assume facts not alleged, nor will it draw unwarranted inferences. *Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").

**II.    STATUTORY FRAMEWORK UNDER THE FDCA**

Plaintiff's claims are state law claims based on the Sherman Law's incorporation of the FDCA's labeling requirements related to standards of identity and use of an ingredient's common and usual name. *See* Cal. Health & Safety Code § 110100 ("All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food labeling regulations of this state."). Importantly here, federal law completely displaces any non-identical requirements in the areas covered by the

3

federal requirements. 21 U.S.C. § 343-1(a)(1)–(5); *see also* 21 C.F.R. § 100.1(c)(4). Thus, the FDCA, as amended by the Nutrition Labeling and Education Act of 1990 ("NLEA"), is the operative statute in this matter. *See Wilson v. Frito-Lay N. Am., Inc.*, 961 F. Supp. 2d 1134, 1139 (N.D. Cal. 2013).

"Generally, food is misbranded under 21 U.S.C. section 343(a)(1) if 'its labeling is false or misleading in any particular.'" *Id.* at 1140. Relevant to the instant action, the following regulations have been promulgated to define when certain terms can and cannot be used in describing ingredients on food labels: First, the regulations define sucrose by its chemical composition and explain that sucrose is "obtained by crystallization from sugar cane or sugar beet juice that has been extracted by pressing or diffusion, then clarified and evaporated." 21 C.F.R. § 184.1854. The regulations further require that any ingredients that fall within the definition of "sucrose" must contain the designation "sugar" on food labels. 21 C.F.R. § 101.4(b)(20) ("For purposes of ingredient labeling, the term sugar shall refer to sucrose, which is obtained from sugar cane or sugar beets in accordance with the provisions of § 184.1854 of this chapter."). Second, the regulations also define that "juice" as an "aqueous liquid expressed or extracted from one or more fruits or vegetables, purees of the edible portions of one or more fruits or vegetables, or any concentrates of such liquid or puree." 21 C.F.R. 120.1(a).

Plaintiff's claims here are based on allegations that the ingredient labeled as ECJ falls not within the "juice" designation but rather under the definition for "sucrose." Thus, plaintiff argues, the use of the term "juice" to describe said ingredient is false and misleading.

### III. DISCUSSION

Defendants move to dismiss the complaint on the following grounds: (i) the California Sherman Law incorporates only binding FDA food labeling regulations, of which there was none at the time of the alleged violations; (ii) federal law expressly preempts actions seeking to impose requirements that federal law did not impose at the time of the purchases; and (iii) plaintiff's claims for injunctive relief should be dismissed because the defendants have already ceased the behavior in question. The Court addresses each, in turn.

4

### A. California Sherman Law's Incorporation of Binding Regulations

Defendants first argue that the California Sherman Law, upon which plaintiff's claims are founded, incorporates only binding federal food labeling regulations. Here, defendants contend, plaintiff predicates her claims against defendants on 2009 Draft Guidance issued by the FDA, which was, by definition, not binding.[3] On such basis, defendants conclude that plaintiff has no claim because the Sherman Law did not incorporate the 2009 Draft Guidance.

Plaintiff does not dispute that the 2009 Draft Guidance is non-binding. Rather, plaintiff argues that her claims are based on then-existing federal statutes and regulations that preclude the use of the term ECJ to describe the ingredient in defendants' products. Specifically, plaintiff notes that federal regulations require that "[f]or purposes of ingredient labeling, the term sugar shall refer to sucrose, which is obtained from sugar cane or sugar beets in accordance with the provisions of § 184.1854 of this chapter." 21 C.F.R. § 101.4. Thus, plaintiff contends, whether the 2009 Draft Guidance is incorporated into the Sherman Law is irrelevant because her claims are based on regulations which were merely clarified by the 2009 Draft Guidance.

The Court agrees. Defendants' argument is based upon a mischaracterization of plaintiff's position. Plaintiff is claiming that the previously promulgated regulations already made it illegal for defendants to label the ingredients in their product as ECJ, rather than as "sugar." Thus, while plaintiff believes that the 2009 Draft Guidance is probative of such position, plaintiff's claims are not based on the same. Accordingly, the Court **DENIES** defendants' motion to dismiss on this ground.

### B. Federal Preemption

The crux of defendants' motion to dismiss is that federal law here expressly preempts plaintiff's claims. The FDCA, as amended by the NLEA, provides that: "[N]o State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect

---

[3] Specifically, the 2009 Draft Guidance indicated that the use of the term ECJ violates "current policy" and that "sweeteners derived from sugar cane syrup should not be declared as 'evaporated juice' because that term falsely suggests that the sweeteners are juice." (Dkt. No. 88-1 at 5.)

5

1  as to any food in interstate commerce (1) any requirement for a food which is the subject of a

2  standard of identity established under section 341 of this title that is not identical to such standard

3  of identity or that is not identical to the requirement of section 343(g) of this title." 21 U.S.C. §

4  343-1(a)(1).[4]  "Courts in this district generally find express preemption under the FDCA only

5  when: (1) the FDA requirements with respect to a particular food label or package is clear; and (2)

6  the product label or package at issue is [in] compliance with that policy, such that plaintiff

7  necessarily seeks to enforce requirements in excess of what the FDCA, NLEA, and the

8  implementing regulations require." *Ivie v. Kraft Foods Glob., Inc.*, No. 12-CV-02554-RMW,

9  2013 WL 685372, at *8 (N.D. Cal. Feb. 25, 2013).  On such bases, defendants argue that, because

10 the FDA's guidance on the use of the term ECJ only became final only August 2016, there were

11 no laws prohibiting its use prior to the issuance of the 2016 Final Guidance.  Thus, the retroactive

12 imposition of such prohibition would amount to an imposition of non-identical labeling

13 requirements and would therefore be preempted.  *See Wilson*, 961 F. Supp. 2d at 1147 (finding

14 that retroactive application of FDA's clarification of an ambiguous regulation would offend due

15 process); *Peterson v. ConAgra Foods, Inc.*, No. 13-CV-3158-L, 2014 WL 3741853, at *4 (S.D.

16 Cal. July 29, 2014) (finding that federal law preempted state claims based on labels prior to FDA's

17 clarification on labeling requirements); *Eckler v. Neutrogena Corp.*, 238 Cal. App. 4th 433 (2016).

18    Plaintiff counters that neither the 2009 Draft Guidance nor the 2016 Final Guidance

19 announced a new policy or departure from previously established law.  Rather, plaintiff argues it

20 was clear throughout that federal regulations precluded the use of ECJ to describe the ingredient in

21 defendants' products, which plaintiff alleges was essentially sucrose.  *See Samet v. Procter &*

22 *Gamble Co.*, No. 12-CV-1891-PSG, 2013 WL 3124647, at *8 (N.D. Cal. June 18, 2013) ("While

23 it may be true that the FDA is developing a specific regulation on this issue, there is already an

---

[4] Section 343(g) provides that a food shall be "deemed to be misbranded" if "it purports to be or is represented as a food for which a definition and standard of identity has been prescribed by regulations as provided by section 341 of this title, unless (1) it conforms to such definition and standard, and (2) its label bears the name of the food specified in the definition and standard, and, insofar as may be required by such regulations, the common names of optional ingredients (other than spices, flavoring, and coloring) present in such foods."

FDA regulation governing the use of evaporated cane juice as an ingredient.  21 C.F.R. 168.130 requires that '[t]he common or usual name of a food' shall be used to 'identify or describe, in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients.' . . . This is sufficient to proceed no matter what final guidance may be issued by the agency."); *Ivie*, 2013 WL 685372, at *12 (finding that, at least as of the 2009 Draft Guidance, the FDA's position on ECJ was clear); *Werdebaugh v. Blue Diamond Growers*, No. 12-CV-2724-LHK, 2013 WL 5487236, at *8–9 (N.D. Cal. Oct. 2, 2013) (finding no preemption where plaintiff "seeks to state claims that the term [ECJ] violates the explicit requirements of [the federal regulations]" because "such claims are identical to federal regulations," regardless of the 2009 Draft Guidance).[5]  The Court agrees and finds that plaintiff's claims are not preempted by the FDCA.[6]  A closer analysis of the 2009 Draft Guidance, the FDA's decision to reopen its review of ECJ, and the 2016 Final Guidance is instructive in this regard:

In 2009, the FDA published the 2009 Draft Guidance noting that it was "FDA's current policy [] that sweeteners derived from sugar cane syrup should not be declared as 'evaporated cane juice' because that term falsely suggests that the sweeteners are juice."  (Dkt. No. 88-1 at 5.)  The FDA further explained that sugar cane products exist "in many different forms, ranging from raw sugars and syrups to refined sugar and molasses," and that such products "with common or usual names defined by regulation are sugar (21 CFR 101.4(b)(20) and cane sirup (alternatively spelled 'syrup') (21 CFR 168.130)."  (*Id.* at 6.)  On such basis, the FDA concluded that "[b]ecause cane syrup has a standard of identity defined by regulation in 21 CFR 168.130, the common or

---

[5] Defendants argue that the Court previously found that the FDA's position on ECJ was unsettled and no uniform enforcement standard had yet been determined, and that such finding is therefore the law of the case and should not be here disturbed.  (Dkt. No. 60 at 3–4.)  However, the Court did not specifically address, in its order staying this action, plaintiff's argument that, notwithstanding a lack of specific guidance on ECJ, clear FDA regulations had been violated.  (*See id.*)  Rather, the Court stayed the action noting only that any "final pronouncement by the FDA in connection with that process almost certainly would have an effect on the issues in litigation here."  (*Id.* at 8.)  Such does not amount to a finding that defendants did not, or could not have, violated then-existing FDA regulations.

[6] Because the Court finds that plaintiff's claims are not preempted here, the Court need not address plaintiff's alternative arguments that its claims based on the "false and misleading" nature of the labels rather than the "unlawful" nature of the labels would nevertheless survive.

usual name for the solid or dried form of cane syrup is 'dried cane syrup.'" (*Id.* at 8.) The FDA further stated that it considers the use of ECJ as "false and misleading under section 403(a)(1) of the Act . . . because they fail to reveal the basic nature of the food and its characterizing properties." (*Id.*)

On March 5, 2014, the FDA published notice that it was reopening its review of the ECJ issue. The notice stated: "We have not reached a final decision on the common or usual name for this ingredient and are reopening the comment period to request further comments, data, and information about the basic nature and characterizing properties of the ingredient sometimes declared as 'evaporated cane juice,' how this ingredient is produced, and how it compares with other sweeteners." (Dkt. No. 88-3 at 2.) With regards to this issue, the FDA specifically requested comments addressing how ECJ was manufactured and how such method was different from that of other sweeteners. (*Id.* at 3.) The FDA further stated that the draft guidance "explained that, because cane syrup has a standard of identity defined by regulation in 21 CFR 168.130, the common or usual name for the solid or dried form of cane syrup is 'dried cane syrup.'" (*Id.* at 2–3 (also noting that such sweeteners are not "juice" as defined in 21 CFR 120.1(a)).) In other words, although the FDA needed further guidance on ECJ's chemical structure and manufacturing process to determine the proper name for the ingredient, the FDA confirmed its view from 2009 that the use of "juice" to describe the ingredient was, in any event, misleading.

The FDA released its final guidance in May 2016. (Dkt. No. 88-2.) In the 2016 Final Guidance, the FDA concluded that ECJ should not be used "because that term does not accurately describe the basic nature of the food and its characterizing properties." (*Id.*) In so finding, the FDA explained thus:

> In FDA's view, the common or usual name for the ingredient currently labeled as 'evaporated cane juice' includes the term 'sugar' and does not include the term 'juice.' The basic nature of the ingredient is that it is a sugar and its characterizing property is that of a sweetener. FDA's food labeling regulations provide that sucrose obtained from sugar cane or sugar beets in accordance with 21 CFR 184.1854 shall be referred to as 'sugar' in ingredient labeling (21 CFR 101.4(b)(2)). Section 184.1854(a) describes sucrose as the substance 'obtained by crystallization from sugar cane or sugar beet juice that has been extracted by

8

> pressing or diffusion, then clarified and evaporated.' Based on the numerous comments indicating that the ingredient declared as 'evaporated cane juice' is produced in this manner, it follows that the common or usual name for the product should be or include 'sugar.' As discussed in the Background section, current names that are used for several other sweeteners made from sugar cane (e.g., turbinado sugar, demerara sugar, and muscovado sugar) are names that have been established by common usage. In each instance, the basic nature of the food is described by use of the term 'sugar.' FDA would not object to the addition of one or more truthful, non-misleading descriptors before the common or usual name 'sugar.' Such a descriptor, which could be a coined term, could be used to distinguish the ingredient from white sugar and other sugars on the market by describing characteristics such as source, color, flavor, or crystal size.

(Dkt. No. 88-2 at 8.) From this record, it appears that the FDA merely confirmed that ECJ fit the definition for sucrose under the regulations, and, therefore, needed to be labeled as "sugar."

Defendants' citation to the decisions in *Peterson* and *Wilson* do not persuade. Both *Peterson* and *Wilson* addressed regulations related to labeling certain foods with the designation, "No MSG." *Peterson*, 2014 WL 3741853, at *1; *Wilson*, 961 F. Supp. 2d at 1138.[7] Plaintiffs' claims in both cases were predicated on the FDA's publication in November 2010 of a clarification on the Questions and Answers section of their website that any food with any ingredient that "naturally contains MSG cannot claim 'No MSG,'" even if the manufacturer did not include additional MSG. *See Peterson*, 2014 WL 3741853, at *3. Prior to that, the courts found that the regulations were ambiguous as to whether "No MSG" applied to situations where the product contained ingredients that themselves naturally contained MSG. *See id.* at *4. On such bases, the *Peterson* and *Wilson* courts found that the retroactive application of the clarification would offend due process, and therefore, found that such claims were preempted by federal law.[8]

---

[7] Defendants also cited a California appeals court decision in *Eckler*. However, such case is inapposite to the case at hand. In *Ecker*, plaintiffs based liability on a proposed rule from 1993 that had never become effective. *Ecker*, 238 Cal. App. 4th at 456. It was not until December 2012 that the FDA officially banned the use of certain terms on sunscreen packaging. *Id.* at 455–56. On that basis, the court found that plaintiffs' claims were preempted.

[8] Additionally, *Peterson* specifically acknowledged that the clarification posted on the FDA's Questions and Answers website was sufficient to provide notice to manufacturers regarding the limits of the use of the "No MSG" designation. *Peterson*, 2014 WL 3741853, at *4. Defendants provide no reason here why the 2009 Draft Guidance, which arguably bears more weight than a "Questions and Answers" statement on the FDA's website, is not sufficient to provide notice to manufacturers regarding the impropriety of the term ECJ. Thus, at the very

9

However, it would produce perverse results if, any time the FDA issues statements or guidance, such would erase liability for corporations which violated the regulations prior to the issuance of the same. Such results are rightly limited to situations in which the regulated community lacked any guidance as to the meaning of ambiguous statutes or regulations.[9] Here, plaintiff has argued that there are standard regulations proscribing the labeling of "ECJ" based on its chemical composition and the processes by which it is manufactured. The FDA's administrative actions between 2009 and the present may be probative of the lawfulness or unlawfulness of defendants' actions during the relevant time period. However, it does not appear to the Court that plaintiff's claims are *based* on any clarifications or new regulations published by the FDA in 2016. The 2016 Final Guidance merely confirmed that ECJ met the definition for sucrose already in the federal regulations, and thus, had to abide by the labeling requirements set forth for sucrose. Thus, the Court finds that plaintiff's claims are not preempted by the FDCA, and, accordingly, **DENIES** defendants' motion to dismiss on this ground.

C. **Claims for Injunctive Relief**

Defendants then argue that plaintiff's claims for injunctive relief should be dismissed as moot because they have ceased the use of ECJ on their labels and are not reasonably likely to resume the use of the same. *See Outdoor Media Grp., Inc. v. Beaumont*, 506 F.3d 895, 902 (2007) (finding claims for injunctive relief moot where plaintiff could not show "that the challenged conduct continues"). Relevant to the instant action, the Ninth Circuit has held that a "policy change not reflected in statutory changes or even in changes in ordinances or regulations will not necessarily render a case moot, but it may do so in certain circumstances." *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014) (internal citations omitted). The court explained that it was less

---

least, the regulations with regards to the use of ECJ were clear as of the issuance of the 2009 Draft Guidance. *See Ivie*, 2013 WL 685372, at *12 (finding that, at least as of the 2009 Draft Guidance, the FDA's position on ECJ was clear). That the FDA required further study as to the exact terms that could be used is separate from their determination in 2009 that ECJ was improper.

[9] The Court also notes that at least two other courts have allowed similar ECJ claims to proceed, after the issuance of the FDA's 2016 Final Guidance. *See Swearingen v. Santa Cruz Nat., Inc.*, No. 13-CV-4291-SI, 2016 WL 4382544, at *5–7 (N.D. Cal. Aug. 17, 2016); *Figy v. Lifeway Foods, Inc.*, No. 13-CV-4828-TEH, 2016 WL 4364225, at *7 (N.D. Cal. Aug. 16, 2016).

10

1    inclined to find mootness where the new policy could be easily abandoned in the future and that
2    the ultimate question is "whether the party asserting mootness 'has met its heavy burden of
3    proving that the challenged conduct cannot reasonably be expected to recur.'" *Id.* (citation
4    omitted).  Here, plaintiff previously conceded in 2015 that defendants have changed their labels
5    and have renamed ECJ as "cane sugar" (Dkt. No. 70), and defendants have attached several
6    judicially noticeable exhibits showing the current labels for several of their products (*see* DJN
7    Exs. H–K).  Importantly, defendants argue, the issuance of the 2016 Final Guidance makes it
8    absolutely clear that the disputed conduct will not resume, thereby warranting dismissal of the
9    injunctive relief claims.

Plaintiff contends that defendants have failed to meet their heavy burden to demonstrate that such wrongs will not be repeated.  The Court agrees, and finds the court's decision in *Astiana v. Ben & Jerry's Homemade, Inc.*, Nos. 10-CV-4387-PJH, 10-CV-4937-PJH, 2011 WL 2111796 (N.D. Cal. May 26, 2011) instructive.  Faced with an analogous question where defendants voluntarily ceased their use of the term "all natural" on their labels, the court in *Astiana* refused to dismiss as moot plaintiffs' claims for injunctive relief.  *Id.* at *12–13.  The court explained that while it was true that defendants no longer used the term, the "availability of injunctive relief cannot be determined until the parties have developed the factual record." *Id.*  The court found no prejudice in so doing because if defendants had completely ceased its use of the challenged practices and had no intention to resume the same, there would be "nothing to enjoin."  *Id.*  Similarly here, although the Court has taken judicial notice showing defendants' use of "cane sugar" on several labels, further development of the factual record is necessary to determine the availability of injunctive relief here.  Accordingly, the Court **DENIES** defendants' motion to dismiss plaintiff's claims for injunctive relief.

IV.   **CONCLUSION**

For the foregoing reasons, the Court **DENIES** defendants' motion to dismiss.

The Court **SETS** a case management conference for **Monday, March 27, 2017** at **2:00 p.m.** in the Federal Building, 1301 Clay Street, Oakland, California, Courtroom 1.  By **March 20,**

11

**2017**, the parties must file a joint case management statement in compliance with the Civil Local Rules of the Northern District of California and this Court's Standing Order.

This Order terminates Docket Number 87.

**IT IS SO ORDERED.**

Dated: February 13, 2017

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

12